1  JAMES R. MCGUIRE (CA SBN 189275)
   JMcguire@mofo.com
2  MARK W. POE (CA SBN 223714)
   MPoe@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  SKIP DUROCHER (*pro hac vice*)
   durocher.skip@dorsey.com
7  TIMOTHY J. DROSKE (*pro hac vice*)
   droske.timothy@dorsey.com
8  DORSEY & WHITNEY LLP
   50 South Sixth Street, Suite 1500
9  Minneapolis, Minnesota 55402-1498
   Telephone: 612.340.2600
10 Facsimile: 612.677.3086

11 Attorneys for Defendant
   U.S. BANK NATIONAL ASSOCIATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STEPHEN ELLSWORTH, as an individual and as a representative of the classes and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK, N.A.,<br><br>Defendant. | Case No.   CV 12-2506 LB<br><br>**U.S. BANK'S NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**<br><br>Date:   September 20, 2012<br>Time:   11:00 a.m.<br>Courtroom:   C<br>Judge:   Honorable Laurel Beeler<br><br>Complaint filed: May 16, 2012 |

U.S. BANK'S MOTION TO COMPEL ARBITRATION
CASE NO. CV-12-2506 LB
sf-3177007

# **TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| NOTICE OF MOTION AND MOTION | v |
| ISSUE TO BE DECIDED | v |
| MEMORANDUM OF POINTS AND AUTHORITIES | 1 |
| INTRODUCTION | 1 |
| BACKGROUND | 1 |
|     A. Ellsworth's Accounts and His Lawsuit Against U.S. Bank. | 1 |
|     B. Ellsworth's Agreement to Arbitrate His Disputes with U.S. Bank. | 2 |
|     C. Arbitration Under the American Arbitration Association's Commercial Arbitration Rules | 3 |
| ARGUMENT | 4 |
| I. THE FAA REQUIRES RIGOROUS ENFORCEMENT OF ARBITRATION AGREEMENTS. | 4 |
| II. THE ARBITRATION AGREEMENT BETWEEN THE PARTIES REQUIRES THIS DISPUTE TO BE SENT TO ARBITRATION. | 5 |
|     A. The Parties Agreed to Arbitrate. | 5 |
|     B. Bank Has Not Waived Its Contractual Right to Arbitration. | 6 |
|     C. The Parties Agreed to Delegate Challenges to the Existence, Validity, and Scope of the Arbitration Agreement to the Arbitrator. | 7 |
| III. THIS ACTION MUST BE STAYED OR DISMISSED PENDING THE OUTCOME OF THE ARBITRATION. | 10 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acquaire v. Canada Dry Bottling*,
    906 F. Supp. 819 (E.D.N.Y. 1995) .................................................................................. 7

*Allen v. Regions Bank*,
    389 F. App'x 441 (5th Cir. 2010) .................................................................................... 9

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ........................................................................................................ 5

*AmSouth Bank v. Steadman*,
    339 F. Supp. 2d 778 (S.D. Miss. 2004) ........................................................................... 6

*Anders v. Hometown Mortg. Servs.*,
    346 F.3d 1024 (11th Cir. 2003) ....................................................................................... 5

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011) .................................................................................................... 9

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ........................................................................................................ 5

*Bank of Am., N.A. v. Micheletti Family P'ship*,
    No. 08-02902, 2008 U.S. Dist. LEXIS 117100 (N.D. Cal. Oct. 14, 2008) ..................... 4

*Bosinger v. Phillips Plastics Corp.*,
    57 F. Supp. 2d 986 (S.D. Cal. 1999) ............................................................................. 10

*Buffington v. SunTrust Banks, Inc.*,
    No 11-14316, 2012 U.S. App. LEXIS 4180 (11th Cir. Mar. 1, 2012) ............................ 5

*Clarium Capital Mgmt. LLC v. Choudhury*,
    No. 08-5157, 2009 U.S. Dist. LEXIS 14805 (N.D. Cal. Feb. 10, 2009) ........................ 8

*Comedy Club, Inc. v. Improv West Assocs.*,
    553 F.3d 1277 (9th Cir. 2009) ......................................................................................... 5

*Contec Corp. v. Remote Solution Co.*,
    398 F.3d 205 (2d Cir. 2005) ............................................................................................ 8

*Digiacomo v. Ex'pression Ctr. for New Media, Inc.*,
    No. 10-504, 2008 U.S. Dist. LEXIS 70099 (N.D. Cal. Sept. 15, 2008) ......................... 4

