UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| STEPHEN ELLSWORTH, as an individual and as a Representative of the classes and on behalf of the general public,<br><br>Plaintiff,<br>v.<br>U.S. BANK, N.A., and AMERICAN SECURITY INSURANCE COMPANY,<br>Defendants.<br>_____/ | No. C 12-02506 LB<br><br>ORDER DENYING U.S. BANK, N.A.'S MOTION TO COMPEL ARBITRATION<br><br>[ECF No. 32] |

**I. INTRODUCTION**

In July 2007, Plaintiff Stephen Ellsworth obtained a mortgage loan on his California property from Defendant U.S. Bank, N.A. ("U.S. Bank"). First Amended Class Action Complaint ("FAC"), ECF No. 26, ¶ 13.[1] Ellsworth alleges that in 2010, U.S. Bank purchased flood insurance on his property from Defendant American Security Insurance Company ("ASIC") and charged Ellsworth for the premiums. *Id.*, ¶¶ 18-22. Ellsworth's primary allegations are that this "force-placed" insurance policy was improperly backdated so that he was charged premiums for worthless coverage, the policy was unreasonably expensive, and ASIC paid kickbacks to U.S. Bank and its

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

affiliates for force-placing this allegedly overpriced and backdated policy. *See, e.g., id.*, ¶¶ 1-5, 25. Ellsworth seeks to represent nationwide and California classes and sub-classes of similarly situated individuals. *Id.*, ¶¶ 46-57. As an individual and as class representative, Ellsworth states six causes of action: (1) breach of contract against U.S. Bank; (2) breach of the covenant of good faith and fair dealing against U.S. Bank; (3)-(4) unjust enrichment against U.S. Bank and ASIC; and (5)-(6) violations of California Business & Professions Code section 17200 *et seq.* against U.S. Bank and ASIC.[2] *See id.*, ¶¶ 58-102.

U.S. Bank now moves to stay these proceedings and compel Ellsworth to arbitrate his claims based on an arbitration clause contained in the Deposit Agreement that governed a U.S. Bank checking account that Ellsworth opened in 2007. *See* Mot. to Compel Arbitration ("Mot."), ECF No. 32; Reply, ECF No. 54 at 12 (conceding that a stay, rather than dismissal, is appropriate). U.S. Bank also argues that only the arbitrator can consider whether Ellsworth's claims fall within the scope of the arbitration clause. *See* Mot., ECF No. 32 at 13-15. For the reasons set forth below, the court finds that it can consider whether the current dispute is governed by the arbitration clause and that the arbitration clause is inapplicable to the current dispute. Accordingly, the court DENIES U.S. Bank's motion.

## II. BACKGROUND

On or about July 2, 2007, Ellsworth obtained a mortgage loan from U.S. Bank that was secured by the deed of trust ("Mortgage Agreement") on his Napa County, California home. *See* FAC, ECF No. 26, ¶ 13; *id.* Ex. 1, ECF No. 26-1 at 4. The Mortgage Agreement does not contain an arbitration provision or otherwise provide for non-judicial dispute resolution. *See* FAC Ex. 1, ECF No. 26-1. It does require the parties to provide each other with notice and an opportunity to take corrective action before either

> Borrower [or] Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions

---

[2] Ellsworth brings his first four causes of action as an individual and on behalf of a nationwide class and sub-class and the fifth and sixth causes of action as an individual and on behalf of a California class and sub-class.

ORDER (C 12-02506 LB)  2

pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument . . . .

*Id.* at 13. Ellsworth alleges (and U.S. Bank has not disputed) that U.S. Bank is the lender-in-interest and servicer of Ellsworth's mortgage loan. *See id.* ¶ 14.

On August 30, 2007, Ellsworth opened a checking account with U.S. Bank, which he closed on February 17, 2011. Decl. of Brent Farka Supp. Mot. to Compel Arbitration ("Farka Decl."), ECF No. 34, ¶ 3; *id.* Ex. 1, ECF No. 34-1 (Ellsworth opening account statement); *id.* Ex. 2, ECF No. 34-2 at 2 (showing account closure).