*Fadal Machining Ctrs., LLC v. Compumachine, Inc.*,
    461 F. App'x 630 (9th Cir. 2011) ............................................................................................... 8

*Fallo v. High-Tech Inst.*,
    559 F.3d 874 (8th Cir. 2009) ....................................................................................................... 8

*Gagliano v. Cytrade Fin., LLC*,
    2009 U.S. Dist. LEXIS 96552 (N.D. Ill. Oct. 16, 2009) ............................................................. 7

*Gedid v. Huntington Nat'l Bank*,
    No. 11-1000, 2012 U.S. Dist. LEXIS 27715 (W.D. Pa. Feb. 10, 2012) ................................ 5, 6

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000) .................................................................................................................. 3, 5

*Kimble v. Rhodes College, Inc.*,
    No. 10-5786, 2011 U.S. Dist. LEXIS 59628 (N.D. Cal. June 2, 2011) ..................................... 9

*Lewis v. UBS Fin. Servs.*,
    818 F. Supp. 2d 1161 (N.D. Cal. 2011) .................................................................................... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ........................................................................................................................ 5

*Qualcomm Inc. v. Nokia Corp.*,
    466 F.3d 1366 (Fed. Cir. 2006) ................................................................................................... 8

*Rent-A-Center W., Inc, v. Jackson*,
    130 S. Ct. 2772 (2010) ................................................................................................................ 8

*Saleemi v. Gosh Enters.*,
    2012 U.S. App. LEXIS 2230 (9th Cir. Feb. 3, 2012) ................................................................. 6

*Sparling v. Hoffman Const. Co., Inc.*,
    864 F.2d 635 (9th Cir. 1988) ..................................................................................................... 10

*Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*,
    432 F.3d 1327 (11th Cir. 2005) ................................................................................................... 8

*Townsend v. Pinnacle Entm't, Inc.*,
    457 F. App'x 205 (3d Cir. 2012) ................................................................................................ 6

*United States v. Park Place Associates, Ltd.*,
    563 F.3d 907 (9th Cir. 2009) ....................................................................................................... 7

*Visa USA, Inc. v. Maritz Loyalty Mktg., Inc.*,
    No. 07-05585, 2008 U.S. Dist. LEXIS 89124 (N.D. Cal. March 18, 2008) ............................... 8

**STATUTES**

9 U.S.C.
    § 2 .................................................................................................................................. 4
    § 3 ................................................................................................................................ 10

Federal Arbitration Act ........................................................................................................ 4, 5

**OTHER AUTHORITIES**

Local Rules
    Rule 7-4(a)(3) ................................................................................................................ v, 1
    Rule R-7(a) .................................................................................................................... 4, 8

| | |
|---|---|
| 1 | **NOTICE OF MOTION AND MOTION** |
| 2 | TO PLAINTIFF AND HIS ATTORNEY OF RECORD: |
| 3 | PLEASE TAKE NOTICE that on September 20, 2012, at 11:00 a.m., or as soon thereafter |
| 4 | as the matter may be heard, in the Courtroom of the Honorable Laurel Beeler, United States |
| 5 | District Court, Northern District of California, San Francisco Division, Courtroom C, located at |
| 6 | 450 Golden Gate Avenue, San Francisco, California, Defendant U.S. Bank National Association |
| 7 | ("U.S. Bank") will and hereby does move the Court for an Order compelling arbitration and |
| 8 | staying proceedings pending arbitration pursuant to Sections 3 and 4 of the Federal Arbitration |
| 9 | Act ("FAA"). |
| 10 | This Motion is based on this Notice of Motion and Motion, the attached Memorandum of |
| 11 | Points and Authorities, the Declarations of Brent Farka and James R. McGuire and the exhibits |
| 12 | thereto, the pleadings and other files herein, and such other written and oral argument as may be |
| 13 | presented to the Court. |
| 14 | **ISSUE TO BE DECIDED** |
| 15 | **(Local Rule 7-4(a)(3))** |
| 16 | Does the Federal Arbitration Act require the Court to compel arbitration of the parties' |
| 17 | dispute? |

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Stephen Ellsworth and U.S. Bank entered into a written agreement to arbitrate, on an individual basis, any disputes concerning any of his customer accounts with U.S. Bank. That agreement, contained within the Deposit Account Agreement ("Deposit Agreement"), further provides that the arbitrator shall resolve any disputes as to the scope of the arbitration provision. Pursuant to the parties' written agreement, U.S. Bank elects to arbitrate the individual claims that Mr. Ellsworth asserts in this case. Under the Federal Arbitration Act, the Court should compel such arbitration and stay or dismiss this action.