In support of its motion, U.S. Bank submits the declaration of Brent Farka, a Vice President in U.S. Bank's Consumer Deposit Product Management division. Farka Decl, ECF No. 34, ¶ 1. Since April 2008, Farka's responsibilities have included the management and operation of U.S. Bank's Consumer Deposit Product department. *Id.* ¶ 2. Farka explains that when Ellsworth opened his U.S. Bank checking account, the then-current version of U.S. Bank's Deposit Account Agreement ("Deposit Agreement") would have applied to the account. *Id.* ¶¶ 6-8. U.S. Bank updated its Deposit Agreement several times while Ellsworth maintained a U.S. Bank checking account. *Id.*

Farka explains that at all relevant times, U.S. Bank's procedures required it to provide customers who open checking accounts with a copy of the currently effective Deposit Agreement. *Id.* ¶ 5. Ellsworth does not recall ever receiving a copy of any version of the Deposit Agreement. Decl. of Stephen Ellsworth ("Ellsworth Decl."), ECF No. 46-3, ¶ 3.

Farka also submits several versions of the Deposit Agreement. *See* Farka Decl., ECFNo. 34, ¶¶ 5-8. The parties, and the court, refer to the June 14, 2010 Deposit Agreement, which was in effect when Ellsworth closed his U.S. Bank checking account. *See* Mot., ECF No. 32 at 8 n.1; Farka Decl., ECF No. 34, ¶ 8; *id.* Ex. 6, ECF Nos. 34-6, 34-7. The title page of the Deposit Agreement states, in relevant part:

> **Your**
> **DEPOSIT**
> **ACCOUNT**
> **AGREEMENT**
> &
> General Terms & Conditions

Electronic Transfers
Funds Availability
Safe Deposit Box Lease
Reserve Line
Checking Account Advance

Farka Decl. Ex. 6, ECF No. 34-6 at 2. The Deposit Agreement begins with a heading that states: "TERMS APPLICABLE TO ALL DEPOSIT ACCOUNTS." *Id.* at 5. The first section of the Deposit Agreement explains that "[t]his booklet provides the general rules that apply to deposit accounts you have with **U.S. Bank**." *See id.* at 5. The same section further states: "**By providing a written or electronic signature on a signature card or other agreement or contract, opening, or continuing to hold an account with us, you agree to the most recent version of this Agreement** . . . ." *Id.* at 6. The Deposit Agreement also defines the term "account" as "any savings, transaction (for example, checking), and time deposit account or other type of account you have with us, wherever held or maintained." *Id.* at 6.

The Deposit Agreement also contains an arbitration provision that provides:

ARBITRATION
This section does not apply to any dispute in which the amount in controversy is within the jurisdictional limits of, and is filed in, a small claims court. These arbitration provisions shall survive closure of your account or termination of all business with us. If any provision of this section is ruled invalid or unenforceable, this section shall be rendered null and void in its entirety.

Arbitration Rules: If you or we elect to arbitrate a dispute concerning your account, the dispute will be decided by arbitration under the Commercial Arbitration Rules of the American Arbitration Association. If this arbitrator or these arbitration rules are not available, then you and we will use a comparable substitute arbitration procedure and/or arbitration organization that does business on a nationwide basis. You may obtain rules and forms by calling the AAA at 800-778-7879. Any arbitration hearing that you attend will be in the federal judicial district where you reside.

Arbitration Process: Arbitration involves the review and resolution of the dispute by a neutral party. The arbitrator's decision will generally be final and binding. At your request, for claims relating to consumer accounts, we will advance the first $375 of the filing and hearing fees for any claim you file against us; the arbitrator will decide whether we or you will ultimately pay those fees. Arbitration can only decide our or your dispute and cannot consolidate or join claims of other persons who may have similar claims. There will be no authority or right for any disputes to be arbitrated on a class action basis.

Effects of Arbitration: If either of us chooses arbitration, neither of us will have the right to litigate the dispute in court or have a jury trial. In addition, you will not have the right to participate as a representative or member of any class of claimants pertaining to any dispute subject to arbitration. Notwithstanding the foregoing, any question as to the validity and effect of this class action waiver shall be decided solely by a court of competent jurisdiction,

and not by the arbitrator.

*Id.*, ECF No. 34-7 at 2-3.