## BACKGROUND

### A.   Ellsworth's Accounts and His Lawsuit Against U.S. Bank.

On or about July 2, 2007, U.S. Bank provided Ellsworth with a mortgage loan of $393,892 that was secured by the Deed of Trust on his California home. (First Am. Compl. ("FAC") ¶ 13; *id.*, Ex. 1 at 1, 3.)Shortly thereafter, on August 30, 2007, Ellsworth opened a checking account with U.S. Bank. (Declaration of Brent Farka in Support of Defendant U.S. Bank's Motion to Compel Arbitration ("Farka Decl.") ¶ 3, Ex. 1.)

On May 16, 2012, Ellsworth filed this putative class action, which concerns allegedly improper billings that U.S. Bank made to Ellsworth's mortgage account for flood insurance. The gist of Ellsworth's complaint is that the flood insurance that U.S. Bank force-placed was illegal because (a) it was backdated (*i.e.*, the Bank placed a policy in 2010 that covered the preceding year), and (b) U.S. Bank allegedly received a commission from the insurance company for the placement. (*See* FAC ¶¶ 1-5.) Ellsworth alleges that he "paid in full" the $2,250 premium that was billed to his account for the allegedly illegal insurance, and seeks damages, restitution, and other relief. (*Id.* ¶¶ 24, 103; *id.* Ex. 2 at 2.)

**B.     Ellsworth's Agreement to Arbitrate His Disputes with U.S. Bank.**

Ellsworth's deposit account was governed by a written Deposit Agreement.[1] The Deposit Agreement contains an express agreement to arbitrate, set apart from the rest of the text by boldfaced font:

> **ARBITRATION**
> **This section does not apply to any dispute in which the amount in controversy is within the jurisdictional limits of, and is filed in, a small claims court.  <u>These arbitration provisions shall survive closure of your account or termination of all business with us</u>.  If any provision of this section is ruled invalid or unenforceable, this section shall be rendered null and void in its entirety.**
>
> **Arbitration Rules.  If you or we elect to arbitrate a dispute concerning your account, the dispute will be decided by arbitration under the Commercial Arbitration Rules of the American Arbitration Association.  If this arbitrator or these arbitration rules are not available, then you and we will use a comparable substitute arbitration procedure and/or arbitration organization that does business on a nationwide basis.  You may obtain rules and forms by calling the AAA at 800-778-7879.  Any arbitration hearing that you attend will be in the federal judicial district where you reside.**
>
> **Arbitration Process:  Arbitration involves the review and resolution of the dispute by a neutral party.  The arbitrator's decision will generally be final and binding.  <u>At your request, for claims relating to consumer accounts, we will advance the first $375 of the filing and hearing fees for any claim you file against us</u>; the arbitrator will decide whether we or you will ultimately pay those fees.  Arbitration can only decide our or your dispute and cannot consolidate or join claims of other persons who may have similar claims.  There will be no authority or right for any disputes to be arbitrated on a class action basis.**
>
> **Effects of Arbitration:  If either of us chooses arbitration, neither of us will have the right to litigate the dispute in court or have a jury trial.  In addition, you will not have the right to**

---

[1] For ease of reference, throughout this Memorandum U.S. Bank refers to the June 14, 2010 Deposit Agreement that was in effect at the time Ellsworth closed his account and governs his dispute. (Farka Decl. ¶ 8, Ex. 6.)  Ellsworth received a copy of the March 15, 2007 Deposit Agreement when he opened his account.  (*Id*. ¶¶ 4, 6, Ex. 3.)  Between those versions, the June 1, 2009 Deposit Agreement governed his accounts.  (*Id*. ¶ 7, Ex. 4.)  The arbitration provision is materially identical in each iteration of the agreement.  (*Id.,* Ex. 6 at pp. 28-29, Ex. 4 at p. 26, Ex. 3 at p. 24.)

> **participate as a representative or member of any class of claimants pertaining to any dispute subject to arbitration. <u>Notwithstanding the foregoing, any question as to the validity and effect of this class action waiver shall be decided solely by a court of competent jurisdiction, and not by the arbitrator.</u>**

(*Id.*, Ex. 6 at pp. 28-29 (bold in original, underlining added).)