Ellsworth alleges that U.S. Bank purchased flood insurance on his property from Defendant American Security Insurance Company ("ASIC") and charged Ellsworth for the premiums. FAC, ¶¶ 18-22. The deed of trust on Ellsworth's home permits U.S. Bank to "force-place" flood insurance in this manner if Ellsworth fails to maintain the required amount of coverage. *Id.*, ¶ 17. But the deed only permits U.S. Bank to "do and pay for whatever is reasonable and appropriate" to protect its interest in the property. *Id.* (quoting FAC Ex. 1, ECF No. 26-1 at 7, ¶ 9). Ellsworth alleges that U.S. Bank, working with ASIC: (1) force-placed a backdated insurance policy on his property, (2) charged him for expired or partially expired coverage, (3) received kickbacks from ASIC for placing the coverage, and (4) did the same thing to other, similarly situated individuals. *Id.* ¶ 2.

On April 9, 2012, Ellsworth sent a letter to U.S. Bank stating that the force-placed flood insurance policies violated the deed of trust and requesting a refund of the premiums he paid. *See id.* ¶ 26; *id.* Ex. 6, ECF No. 26-6 at 2.

On May 16, 2012, Ellsworth filed the instant lawsuit against U.S. Bank and ASIC on behalf of himself and nationwide and California classes of similarly situated individuals. *See* Original Complaint, ECF No. 1. Ellsworth alleges (and U.S. Bank agrees) that U.S. Bank is a national bank based in Ohio, while he resides in California. FAC, ECF No. 26, ¶¶ 7-8; Mot., ECF No. 32 at 10. Ellsworth also alleges that this court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), based on his allegations of minimal diversity, a putative class with more than 100 members, and an amount in controversy greater than $5,000,000. FAC, ECF No. 26, ¶ 10.

On July 3, 2012, U.S. Bank consented to the undersigned's jurisdiction and filed a motion to dismiss Ellsworth's original complaint. *See* Consent, ECF No. 19; Motion to Dismiss, ECF No. 20. In response, Ellsworth filed the operative amended complaint on July 23, 2012. FAC, ECF No. 26. On August 6, 2012, U.S. Bank filed its motion to compel arbitration, now before the court. Mot., ECF No. 32.

ORDER (C 12-02506 LB) 5

### III. LEGAL STANDARDS

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2. "Once the court has determined that an arbitration agreement relates to a transaction involving interstate commerce, thereby falling under the FAA, the court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the dispute falls within that agreement." *Ramirez v. Cintas Corp.*, No. C 04-00281 JSW, 2005 WL 2894628, at *3 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The FAA reflects "both a 'liberal federal policy favoring arbitration,', and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility, Inc. v. Concepcion*, 131 S.Ct. 1740, 1745 (2011) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) and *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010)). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms. *Id*. at 1745-46 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) and *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)(citations omitted)).

Nonetheless, when a question arises as to whether "a particular party is bound by the arbitration agreement," "the liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) (emphasis in original; citation omitted). This is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960). "Thus, a federal court must review the contract at issue to determine whether the parties have each agreed to submit a particular dispute to arbitration." *Goodrich Cargo Sys. v. Aero* Union Corp., No. 06-06226 CRB, 2006 WL 3708065, at

\*2 (N.D. Cal. Dec. 14, 2006) (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) ("The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is an issue for judicial determination . . . ."); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 547 (1964) ("The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the . . . agreement does in fact create such a duty.")).

## IV. DISCUSSION

U.S. Bank argues that Ellsworth agreed to arbitrate his claims by continuing to use his checking account, which was subject to the arbitration provisions of the Deposit Agreement. Mot., ECF No. 32 at 11. In response, Ellsworth argues that: (1) the arbitration provision in the Deposit Agreement does not apply to disputes arising under his mortgage loan, Opp'n, ECF No. 46 at 12-15; (2) the Dodd-Frank Act forbids mandatory arbitration provisions in residential mortgage loans, *id.* at 15-17; (3) U.S. Bank has not shown that Ellsworth consented to the arbitration provision, *id.* at 17-18; (4) the Deposit Agreement ceased to be effective once Ellsworth closed his checking account, *id.* at 18-20; and (5) U.S. Bank waived its right to arbitration, *id.* at 20-21. As a threshold matter, however, the parties dispute whether the court may even consider Ellsworth's arguments. The court will first address this threshold argument before turning to the substance of the dispute.