The arbitration agreement thus requires the parties, at either party's election, to arbitrate any "dispute concerning [the customer's] account." (*Id.* at p. 28.) The Deposit Agreement defines "account" to mean "**any** savings, transaction (for example checking), and time deposit account **or other type of account you have with us**, wherever held or maintained." (*Id.* at p. 3 (emphasis added).) "Us" is defined as U.S. Bank National Association. (*Id.*)

Ellsworth opened his account with a $2,000 deposit. (Farka Decl. Ex. 1.) Ellsworth continued to use his checking account, making deposits and writing checks until he closed the account. (*See, e.g.*, Farka Decl. Ex. 8.) At all times relevant to the complained of behavior, Ellsworth maintained his checking and mortgage accounts with U.S. Bank. (*Id.*; FAC ¶ 18-22.) Although Ellsworth closed his checking account on February 17, 2011, he still maintains a mortgage account with U.S. Bank. (Farka Decl. ¶ 3, Ex. 2; FAC ¶ 14.) The arbitration agreement survives the closure of his checking account. (Farka Decl. Ex. 6 at p. 28 ("These arbitration provisions shall survive closure of your account or termination of all business with us.").)

### C. Arbitration Under the American Arbitration Association's Commercial Arbitration Rules

The arbitration provision specifies that the arbitration shall be conducted under the Commercial Arbitration Rules of the American Arbitration Association (the "AAA"),[2] which have been widely recognized as providing fair and cost-effective procedures. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 95 (2000) (Ginsburg, J., concurring in part and dissenting in part) (describing AAA's fee structure as a "model[] for fair cost and fee allocation" for consumers in "small-claims arbitration"). The AAA Supplementary Procedures have a sliding

---

[2] For disputes between individual consumers and businesses, the AAA Supplementary Procedures for Consumer-Related Disputes also apply. (AAA Commercial Arbitration R-1, McGuire Decl. Ex A at p. 3.)

scale for fee deposits for individual consumers, under which consumers pay a *maximum* of $125 for claims not exceeding $10,000.  (Declaration of James R. McGuire in support of U.S. Bank's Motion to Compel Arbitration and Stay Proceedings ("McGuire Decl.") Ex. B at p. 3-4, Ex. C at p. 1.)  Ellsworth's claim is evidently for $2,250, the amount of the premium that he claims was improperly billed to his account but that he paid "in full."  (FAC ¶ 24; FAC Ex. 2 at 2.)  In the Deposit Agreement, U.S. Bank agrees to advance the first $375 of the filing and hearing fees for arbitration—Ellsworth's entire upfront arbitration cost.(Farka Decl. Ex. 6 at p. 28.)  In addition, the AAA Rules provide a mechanism for administrative fee waivers and pro bono service by arbitrators for "individual[s who] might otherwise be financially unable to pursue his or her rights in the arbitral forum."  (McGuire Decl. Ex. C at 2-3.)*See Digiacomo v. Ex'pression Ctr. for New Media, Inc.*, No. 10-504, 2008 U.S. Dist. LEXIS 70099, at *16-17 (N.D. Cal. Sept. 15, 2008) (highlighting "the waiver of fees in circumstances of need" of the AAA's Commercial Rules).

Further, the AAA Rules allow for the award of attorneys' fees, if requested by the parties or authorized by law.  (AAA Commercial Arbitration R-43(d)(ii), McGuire Decl. Ex. A at p. 6.)  Here, Ellsworth claims that he is entitled to recovery of his attorney's fees.  (FAC ¶ 94.)

Importantly here, the AAA Rules provide, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  (AAA Commercial Arbitration Rule R-7(a), McGuire Decl. Ex. A at 4.)

**ARGUMENT**

**I.    THE FAA REQUIRES RIGOROUS ENFORCEMENT OF ARBITRATION AGREEMENTS.**

The FAA provides that arbitration agreements involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The transactions at issue here involve interstate commerce because U.S. Bank is a national bank based in Ohio, while Ellsworth resides in California.  (FAC ¶ 7-8.)  By definition, a transaction between a resident of one state and a bank located in another involves interstate commerce and is therefore governed by the FAA.  *Bank of*

1   *Am., N.A. v. Micheletti Family P'ship*, No. 08-02902, 2008 U.S. Dist. LEXIS 117100, at *13-14
2   (N.D. Cal. Oct. 14, 2008); *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 276-77
3   (1995).