**A. Whether the Court Can Decide the Question of Arbitrability**

U.S. Bank argues that not only did the parties agree that the merits of their dispute should be arbitrated, they also agreed that only an arbitrator can decide whether they agreed to arbitrate the merits. *See* Mot., ECF No. 32 at 13-14.

Whether a dispute is arbitrable is generally a question for a court, not an arbitrator, to answer in the first instance. *See, e.g., PowerAgent v. Electronic Data Systems Corp.*, 358 F.3d 1187 (9th Cir. 2004). Still, "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). "The language of an arbitration agreement establishes whether the determination of arbitrability is for the court or delegated to an arbitrator." *Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 F. App'x, 630, 632 (9th Cir.

2011) (citing *First Options*, 514 U.S. at 943). The court cannot "assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so." *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2777 n.1 (2010) (internal quotation marks omitted). Thus, the court begins from the presumption that arbitrability is an issue for the court to decide. *Accord, Kimble v. Rhode College, Inc.*, No. C-10-5786 EMC, 2011 WL 2175249, at *1 (N.D. Cal. June 2, 2011).

"If, however, the court concludes that the parties to the agreement did clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator, then the court should perform a second, more limited inquiry to determine whether the assertion of arbitrability is "wholly groundless." *Qualcomm, Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law); *accord, DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011); *Agere Systems, Inc. v. Samsung Electronics Co. Ltd.,* 560 F.3d 337, 339 (5th Cir.2009); *Madrigal v. New Cingular Wireless Services, Inc.*, 09-CV-00033-OWW-SMS, 2009 WL 2513478 (E.D. Cal. Aug. 17, 2009); *Clarium Capital Mgmt. LLC v. Choudhury*, No. C 08-5157 SBA, 2009 WL 331588, at *4-5 (N.D. Cal. Feb. 10, 2009); *Clyde Bergemann, Inc. v. Sullivan, Higgins & Brion, PPE, LLC*, CIV.A. 08-162-KI, 2008 WL 2116908 (D. Or. May 14, 2008) *adhered to on reconsideration sub nom. Clyde Bergemann, Inc. v. Sullivan, Higgins & Brion*, 2008 WL 4279632 (D. Or. Sept. 18, 2008).

The delegation provision in the Deposit Agreement states:

> If you or we elect to arbitrate a dispute concerning your account,ature the dispute will be decided by arbitration under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). If this arbitrator or these arbitration rules are not available, then you and we will use a comparable substitute arbitration procedure and/or arbitration organization that does business on a nationwide basis.

Farka Decl. Ex. 6, ECF No. 34-7 at 2.

U.S. Bank argues that the Deposit Agreement's reference to the AAA Commercial Arbitration Rules ("AAA Rules") "shows a clear and unmistakable intent to delegate questions of scope to the arbitrator." Mot., ECF No. 32 at 14 (quoting *Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 F. App'x, 630, 632 (9th Cir. 2011) (quotation marks omitted)). This is because Rule 7 of the AAA Rules provides: "The arbitrator shall have the power to rule on his or her own jurisdiction including any objections with respect to the existence, scope, or validity of the arbitration

agreement." *See* Decl. of James McGuire Supp. Mot. to Compel Arbitration ("McGuire Decl.") Ex. A, ECF No. 33-1 at 5.

Though there does not appear to be any binding authority, U.S. Bank cites a number of cases holding that incorporation of the AAA Rules shows clear and unmistakable intent to delegate the arbitrability question to the arbitrator. Mot., ECF No. 32 at 14-15 (citing *Kimble v. Rhode College, Inc.*, No. C-10-5786 EMC, 2011 WL 2175249, at *12-13 (N.D. Cal. June 2, 2011); *Clarium Capital Mgmt.*, 2009 WL 331588, at *5; *Visa USA, Inc. v. Maritz Loyalty Mktg., Inc.*, No. C 07-05585 JSW, 2008 WL 744832, at *5 (N.D. Cal. March 18, 2008); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005).