4         The FAA requires that arbitration agreements be rigorously enforced. *See Green Tree*,
5   531 U.S. at 89; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).
6   Where a contract contains an arbitration provision, "a presumption of arbitrability" arises and any
7   ambiguity as to the arbitrability of a claim must be resolved in favor of arbitration. *AT&T Techs.,*
8   *Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Comedy Club, Inc. v. Improv West*
9   *Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009). Because of this presumption, "the party resisting
10  arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."
11  *Green Tree*, 531 U.S. at 91-92. The fact that a consumer contract is at issue has no effect on
12  either the presumption or the burden. *See id.* (enforcing arbitration clause between consumer and
13  lender); *see also Buffington v. SunTrust Banks, Inc.*, No 11-14316, 2012 U.S. App. LEXIS 4180
14  (11th Cir. Mar. 1, 2012) (enforcing arbitration agreement between depositor and bank); *Anders v.*
15  *Hometown Mortg. Servs.*, 346 F.3d 1024 (11th Cir. 2003) (enforcing arbitration agreement
16  between customer and mortgage company).

17  **II.   THE ARBITRATION AGREEMENT BETWEEN THE PARTIES REQUIRES THIS DISPUTE TO BE SENT TO ARBITRATION.**
18  
19      **A.   The Parties Agreed to Arbitrate.**

20        The Deposit Agreement binds the parties to arbitrate all disputes between them. The
21  Deposit Agreement conspicuously advised Ellsworth that use of his account constituted
22  acceptance of the Deposit Agreement's terms, which included the arbitration provision. (Farka
23  Decl. Ex. 6 at p. 3 (providing that by "opening, or continuing to hold an account with [U.S.
24  Bank], [the depositor] agree[s] to the most recent version of this Agreement").) Thus, Ellsworth
25  bound himself to the terms of the Deposit Agreement by opening and continuing to use his
26  checking account. (Farka Decl. ¶¶ 1, 9.) As courts have observed in similar circumstances, use
27  of a checking account binds the customer to the arbitration agreement governing the account.
28  *See, e.g.*, *Gedid v. Huntington Nat'l Bank*, No. 11-1000, 2012 U.S. Dist. LEXIS 27715, at *17-19

1  (W.D. Pa. Feb. 10, 2012) ("Upon Plaintiff's use of his account, he became bound by Huntington
2  Bank's Arbitration Provision."). In *Gedid*, the court reasoned that through "his continuous use of
3  his account," including "making deposits, writing checks and using his debit card," the plaintiff
4  had bound himself to the account agreement and could not "back out of the arbitration provision
5  which governs the customer-bank relationship." *Id.*

6  Furthermore, the fact that Ellsworth closed his checking account does not affect the
7  arbitration analysis, because the parties agreed that the arbitration provision "shall survive closure
8  of [Ellsworth's] account or termination of all business with [U.S. Bank]." (Farka Decl. Ex. 6 at
9  p. 28.) *See Townsend v. Pinnacle Entm't, Inc.*, 457 F. App'x 205, 209 (3d Cir. 2012) (where
10  arbitration agreement contained survival provision, the arbitration agreement survived the
11  expiration of the employment agreement); *see also Saleemi v. Gosh Enters.*, 2012 U.S. App.
12  LEXIS 2230 (9th Cir. Feb. 3, 2012) (there is a "presumption that dispute resolution provisions
13  survive termination of a contract.").

14  Moreover, courts routinely order arbitration where, as here, the parties' arbitration
15  agreement covers several accounts between the parties. *See, e.g.*, *AmSouth Bank v. Steadman*,
16  339 F. Supp. 2d 778 (S.D. Miss. 2004). In *AmSouth Bank*, the plaintiff opened a certificate of
17  deposit with the bank in 1999. *Id*. at 778, 780. In 2000, the plaintiff opened a checking account
18  with the bank, agreeing to be bound by the terms of the bank's account agreement. *Id*. at 779,
19  n.2. The bank's account agreement contained an arbitration provision. *Id*. at 779. When the
20  plaintiff sued over the certificate of deposit, the bank moved to compel arbitration of the dispute
21  based upon the arbitration provision in the account agreement which called for arbitration of "any
22  controversy, claim, or dispute between" the parties. *Id*. The court granted the bank's motion to
23  compel arbitration because (1) the arbitration agreement *appeared* to cover the plaintiffs' claims
24  and (2) "more pertinently," as here, the arbitration provision delegated the decision on
25  arbitrability to the arbitrator. *Id*. at 781.