Ellsworth counters that the Deposit Agreement does not incorporate the AAA Rules so broadly as any of the cited cases. *See* Opp'n, ECF No. 46 at 23, n. 16. Here, the delegation provision is limited to "a dispute concerning your account," which, Ellsworth argues, shows intent that the AAA Rules apply only to the substantive dispute between the parties, and not also to the question of arbitrability. Opp'n, ECF No. 46 at 22-23. In contrast, the delegation provision in *Fadal* states that claims "arising out of or related to this agreement" shall be decided under the AAA Rules. *Id.* at 23 n.16 (quoting *Fadal*, 461 Fed. App'x at 631). The other cases cited by U.S. Bank contain similarly broad delegation provisions.[3]

In Reply U.S. Bank does not address Ellsworth's argument regarding the scope of the delegation and cites no countervailing authority. Instead, U.S. Bank states that Ellsworth position runs counter to precedent, "which holds that identification of the AAA Rules as the governing authority is 'clear

---

[3] *See Kimble*, 2011 WL 2175249, at *2 (AAA Rules shall decide "any dispute arising from my enrollment, no matter how described, pleaded or styled"); *Clarium Capital Mgmt.*, 2009 WL 331588, at *2 (arbitration in accordance with AAA Rules shall resolve "any controversy or claim arising out of or relating to this Agreement"); *Visa USA*, 2008 WL 744832, at *5 (AAA Rules apply in the event of disagreement regarding dispute resolution procedure); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d at 1368 (AAA Rules shall settle "[a]ny dispute, claim or controversy arising out of or relating to this Agreement, or the breach or validity hereof"); *Contec Corp.*, 398 F.3d at 207 (AAA Rules will resolve "any dispute arising under the agreement"); *Terminix*, 432 F.3d at 1333 n.1 (AAA Rules will decide "any controversy or claim . . . arising out of or relating to [the] agreement" or "all matters in dispute between [the parties]").

ORDER (C 12-02506 LB) 9

1  and unmistakable evidence that arbitrability issues are to be decided by the arbitrator." Reply, ECF
2  no. 54 at 10. The court disagrees. If mere identification of the AAA Rules necessarily delegated all
3  questions of arbitrability, the contracting parties' ability to limit the shape and scope of a delegation
4  would be impaired.

5  Instead, the court looks to the intent of the parties as manifested in their agreement. On this
6  record, the court agrees with Ellsworth that the delegation of "a dispute concerning your account" is
7  substantially narrower than the broad provisions in the cases U.S. Bank cites. More importantly, it
8  is not clear and unmistakable that the procedural issue of who decides arbitrability "concerns
9  Ellsworth's account" within the meaning of the Deposit Agreement. Accordingly the court will
10 address the question of whether the Ellsworth's claims are within the scope of the arbitration
11 provision.

12 The result would be the same even if U.S. Bank had provided clear and unmistakable evidence
13 of intent to delegate the arbitrability question because U.S. Bank's argument on the merits is
14 "wholly groundless." Where a court concludes that the parties clearly and unmistakably intended to
15 delegate the power to decide arbitrability to an arbitrator, the court must nevertheless undertake "a
16 second, more limited inquiry to determine whether the assertion of arbitrability is 'wholly
17 groundless.'" *Qualcomm Inc.,* 466 F.3d at 1371. This "wholly groundless" inquiry prevents a party
18 from "asserting any [substantive] claim at all, no matter how divorced from the parties' agreement,
19 [only] to force an arbitration" over the scope of the arbitration agreement. *Id.* at 1373 n. 5. Upon
20 finding that an assertion of arbitrability is "wholly groundless," the court may deny the request for a
21 stay notwithstanding the parties' clear and unmistakable intent to delegate arbitrability decisions.

22 Ellsworth argues, and the court agrees, that the application of the Deposit Agreement's
23 arbitrability provisions to the Mortgage Agreement is "wholly groundless." For the reasons stated
24 below, the court finds that the Deposit Agreement does not require Ellsworth to arbitrate his
25 mortgage disputes. No reasonable doubts exist here to resolve in favor of arbitration; the court
26 therefore finds US Bank's arbitrability arguments to be "wholly groundless." Even if the Deposit
27 Agreement's arbitration provision manifested clear and unmistakable intent to delegate questions of
28 arbitrability to the AAA, U.S. Bank's groundless assertion in this case would compel the court to

deny U.S. Bank's motion.