26  **B.    Bank Has Not Waived Its Contractual Right to Arbitration.**

27  In advance of this filing, U.S. Bank inquired of plaintiff's counsel as to whether Ellsworth
28  would consent to arbitration. Ellsworth's counsel declined to consent, arguing, among other

things, that U.S. Bank had waived its right to arbitrate through (A) filing a motion to dismiss, and (B) filing a consent to have the case proceed before this Court, as opposed to a district court judge.  Neither of those things approaches the high bar that the Ninth Circuit has established for waiver of the right to arbitration.  *See United States v. Park Place Associates, Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009) ("[W]e have emphasized that waiver of the right to arbitration is disfavored because it is a contractual right, and thus any party arguing waiver of arbitration bears a heavy burden of proof.") (internal quotations and citations omitted).

To establish waiver of the right to arbitrate, a party must show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* (quotation and citation omitted).  The third element disposes of both of Ellsworth's arguments.  First, he could not have been prejudiced by U.S. Bank's filing of a motion to dismiss; he never even filed a response to that motion.  Second, he was not prejudiced by U.S. Bank's consent to have this Court hear the action; he agreed to it too.  (*See* ECF No. 23 (filed July 9, 2012).)  There appear to be just two cases addressing this latter argument, and they agree that consent to a Magistrate's adjudication is not a waiver of the right to arbitrate.  *See Gagliano v. Cytrade Fin., LLC*, 2009 U.S. Dist. LEXIS 96552 (N.D. Ill. Oct. 16, 2009) ("The consent simply affected whether a district judge or a magistrate judge would decide the arbitrability question; it was not a waiver of the right to pursue arbitration."); *Acquaire v. Canada Dry Bottling*, 906 F. Supp. 819, 832 (E.D.N.Y. 1995) (noting that consent to a magistrate is simply a process designed to permit "the wheels of justice [to] turn more efficiently," and holding that "[t]here is nothing in such a decision that suggests an intent to waive a right to arbitration.")

### C. The Parties Agreed to Delegate Challenges to the Existence, Validity, and Scope of the Arbitration Agreement to the Arbitrator.

U.S. Bank further anticipates that Plaintiff will oppose this motion by arguing that the instant dispute—relating to his mortgage account—is not governed by the arbitration clause found in the Deposit Agreement, despite the fact that the agreement expressly defines "account" to include "any . . . other type of account you have with us, wherever held or maintained."  (Farka

1  Decl. Ex. 3 at 3.)  That question cannot be resolved on this motion, however, because by agreeing
2  to follow the AAA Commercial Arbitration Rules, the parties have agreed to delegate resolution
3  of such questions to the arbitrator.  As the Supreme Court has recognized, "parties can agree to
4  arbitrate 'gateway' questions of 'arbitrability,'" including the scope of the arbitration agreement.
5  *Rent-A-Center W., Inc, v. Jackson*, 130 S. Ct. 2772, 2777 (2010).  In such circumstances, the
6  court's role is limited to the initial question of "whether any [arbitration] agreement between the
7  parties was ever concluded."  *Id*. at 2777 n.2.

8  The Deposit Agreement provides for resolution of disputes under the AAA Rules.  (Farka
9  Decl. Ex. 6 at p. 28.)  The AAA Rules, in turn, provide: "The arbitrator shall have the power to
10  rule on his or her own jurisdiction, including any objections with respect to the existence, scope
11  or validity of the arbitration agreement."  (AAA Commercial Arbitration Rule R-7(a), McGuire
12  Decl. Ex. A at 4.)

13  As the Ninth Circuit has recently recognized, an arbitration agreement's reference to the
14  AAA Commercial Arbitration Rules, "shows a clear and unmistakable intent to delegate
15  questions of scope to the arbitrator."*Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 F.
16  App'x 630, 632 (9th Cir. 2011).  Accordingly, the court affirmed the district court's conclusion
17  that "the interpretation of the agreement's scope [is] a question for the arbitrator."  *Id.*  Other
18  circuits agree.  *See, e.g.*, *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (concluding
19  that the arbitration provision's incorporation of the AAA Rules constituted a "clear and
20  unmistakable expression of the parties' intent to leave the question of arbitrability to an
21  arbitrator"); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th
22  Cir. 2005) (same); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) (same);
23  *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (same).