**B. Whether Ellsworth's Claims Are Within the Scope of the Arbitration Agreement**

The court now turns to the question of whether the Deposit Agreement's arbitration provisions covers Ellsworth's claims. The crux of the dispute, and the dispositive issue presented, is whether the arbitration provision in the Deposit Agreement applies to Ellsworth's Mortgage Agreement. U.S. Bank argues that the arbitration provision applies according to its plain language. The Deposit Agreement permits either party to choose arbitration of "a dispute concerning your account . . . ." Mot., ECF No. 32 at 8. The Deposit Agreement defines account as "any savings, transaction (for example checking,) and time deposit account or other type of account you have with us wherever held or maintained." Mot., ECF No. 32 at 9 (quoting Farka Decl. Ex. 6, ECF No. 34-6 at 6).

Ellsworth counters that the arbitration provision states that it applies to an account (singular), which refers only to his checking account. The court rejects this argument because the Deposit Agreement separately provides that "words and phrases used in this document should be interpreted so the singular includes the plural and the plural includes the singular." Farka Decl. Ex. 6, ECF No. 34-6 at 6.

Ellsworth more convincingly argues that the Deposit Agreement's definition of "account" is limited to deposit accounts. Opp'n, ECF No. 46 at 12. He points out that the definition falls under the heading "**TERMS APPLICABLE TO ALL DEPOSIT ACCOUNTS**," and that it lists three types of deposit accounts (savings, transaction, and time deposit) but does not reference credit accounts or mortgage loans. Opp'n, ECF No. 46 at 12-13. In addition, Ellsworth cites binding authority that an arbitration provision in an agreement "does not control the separate agreements of the parties." *Int'l Ambassador Programs, Inc. v. Archexpo*, 68 F.3d 337, 340 (9th Cir. 1995); *see also Goodrich Cargo Sys. v. Aero Union Corp.*, No. C 06-06226, 2006 WL 3708065 (N.D. Cal. Dec. 14, 2006). In *Int'l Ambassador*, where there existed "two distinct disputes arising under two separate agreements, one providing for arbitration and one not," the court held that an arbitration award did not preempt or preclude a judgment obtained in another lawsuit between the same parties and involving the same business relationship. *Int'l Ambassador Programs, Inc.*, 68 F.3d at 337; *Accord, Humetrix, Inc. v. Gemplus, S.C.A.*, 129 F.3d 125 (9th Cir. 1997) (refusing to subject

agreement to arbitration provisions in separate agreements where the agreements were "negotiated and entered into separately" and "different substantially" in their terms and services). Even more to the point, the court in *Goodrich Cargo* held that an arbitration provision in one agreement was inapplicable to a separate and discrete agreement between the same parties, even though the two agreements pertained to a single transaction. *Goodrich Cargo Sys.*, 2006 WL 3708065, at *2.

In reply, U.S. Bank labels Ellsworth's Mortgage Agreement a "mortgage account" and argues that it is an "other type of account" as defined in the Deposit Agreement. *See* Reply, ECF No. 54 at 11. According to U.S. Bank, the applicability of the arbitration provision is premised on the term "account." And their argument depends on the term "account" being defined as "any . . . other type of account," which U.S. Bank baldly asserts includes an unrelated mortgage loan. The court cannot accept this circular logic.

Applying the *Int'l Ambassador Programs* and *Goodrich Cargo Systems* holdings cited by Ellsworth, the court finds that the Deposit Agreement and Mortgage Agreement are "separate" and "discrete" agreements such that the Deposit Agreement's arbitration provision would not apply to claims arising out of the Mortgage Agreement. This is not, as in *Goodrich Cargo*, an issue of a single transaction; to the contrary, the Deposit and Mortgage Agreements deal with entirely separate transactions. The only commonality between the two agreements is the parties involved, and under *Int'l Ambassador*, this is insufficient grounds for imputing an arbitration provision between agreements. The court will not subject the Mortgage Agreement to the arbitration provisions in the separate and distinct Deposit Agreement.

Ellsworth proffers additional arguments in support of his position, including waiver, the anti-arbitration provisions of the Dodd Frank Act, lack of notice or consent, and Ellsworth's previous closure of his checking account. Given the dispositive nature of Ellsworth's primary arguments, the court need not address these subsidiary disputes.

**IT IS SO ORDERED.**

Dated: September 19, 2012

LAUREL BEELER
United States Magistrate Judge