24  This Court has likewise held that "[b]y the explicit incorporation of the AAA rules, the
25  parties clearly and unmistakably agreed that questions of arbitrability would be submitted to
26  arbitration for resolution."  *Visa USA, Inc. v. Maritz Loyalty Mktg., Inc.*, No. 07-05585, 2008 U.S.
27  Dist. LEXIS 89124, at *15 (N.D. Cal. March 18, 2008); *see also Clarium Capital Mgmt. LLC v.*
28  *Choudhury*, No. 08-5157, 2009 U.S. Dist. LEXIS 14805, at *13-14 (N.D. Cal. Feb. 10, 2009)

(“The incorporation of the AAA rules in the arbitration agreement is ‘clear and unmistakable’ evidence of the parties’ intent to delegate the issue of arbitrability to the arbitrator.”); *Kimble v. Rhodes College, Inc.*, No. 10-5786, 2011 U.S. Dist. LEXIS 59628, at *12-13 (N.D. Cal. June 2, 2011) (incorporation of AAA rules is “clear and unmistakable evidence of the parties’ agreement to arbitrate arbitrability;” thus, “the issue of arbitrability in this case is one for the arbitrator, and not the Court to decide.”).

The Fifth Circuit’s decision in *Allen v. Regions Bank*, 389 F. App’x 441 (5th Cir. 2010), is instructive here. There, the plaintiffs had obtained a home equity loan from the bank. *Id.* at 442. Pursuant to the loan agreement, the bank purchased an insurance policy. *Id.* Two years later, the plaintiffs opened a demand deposit account with the bank, agreeing to the bank’s customer agreement. *Id.* at 443. The bank’s customer agreement included an arbitration provision that applied to “any controversy, claim, counterclaim, dispute, or disagreement” between the parties. *Id.* Further, the arbitration provision delegated arbitrability to the arbitrator. *Id.* The plaintiffs subsequently sued the bank and the insurance company for breach of the loan and insurance agreements. *Id.* at 442-43. The district court denied the bank’s motion to compel arbitration, holding that the arbitration agreement in the customer agreement did not apply to the loan agreement. *Id.* at 433. On appeal, the Fifth Circuit held that the “the question the district court answered is for the arbitrator” because the “arbitration agreement unmistakably command[ed] that disputes as to its applicability are for the arbitrator.” *Id.* at 446. Because there was a valid agreement to arbitrate, the Fifth Circuit concluded that the motion to compel arbitration should have been granted. *Id.*

Here, as in *Allen*, it is for the arbitrator to decide whether the arbitration clause found in the Deposit Agreement is properly interpreted to cover disputes relating to Ellsworth’s mortgage account. *Id.* The only aspect of the arbitrability question that the parties reserved for this Court relates to the validity of the arbitration clause’s class action waiver. (*See* Farka Decl. Ex. 3 at p. 28-29.) Accordingly, U.S. Bank requests that this Court enter an order that affirms the validity of the Deposit Agreement’s class action waiver under *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1751-53 (2011), and that refers the remainder of the dispute to arbitration.

### III. THIS ACTION MUST BE STAYED OR DISMISSED PENDING THE OUTCOME OF THE ARBITRATION.

Where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Bosinger v. Phillips Plastics Corp.*, 57 F. Supp. 2d 986, 994 (S.D. Cal. 1999) ("the clear language of Section 3 mandates a stay").

The Ninth Circuit has held, however, that where all of the claims in a complaint are subject to arbitration, courts have discretion under 9 U.S.C. § 3 to dismiss an action rather than merely stay it. *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988); *Lewis v. UBS Fin. Servs.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) ("courts have discretion under 9 U.S.C. § 3 to dismiss claims that are subject to an arbitration agreement"). Accordingly, U.S. Bank respectfully asks the Court to dismiss, or in the alternative to stay, this action pending the outcome of the arbitration required by the Deposit Agreement.

### CONCLUSION

For all of the foregoing reasons, U.S. Bank respectfully requests that the Court grant its motion to compel arbitration. Furthermore, U.S. Bank respectfully asks the Court to dismiss, or in the alternative to stay, this action pending the outcome of the arbitration.

Dated: August 6, 2012                    MORRISON & FOERSTER LLP

By:   /s/ *James R. McGuire*
      James R. McGuire

      Attorneys for Defendant
      U.S. BANK NATIONAL ASSOCIATION