1

2

3

4

5

6

7

8                  UNITED STATES  DISTRICT COURT

9                    Northern District of California

10                       San Francisco Division

11   STEPHEN ELLSWORTH, as an individual          No. C 12-02506 LB
     and as a Representative of the classes and on
12   behalf of the general public,

13                          Plaintiff,            ORDER DENYING U.S. BANK, N.A.'S
                                                  MOTION TO DISMISS AND DENYING
           v.                                     AMERICAN SECURITY INSURANCE
14                                                COMPANY'S MOTION TO DISMISS
     U.S. BANK,  N.A., and AMERICAN
15   SECURITY INSURANCE COMPANY,                  [ECF Nos. 57, 68 ]

16                          Defendants.
     _____/
17

18                            I.  INTRODUCTION

19        In this putative class action, Stephen Ellsworth challenges his lender U.S. Bank's alleged force-

20   placing of backdated flood insurance on his real property and receiving kickbacks from the

21   insurance company, American Security Insurance Company ("ASIC").  First Amended Class Action

22   Complaint ("FAC"), ECF No. 26, ¶ 13.[1]  Ellsworth states six claims: (1) breach of contract against

23   U.S. Bank; (2) breach of the covenant of good faith and fair dealing against U.S. Bank; (3)-(4)

24   unjust enrichment against U.S. Bank and ASIC; and (5)-(6) violations of California Business &

25

26

27   _____

28        [1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
     generated page numbers at the top of the document.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Professions Code section 17200 *et seq.* against U.S. Bank and ASIC.[2]  *See id.*, ¶¶ 58-102.

2      ASIC and U.S. Bank move to dismiss the complaint, arguing that the claims are (1) preempted

3  by the National Bank Act, (2) barred by the filed rate doctrine, (3) barred by the voluntary payment

4  doctrine, and (4) fail to state a claim.  *See* ASIC's Motion to Dismiss ("ASIC Mot."), ECF No. 57;

5  U.S. Bank's Motion to Dismiss ("U.S. Bank Mot."), ECF No. 68.  For the reasons stated below, the

6  court DENIES the motions to dismiss.

7                                    **II.  STATEMENT**

8  **A.  Facts From FAC**

9      On or about July 2, 2007, Ellsworth obtained a $393,892 mortgage loan from U.S. Bank that was

10  secured by the deed of trust (the "Mortgage") on his Napa County, California home.  *See* FAC, ECF

11  No. 26, ¶ 13; *id.* Ex. 1, ECF No. 26-1 at 3-4.  U.S. Bank is the lender-in-interest and servicer of

12  Ellsworth's mortgage loan.  *See id.* ¶ 14.  The Mortgage includes a provision that allows U.S. Bank,

13  in its discretion, to require that Ellsworth maintain flood insurance on the property.

14      **5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter
15      erected on the Property insured against loss by fire, hazards included within the term
        "extended coverage," and any other hazards including, but not limited to, earthquakes and
16      floods, for which Lender requires Insurance.  This Insurance shall be maintained in the
        amounts (including deductible levels) and for the periods that Lender requires.  What Lender
17      requires pursuant to the preceding sentences can change during the term of the Loan.  The
        insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's
18      right to disapprove Borrower's choice, which right shall not be exercised unreasonably.

19  FAC Ex. 1, ECF No. 26-1 at 7.  The same provision permits U.S. Bank to force-place flood

20  insurance at Ellsworth's expense.  *Id.*

21      If Borrower fails to maintain any of the coverages described above, Lender may obtain
        insurance coverage, at Lender's option and Borrower's expense.  Lender is under no
22      obligation to purchase any particular type or amount of coverage.  Therefore, such coverage
        shall cover Lender, but might or might not protect Borrower, Borrower's equity in the
23      Property, or the contents of the Property, against any risk, hazard or liability and might
        provide greater or lesser coverage than was previously in effect.  Borrower acknowledges
24      that the cost of the insurance coverage so obtained might significantly exceed the cost of
        insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this
25      Section 5 shall become additional debt of Borrower secured by this Security Instrument.

26  _____

27      [2] Ellsworth brings his first four claims as an individual and on behalf of a nationwide class
    and sub-class and the fifth and sixth claims as an individual and on behalf of a California class and
28  sub-class.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  These amounts shall bear interest at the Note rate from the date of disbursement and shall be
2  payable, with such interest, upon notice from Lender to Borrower requesting payment.

3  *Id.*  Ellsworth alleges that U.S. Bank's discretion to force-place insurance is constrained by the

4  Mortgage's paragraph 9, which provides:

5  **9.  Protection of Lender's Interest in the Property and Rights Under** this Security
   Instrument.  If (a) Borrower fails to perform the covenants and agreements contained in this
6  Security Instrument, . . . then Lender may do and pay for whatever is reasonable or
   appropriate to protect Lender's interest in the Property and rights under this Security
7  Instrument, including protecting and/or assessing the value of the Property, and securing
   and/or repairing the Property.
8

9  *Id.* Ex. 1, ECF No. 26-1 at 8.  The Mortgage also contains a provision titled "Loan Charges," which

10  provides that U.S. Bank "may charge Borrower fees for services performed in connection with

11  Borrower's default, for the purpose of protecting [U.S. Bank's] interest in the Property and rights

12  under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and

13  valuation fees."  *Id.* at 11.

14      U.S. Bank initially did not require Ellsworth to maintain flood insurance on the property.  *See*

15  FAC ¶ 18.  On or about June 9, 2010, U.S. Bank sent Ellsworth a notice (the "Notice"), informing

16  him that "[o]ur records indicate your property is located in a Special Flood Hazard Area (SFHA) as

17  determined by the Federal Emergency Management Agency (FEMA)" and that the Mortgage and

18  the Flood Disaster Protection Act of 1973 required Ellsworth to purchase flood insurance.  *Id.* ¶ 18;

19  *id.* Ex. 2, ECF No. 26-2 at 2.  The Notice explained that U.S. Bank had purchased temporary flood

20  insurance coverage on Ellsworth's property from ASIC.  *Id.* ¶ 19, Ex. 2 at 2-3.  The insurance

21  coverage was effective as of July 3, 2009 and would expire 45 days after the June 9, 2010 notice.  *Id.*

22  ¶ 20, Ex. 2 at 2-3.  If Ellsworth failed to provide adequate proof of flood insurance within 45 days,

23  "this temporary coverage will convert to a full year policy and the annual premium [$2,250] will be

24  added to your escrow account."  *Id.* ¶ 20, Ex. 2 at 3.  The Notice also informed Ellsworth that "[i]n

25  many instances, the insurance we purchase for you may be more expensive than you are able to

26  obtain on your own" and provided the telephone number of another insurance agency that could also

27  provide Ellsworth with adequate flood insurance.  *Id.* ¶ 20, Ex. 2 at 2-3.

28      On August 18, 2010, U.S. Bank sent Ellsworth a second notice ("Second Notice") informing him

UNITED STATES DISTRICT COURT
For the Northern District of California

1   that it had not received evidence that he had purchased flood coverage. *Id.* Ex. 3, ECF No. 26-3 at

2   2. Accordingly, U.S. Bank explained that it had force-placed the flood insurance described in the

3   June 9, 2010 notice. *Id.* Ellsworth alleges that the force-placed flood insurance policy was

4   backdated so that it was effective from July 3, 2009 to July 3, 2010, though it was not issued until

5   August 18, 2010. *Id.* ¶¶ 21-22, Ex. 4., ECF No. 26-4 at 2. ASIC allegedly paid U.S. Bank a

6   commission or kickback for force-placing ASIC's flood insurance policy, U.S. Bank kept the

7   commission, and Ellsworth paid the full $2,250 premium. *Id.* ¶¶ 23-24.

8       In August 2010, Ellsworth purchased a one-year flood insurance policy through State Farm

9   effective September 1, 2010. *See id.* ¶ 25, Ex. 5, ECF No. 26-5. This policy provided $250,000 in

10   flood insurance coverage like the ASIC policy, but it was not backdated and cost only $276. *Id.*

11      Ellsworth alleges that ASIC's standard business practice is to pay kickbacks or commissions (a

12   percentage of the premium) to banks issuing force-placed coverage, including U.S. Bank. *Id.* ¶ 23,

13   27. ASIC's practice of paying commissions to its lender-clients has been documented in numerous

14   court opinions, in publicly-filed deposition testimony, and *American Banker* magazine. *Id.* ¶¶ 29-

15   31. In addition, ASIC discloses details of its commission payments in public regulatory filings,

16   including filings with the California Department of Insurance. *Id.* ¶ 32.

17      According to Ellsworth, many institutions have criticized the allegedly unfair business practices

18   in the force-placed insurance business, including kickbacks and backdating. For example, numerous

19   courts have condemned the practice of paying and accepting commissions on force-placed insurance

20   coverage, *see id.* ¶ 36 (collecting cases), and force-placing backdated insurance policies, *id.* ¶ 45

21   (collecting cases). Fannie Mae also has issued restrictions on lenders' ability to obtain

22   reimbursement for force-placed insurance commissions and is seeking to entirely eliminate

23   servicers' ability to pass these costs on to it. *Id.* ¶¶ 38-39. The California Insurance Commissioner

24   has expressed concern about "questionable financial integration between mortgage lenders and

25   insurers providing 'forced-placed' mortgage insurance." *Id.* ¶ 40. Similarly, in May 2012, the New

26   York Department of Financial Services held public hearings regarding these practices. *Id.* ¶ 41.

27   Also, the National Association of Insurance Commissioners has expressed its "regulatory concern"

28   about "reverse competition" in the force-placed insurance market and has condemned the practice of

1   force-placing backdated policies.  *Id.* ¶¶ 42-43.

2        On April 9, 2012, Ellsworth sent a letter to U.S. Bank stating that the force-placed flood

3   insurance policies violated the deed of trust and requesting a refund of the premiums he paid.  *See*

4   *id.* ¶ 26; *id.* Ex. 6, ECF No. 26-6 at 2.  Ellsworth did not receive a response from U.S. Bank.  *Id.* ¶

5   26.

6        **B.  Procedural History**

7        On May 16, 2012, Ellsworth filed this lawsuit against U.S. Bank and ASIC on behalf of himself

8   and nationwide and California classes of similarly situated individuals.  *See* Complaint, ECF No. 1.

9   Ellsworth alleges that he is a California resident, U.S. Bank is a national bank based in Ohio, and

10  ASIC is a Delaware corporation with its principal place of business in Atlanta, Georgia.  FAC, ECF

11  No. 26, ¶¶ 7-9.  Ellsworth alleges that this court has jurisdiction under the Class Action Fairness

12  Act, 28 U.S.C. § 1332(d)(2), based on his allegations of minimal diversity, a putative class with

13  more than 100 members, and an amount in controversy greater than $5,000,000.  FAC, ECF No. 26,

14  ¶ 10.

15       Ellsworth seeks to represent a class consisting of "[a]ll persons who have or had a loan or line of

16  credit with U.S. Bank secured by their residential property in the United States, and who were

17  charged for lender-placed flood insurance by U.S. Bank within the applicable limitations period."

18  *Id.* ¶ 47.  Ellsworth also proposes several claim-specific sub-classes:  (1) to the extent that claims 1-

19  4 are based on backdating, Ellsworth proposes a sub-class of all class members who were charged

20  for backdated lender-placed flood insurance within the limitations period; (2) under claims 5 and 6,

21  Ellsworth proposes a sub-class of all persons who have or had a loan or line of credit with U.S. Bank

22  secured by their residential property in the State of California, and who were charged for lender-

23  placed flood insurance by U.S. Bank on or after May 16, 2008; and (3) to the extent that claims 5

24  and 6 are based on backdating, Ellsworth proposes a sub-class of all persons who have or had a loan

25  or line of credit with U.S. Bank secured by their residential property in the State of California and

26  who were charged for backdated lender-placed flood insurance by U.S. Bank on or after May 16,

27  2008.  *Id.* ¶¶ 48-50.

28       ASIC moved to dismiss the FAC on August 31, 2012.  ECF No. 57.  U.S. Bank moved to

UNITED STATES DISTRICT COURT
For the Northern District of California

1   dismiss the FAC on September 27, 2012.  ECF No. 68.   All parties consented to the undersigned's

2   jurisdiction.  *See* ECF Nos. 19, 23, 41.

3                                    **III.  LEGAL STANDARDS**

4   **A.  Subject Matter Jurisdiction**

5        Dismissal of a claim is appropriate under Federal Rule of Civil Procedure Rule 12(b)(1) when

6   the court lacks subject-matter jurisdiction over the claim.  Federal subject-matter jurisdiction must

7   exist at the time the action is commenced.  *Morongo Band of Mission Indians v. California Bd. of*

8   *Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988).  A Rule 12(b)(1) motion may either attack the

9   sufficiency of the complaint to establish federal jurisdiction (a facial challenge) or allege a lack of

10  jurisdiction that exists despite the formal sufficiency of the complaint (a factual challenge).  *See*

11  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Thornhill Publishing Co., Inc. v. General Tel. &*

12  *Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Roberts v. Corrothers*, 812 F.2d 1173, 1177

13  (9th Cir. 1987).  A facial attack asserts lack of federal jurisdiction based on the complaint alone, and

14  the court must accept all allegations of fact in the complaint as true and construe them in the light

15  most favorable to the plaintiffs.  *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139

16  (9th Cir. 2003).  By contrast, with a factual challenge, a court need not assume the truth of factual

17  allegations but may hear additional evidence about jurisdiction and resolve factual disputes when

18  necessary.  *See Roberts*, 812 F.2d at 1177.  If a defendant challenges jurisdiction by presenting

19  evidence, then the party opposing the motion must present sufficient evidence to support the court's

20  subject-matter jurisdiction.  *See Savage v. Glendale Union High School, Dist. No. 205, Maricopa*

21  *County*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).  Dismissal of a complaint without leave to amend

22  should be granted only where the jurisdictional defect cannot be cured by amendment.  *Eminence*

23  *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

24  **B.  Failure to State a Claim**

25       Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that

26  the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint must therefore provide a

27  defendant with "fair notice" of the claims against it and the grounds for relief.  *See Bell Atlantic*

28  *Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and citation omitted).

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

## C. **The National Flood Insurance Act**

Under the National Flood Insurance Act of 1968 ("NFIA") and the Flood Disaster Protection Act of 1973, as amended, the Office of the Comptroller of Currency ("OCC") is charged with

UNITED STATES DISTRICT COURT
For the Northern District of California

promulgating regulations that require lending institutions and servicers to ensure that properties

subject to their mortgage loans have adequate flood insurance. *See* 42 U.S.C. §§ 4012a(b)(1),

4003(a)(5). The OCC regulations that control a lender's powers and obligations related to flood

insurance provide that a national bank "shall not make, increase, extend, or renew any designated

loan unless the building . . . securing the loan is covered by flood insurance for the term of the

loan."[3] 12 C.F.R. § 22.3(a) (also setting minimum coverage requirements); *see also* 42 U.S.C. §

4012a(b)(1) (substantially similar); 12 C.F.R. § 22.2(b) (regulations applicable only to national

banks). The NFIA permits lenders to force-place flood insurance in areas with special flood

hazards:

> If, at the time of origination or at any time during the term of a loan secured by improved real
> estate or by a mobile home located in an area that has been identified . . . as an area having
> special flood hazards and in which insurance is available under the [NFIA], the lender or
> servicer for the loan determines that the building or mobile home and any personal property
> securing the loan is not covered by flood insurance or is covered by [inadequate flood
> insurance], the lender or servicer shall notify the borrower under the loan that the borrower
> should obtain, at the borrower's expense, an amount of flood insurance for the building or
> mobile home and such personal property that is not less than the amount under subsection
> (b)(1) of this section, for the term of the loan.

42 U.S.C. § 4012a(e)(1). "If the borrower fails to purchase such flood insurance within 45 days

after notification . . . the lender or servicer for the loan shall purchase the insurance on behalf of the

borrower and may charge the borrower for the cost of premiums and fees incurred by the lender or

servicer for the loan in purchasing the insurance." 42 U.S.C. § 4012a(e)(2).[4] "If a bank requires the

---

[3] "Designated loan means a loan secured by a building or mobile home that is located or to
be located in a special flood hazard area in which flood insurance is available under the [National
Flood Insurance Act of 1968]." 12 C.F.R. § 22.2(e).

[4] The OCC has promulgated a similar regulation:

If a bank, or a servicer acting on behalf of the bank determines at any time during the
term of a designated loan that the building . . . is not covered by flood insurance or is
covered by flood insurance in an amount less than the amount required under § 22.3,
then the bank or its servicer shall notify the borrower that the borrower should obtain
flood insurance, at the borrower's expense, in an amount at least equal to the amount
required under § 22.3, for the remaining term of the loan. If the borrower fails to
obtain flood insurance within 45 days after notification, then the bank or its servicer
shall purchase insurance on the borrower's behalf. The bank or its servicer may

escrow of taxes, insurance premiums, fees, or any other charges . . . the bank shall also require the

escrow of all premiums and fees for any flood insurance required under § 22.3." 12 C.F.R. § 22.5.

## IV.  DISCUSSION

The court first considers Defendants' arguments that the National Bank Act preempts

Ellsworth's claims, then turns to the filed rate and voluntary payment doctrine arguments, and

finally considers Defendants' attacks on the sufficiency of the claims in the first amended complaint.

### A.  <u>Whether the National Bank Act Preempts Ellsworth's Claims</u>

#### 1.  **Preemption Under the National Bank Act and OCC Regulations**

Defendants argue that Ellsworth's claims are preempted entirely under the National Bank Act

("NBA"), 12 U.S.C. §§ 21 *et seq.*, and related regulations promulgated by the OCC.  *See* USB Mot.,

ECF No. 68 at 12-21; ASIC Mot., ECF No. 57 at 17-18.[5]  Ellsworth counters that his claims are not

preempted because his state law claims do not conflict with the NBA, and even if they did, his

claims against ASIC would survive.  Pl.'s Mem. in Opp'n to U.S. Bank's Motion to Dismiss ("U.S.

Bank Opp'n"), ECF No. 73 at 20; Pl.'s Mem. in Opp'n to ASIC's Motion to Dismiss ("ASIC

Opp'n"), ECF No. 70 at 30-32.

The NBA vests federally chartered banks with the power "[t]o exercise . . . subject to law, all

such incidental powers as shall be necessary to carry on the business of banking."  12 U.S.C. § 24

(Seventh).  The "business of banking" authorized by the NBA extends beyond those events

specifically enumerated in the Act.  *See NationsBank of North Carolina, N.A. v. Variable Annuity

Life Ins. Co.*, 513 U.S. 251, 258 n.2 (1995).  For example, the NBA authorizes federally chartered

banks to engage in real estate lending.  *See* 12 U.S.C. § 371.

---

charge the borrower for the cost of premiums and fees incurred in purchasing the
insurance.

12 C.F.R. § 22.7.

[5]  ASIC incorporated by reference U.S. Bank's preemption arguments in U.S. Bank's motion
to dismiss Ellsworth's original complaint.  *See* ASIC Mot., ECF No. 57 at 17 (citing ECF No. 20).
Because Ellsworth amended his complaint, that motion was mooted, and the court considers only the
new preemption arguments in U.S. Bank's motion to dismiss the FAC.  *See* ECF No. 68.

<div style="writing-mode: vertical">UNITED STATES DISTRICT COURT<br>For the Northern District of California</div>

UNITED STATES DISTRICT COURT
For the Northern District of California

1    The OCC "has the power to promulgate regulations and to use its rulemaking authority to define

2    the 'incidental powers' of national banks beyond those specifically enumerated in the statute."

3    *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555 (9th Cir. 2010) (citing 12 U.S.C.

4    § 93a (OCC authorized to "prescribe rules and regulations to carry out the responsibilities of the

5    office"); *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 312 (2d Cir. 2005)); *see also* 12 U.S.C. § 43;

6    *Watters v. Wachovia Bank, N.A.*, 127 S. Ct. 1559, 1564 (2007).  In addition, the OCC can issue

7    legislative rules that preempt state law.  12 U.S.C. § 43(a); *see* 12 U.S.C. § 93a.  "OCC regulations

8    possess the same preemptive effect as the [NBA] itself."  *Martinez*, 598 F.3d at 555 (citing *Fid. Fed.*

9    *Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)).

10    The NBA and related OCC regulations do not preempt the entire field of banking.  *Martinez*, 598

11    F.3d at 555.  Rather, federal courts generally "interpret[] grants of both enumerated and incidental

12    'powers' to national banks as grants of authority . . . ordinarily pre-empting *contrary* state law."

13    *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 32 (1996) (emphasis added).  "States

14    are permitted to regulate the activities of national banks where doing so does not prevent or

15    significantly interfere with the national bank's or the national bank regulator's exercise of its federal

16    powers.  But when state prescriptions significantly impair the exercise of authority, enumerated or

17    incidental under the Act, the state's regulations must give way."  *Watters*, 127 S. Ct. at 1567.

18    As the Ninth Circuit has explained:

19        State laws of general application, which merely require all businesses (including national
         banks) to refrain from fraudulent, unfair, or illegal behavior, do not necessarily impair a
20        bank's ability to exercise its real estate lending powers.  Such laws are not designed to
         regulate real estate lending, nor do they have a disproportionate or other substantial effect on
21        lending.  In fact the OCC has specifically cited the UCL in an advisory letter cautioning
         banks that they may be subject to such laws that prohibit unfair or deceptive acts or practices.
22

23    *Martinez*, 598 F.3d at 555 (citing OCC Advisory Letter, Guidance on Unfair or Deceptive Acts of

24    Practices, 2002 WL 521380, at *2, *7 n.2 (Mar. 22, 2002)).

25    Under the NBA, "[a]ny national banking association may make, arrange, purchase or sell loans

26    or extensions of credit secured by liens on interests in real estate, subject to section 1828(o) of this

27    title and such restrictions and requirements as the Comptroller of the Currency may prescribe by

28    regulation or order."  12 U.S.C. § 371.  The OCC defined the preemptive scope of a bank's real

estate lending power in 12 C.F.R. § 34.4, the applicable version[6] of which provides in relevant part:

(a)  Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks.  Specifically, a national bank may make real estate loans under 12 U.S.C. 371 and § 34.3 without regard to state law limitations concerning . . .

(2)  The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements or risk mitigants, in furtherance of safe and sound banking practices; . . .

(4)  The terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan; . . .

(6)  Escrow accounts, impound accounts, and similar accounts; . . . [and]

(10)  Processing, originating, servicing, sale or purchase of, or investment or participation in, mortgages. . . .

12 C.F.R. § 34.4(a).  In addition, "[s]tate laws purporting to regulate national bank fees and charges that do not constitute interest are addressed in 12 C.F.R. 7.4002."  12 C.F.R. § 34.4(a)(12) n.1.  Section 7.4002 provides that "[t]he establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles."  12 C.F.R. § 7.4002(b)(2).  It then goes on to list a set of considerations that should be used to determine whether any charge or fee is appropriate.  *Id.*

While the OCC granted banks broad powers to conduct business, it also limited the preemptive effect of these powers.  For example, section 34.4(b) provides, in relevant part:

---

[6]  The court applies the version in effect as of July 2, 2007.  The parties cited different versions: Ellsworth cites the amended version, and U.S. Bank cites the previous one.  U.S. Bank Opp'n, ECF No. 73 at 21-22; U.S. Bank Mot., ECF No. 68 at 13.  The NBA preemption regulations were amended by Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Publ. L. No. 111-203, 124 Stat. 1376 (2010); *id.* at §§ 1041-48.  The preemption amendments did not become effective until July 21, 2011.  *Id.* at § 1048 (preemption amendments to be effective at "transfer date"); Designated Transfer Date, 75 Fed. Reg. 57252 (Sept. 20, 2010) (establishing July 21, 2011 as the transfer date).  In addition, the Dodd-Frank Act's preemption provisions operate prospectively, beginning July 2, 2010.  Dodd-Frank Act § 1043 (codified at 12 U.S.C. § 5553 (July 21, 2010)).  At the hearing, Plaintiff's counsel said that the version did not matter here.

UNITED STATES DISTRICT COURT
For the Northern District of California

(b) State laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers:

    (1) Contracts;

    (2) Torts; . . . [and]

    (9) Any other law the effect of which the OCC determines to be incidental to the real estate lending operations of national banks or otherwise consistent with the powers and purposes set out in § 34.3(a).

12 C.F.R. § 34.4(b).  Similarly, section 7.4002 provides, "[t]he OCC applies preemption principles derived from the United States Constitution, as interpreted through judicial precedent, when determining whether State laws apply that purport to limit or prohibit charges and fees described in this section."  12 C.F.R. § 7.4002(d).

**2.  NBA Preemption and Ellsworth's Claims**

The first issue is whether Ellsworth's claims – all "contract or tort claims of general applicability" under OCC regulation 34.4(b) – thus are categorically not preempted.  *See* U.S. Bank Opp'n, ECF No. 73 at 22.  The court applies *Martinez* and holds that it must consider the conduct on which the claims are based (and not just the categories of the claims).

In *Martinez*, the Ninth Circuit found that the NBA preempted the plaintiffs' section 17200 claims.  598 F.3d 549 at 552.  The plaintiffs challenged two fees that Wells Fargo charged when they refinanced their home mortgage loan: an $800 underwriting fee, which plaintiffs claimed was "not reasonably related to Wells Fargo's actual costs of performing the underwriting;" and a $75 fee for tax services that Wells Fargo allegedly marked up and passed on to the plaintiffs.  *Id.* at 552, n.2. The plaintiffs claimed that the practice of overcharging and marking up fees constituted unfair competition under section 17200.  *Id.* at 556.  The Ninth Circuit held that the plaintiff's claims conflicted with Wells Fargo's fee-setting power[7] under 12 C.F.R. § 7.4002(b)(2), stating: "In essence the Martinezes argue that these fees are too high, and ask the court to decide how much an appropriate fee would be."  *Id.*  Because OCC regulations gave banks broad discretion to set

---

[7]  As discussed below, the plaintiffs' claims were also preempted because they conflicted with the real estate lending power under 12 C.F.R. § 34.4(a).

UNITED STATES DISTRICT COURT
For the Northern District of California

1    appropriate fee, the NBA preempted the plaintiffs claims.  *Id.*

2         In *Martinez*, the court relied on the same OCC advisory letter that Ellsworth cites and also

3    acknowledged that some claims based on generally applicable laws might not be preempted by the

4    NBA.  U.S. Bank Reply, ECF No. 74 at 8-9.  Nonetheless, the court focused on whether plaintiffs

5    claims "'would as a practical matter impose on the Bank's operations limitations concerning' the

6    ability to require or obtain insurance, the imposition of fees and charges, the terms of credit, escrow

7    accounts, and servicing of mortgages."  *Id.* at 9 (quoting *Larin v. Bank of Am., N.A.*, 475 Fed. App'x

8    121, 122 (9th Cir. 2012)).

9         Similarly, "the proper inquiry here is whether the legal duty that is the predicate of" Ellsworth's

10   claims "falls within the preemptive scope of the NBA or regulations promulgated thereunder."  *Rose*

11   *v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 (9th Cir. 2008) (*cited in Larin*, 475 Fed. App'x at

12   122).  Causes of action sounding in contract and tort are not necessarily preempted, *see* U.S. Bank

13   Opp'n at 22-23 (collecting cases), but the conduct at issue can be at core about fees, and those

14   claims – like the claims in *Martinez* – would be preempted.

15        The next issue is whether Ellsworth's claims are at their core about fees (and preempted) or are

16   about practices that are not preempted.  Ellsworth claims Defendants are liable for two allegedly

17   prohibited practices: (a) kickbacks to U.S. Bank in that "U.S. Bank and/or its affiliates received a

18   kickback or commission from ASIC on this lender-placed coverage" and "U.S. Bank did not subtract

19   this commission from the premium cost, which was passed along in full to Plaintiff;" and (b)

20   backdating of insurance coverage in that U.S. Bank purchased and charged Ellsworth for a

21   backdated and expired policy.  FAC ¶¶ 23, 2.  The court holds that the claims are not preempted.

22        ***a.  The Kickback Allegations***

23        U.S. Bank contends that claims based on the kickback allegations are preempted because they

24   substantially interfere with national banks' fee setting power under 12 C.F.R. § 7.4002 and real

25   estate lending power under 12 C.F.R. § 34.4(a).[8]

26

27   _____

28        [8] It is undisputed that U.S. Bank is a national bank under the NBA.  *See* FAC, ECF No. 26,
     ¶ 8.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

### i. Fee-setting Power

Ellsworth does not challenge "the premium that was charged by ASIC, but rather U.S. Bank's selection of ASIC in the first place," meaning, U.S. Bank's practice of selecting an insurance carrier to earn compensation for itself (in the form of kickbacks or commissions) as opposed to selecting a carrier through a competitive bidding practice. U.S. Bank Opp'n, ECF No. 73 at 24. Ellsworth disavows any challenge to U.S. Bank's fee-setting power. *Id.*

An analysis of the complaint confirms that Ellsworth does not challenge U.S. Bank's right to establish or charge fees. As to his breach of contract (and related) claims, he alleges that the kickback arrangement was unreasonable under the express terms of the mortgage. *See* FAC ¶ 61. Ellsworth alleges that U.S. Bank agreed to limit its discretion in force placing flood insurance to "do[ing] and pay[ing] whatever is reasonable or appropriate to protect [its] interest in the Property." FAC Ex. 1, ECF No. 26-1 at 8. Even if these allegations directly conflicted with U.S. Bank's powers under the NBA, nothing in the NBA suggests an intent to impair U.S. Bank's ability to contractually limit its own powers. Also, a breach of contract claims falls within the section 34.4(b) exception to NBA preemption exception for claims under state contract laws.[9] As to the unjust enrichment and unfair competition claims, the court cannot find on this record that they substantially interfere with U.S. Bank's fee-setting power.

Case decisions confirm that plaintiffs who charge a manipulation of the force-placed insurance do not challenge a bank's fee setting power. For example, in *Gutierrez v. Wells Fargo & Co.*, the court denied Wells Fargo's post-*Martinez* motion to reconsider an earlier ruling that the NBA did not preempt the plaintiffs' claims. No. C 07-05923 WHA, 2010 WL 1233885 (N.D. Cal. Mar. 26, 2010). The *Gutierrez* plaintiffs claimed that Wells Fargo's practice of posting larger checking account withdrawals before smaller ones was an unfair business practice because it was designed to

---

[9] In this context, the court does not see (and U.S. Bank has not established) any meaningful distinction between 12 C.F.R. 34.4(b) (limiting preemption under real estate lending powers), and 12 C.F.R. § 7.4002(d) ("The OCC applies preemption principles derived from the United States Constitution, as interpreted through judicial precedent, when determining whether State laws apply that purport to limit or prohibit charges and fees described in this section.").

UNITED STATES DISTRICT COURT
For the Northern District of California

1    cause account holders to accrue multiple overdraft fees.  *Id.* at *1.  That court distinguished *Martinez*

2    and held that the *Gutierrez* plaintiffs were not challenging fees:

> [P]laintiffs in the instant litigation neither challenge whether a particular overdraft fee
> charged by the bank is 'too high,' nor do they ask the Court to decide how much an
> appropriate fee would be.  Rather, the 'unfair' claim in this litigation targets whether Wells
> Fargo's manipulation of customer transactions 'behind the scenes' to maximize the
> *occurrence* of overdraft fees during the posting process was a breach of the bank's duty to act
> in good faith. . . .  This practice has nothing to do with whether Wells Fargo has the right to
> establish overdraft fees, or whether individual overdraft fees are reasonably related to actual
> underlying costs.

8    *Id.* at *2.

9        Similarly, in *Williams v. Wells Fargo Bank N.A.*, another district court found that the NBA did

10   not preempt claims that were nearly identical to Ellsworth's.  No. 11-21233-CIV, 2011 WL 4901346

11   (S.D. Fl. Oct. 14, 2011).  As that court explained, unlike the claims in *Martinez*:

> Plaintiffs are not merely challenging the imposition of the force-placed premiums or the
> amounts of those premiums.  Instead, they challenge the manipulation of the force-placed
> insurance process in general, the payment arrangement between Wells Fargo Bank and the
> other Defendants, and Wells Fargo Bank's participation in the overall scheme intended to
> provide illegal kickbacks and commissions to the entities involved.

15   *Id.* at *11 n.7 (also finding *Gutierrez* to be analogous).

16       Like the plaintiff in *Williams v. Wells Fargo Bank, N.A.*, Ellsworth challenges the allegedly

17   unfair practice of arranging for kickbacks in return for force-placing unfairly expensive insurance

18   policies.  The increased premiums (including the kickbacks) are the measure of damages caused by

19   the allegedly unfair business practices.

20       U.S. Bank's argument is that Ellsworth's claims would limit its discretion to establish and

21   calculate fees.  U.S. Bank Mot., ECF No. 68 at 15.  Also, it points out that Ellsworth's harm is the

22   fee (the $2,250 for the insurance).  But that argument is that the NBA preempts any common-law

23   contract or tort challenge to a bank's conduct that results in damages based on the fees.  The case

24   law does not support such an interpretation.  *See, e.g., Gutierrez*, 2010 WL 1233885, at *2.

25       U.S. Bank also argues that "claims that would require a national bank 'to alter the *manner* in

26   which [its] program actually operates' is *precisely* what *is* preempted."  U.S. Bank Reply, ECF No.

27   74 at 9 (quoting *Larin*, 475 Fed. App'x at 122 (emphasis and alterations in U.S. Bank's motion)).  In

28   *Larin*, the Ninth Circuit reversed the district court and held that the plaintiff's claims were not

UNITED STATES DISTRICT COURT
For the Northern District of California

preempted by the NBA.  *Id.* at 121.  The plaintiff challenged the bank's "practice of making deposited funds immediately available to [overdraft protection program (ODP)] customers, without placing a hold on a larger or suspicious deposit, [which] increases the customers' risk of fees."  *Id.* at 123 (Callahan, J., dissenting).  That implicated the bank's deposit-taking power and the related power to regulate "funds availability" under 12 C.F.R. § 7.400(b)(2)(ii)-(iv).  *Id.*  In reversing the district court, the majority held that Larin challenged only the Bank's misrepresentation of the value of its ODP program, not the Bank's operation of the program, and the claims thus were not preempted.  *Id.* at 122.

*Larin* is a non-precedential memorandum opinion, and the majority opinion is only four paragraphs long and does not provide the context that allows the court to accord it the persuasive weight that U.S. Bank suggests.  Also, the weight of authority supports the conclusion that the allegations about kickbacks and backdating here are not about the fees themselves and instead challenge practices and U.S. Bank's compliance with its contractual obligations.

### ii.  Real Estate Lending Power

U.S. Bank challenges Ellsworth's kickback claims as preempted under the NBA's real estate lending powers – the power to "make, arrange, purchase, or sell . . . real estate loans, subject to . . . such restrictions and requirements as the Comptroller of the Currency may proscribe by regulation or order,"  12 C.F.R. § 34.3(a), "but without regard to state law limitations," 12 C.F.R. § 34.4(a). U.S. Bank Mot., ECF No. 68 at 18.  U.S. Bank argues that the OCC regulations interpreting the NFIA "say nothing to prohibit a national bank from receiving a commission or other compensation" from the premiums on force-placed flood insurance.  *Id.* at 18.  U.S. Bank concludes that Ellsworth's claims are preempted based on *Martinez* because charging kickbacks is "in accord with [U.S. Bank's] federally-authorized powers in protecting its interest in the property."  *Id.*

12 C.F.R. § 34.4(b)'s preemption limitation allows for contract and tort claims "that only incidentally affect the exercise of national banks' real estate lending powers."  Ellsworth challenges conduct that is related to the real estate lending powers regulated by the OCC regulations.  That is different from obstructing, impairing, or conditioning a national bank's ability to fully exercise its federally-authorized real estate lending powers under section 34.4(a).  The court rejects this as a

1    basis for preemption.

2        ***b. The Backdating Allegations***

3        U.S. Bank also argues that Ellsworth's claims about backdated insurance coverage interfere with

4    its real estate lending powers, specifically its powers "[t]o require or obtain . . . insurance for other

5    collateral," and over "[t]he terms of credit."   U.S. Bank Mot., ECF No. 68 at 19 (citing 12 C.F.R. §

6    34.4(a)(2)).  Also, it argues that backdating is "fully consistent" with the NFIA's continuous

7    coverage requirement, which bars banks from making, increasing, extending, or renewing loans such

8    as Ellsworth's unless the property is covered by flood insurance "for the term of the loan."  *Id.*

9    (quoting 12 C.F.R. § 22.3(a)).

10       Under 12 C.F.R. § 22.7,

11       If a bank, or a servicer acting on behalf of the bank, determines at any time during the term of
         a designated loan that the building or mobile home and any personal property securing the
12       designated loan is not covered by flood insurance or is covered by flood insurance in an
         amount less than the amount required under § 22.3, then the bank or its servicer shall notify
13       the borrower that the borrower should obtain flood insurance, at the borrower's expense, in
         an amount at least equal to the amount required under § 22.3, for the remaining term of the
14       loan.  If the borrower fails to obtain flood insurance within 45 days after notification, then the
         bank or its servicer shall purchase insurance on the borrower's behalf.  The bank or its
15       servicer may charge the borrower for the cost of premiums and fees incurred in purchasing
         the insurance.

16

17   12 C.F.R. § 22.7.

18       U.S. Bank argues that its backdating practice is authorized by this section.  *See* U.S. Bank Mot.,

19   ECF No. 68 at 20 n.8.  U.S. Bank's position is that § 22.7's requirement that upon discovery of a

20   lapse, adequate insurance should be purchased "for the remaining term of the loan" can reasonably

21   be construed as meaning "for the remaining term of the loan from the date of lapse."  *Id.*  The court

22   does not find that interpretation unassailable.  The phrase "for the remaining term of the loan"

23   perhaps more arguably is prospective beginning no earlier then when the bank determines there is

24   inadequate flood insurance and more likely from the end of the 45-day notice period.

25       **3.  Conclusion**

26       The court follows the weight of authority and finds that the NBA does not preempt the

27   challenges that Ellsworth raises to the alleged kickbacks and backdating.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

**B.   Availability of Exemption under The Filed Rate Doctrine and California Insurance Code**

Defendants also argue that the claims are barred by the California insurance code.

To the extent that Defendants argue that a filed rate doctrine bars suit, Ellsworth argues – and Defendants do not really dispute – that there is no doctrine that applies.[10]  ASIC Opp'n, ECF No. 70 at 25-26 (collecting cases); ASIC Reply, ECF No. 71 at 10.

ASIC's argument is that "Ellsworth suffered no legally cognizable injury by virtue of having paid a filed and approved" insurance premium and that the claims are barred by the California Insurance Code.  ASIC Mot., ECF No. 57 at 12-16.

California law requires property and casualty insurance premiums, including those for flood insurance, to be approved by the commissioner of the California Department of Insurance before their use.  *See* ASIC Mot., ECF No. 57 at 12; *see also* Cal. Ins. Code § 1861.01(c).  The insurance code bars the commissioner from approving rates that are "excessive, inadequate, unfairly discriminatory, or otherwise in violation of this chapter."  ASIC Opp'n, ECF No. 57 at 12 (quoting Cal. Ins. Code § 1861.05(a)).  Members of the public can challenge rates both before and after approval in administrative proceedings from which judicial review is available.  See Cal. Ins. Code §§ 1858, 1858.6, 1861.05(c); *see also MacKay v. Superior Court*, 188 Cal. App. 4th 1427, 1441 (2010); *Wahl v. American Security Ins. Co.*, No. C 08-0555 RS, 2010 WL 4509814, at *2-3 (N.D. Cal. Nov. 1, 2010).  Once an insurance rate is approved, an insurer must charge the approved rates or face substantial penalties.  Cal. Ins. Code §§ 1858.07(a), 1861.01(c); ASIC Mot., ECF No. 57 at 13.

The argument is that ASIC's compliance with these provisions shields it from Ellsworth's claims.  ASIC Mot., ECF No. 57 at 13.  The relevant section provides:

> No act done, action taken or agreement made pursuant to the authority conferred by this chapter shall constitute a violation of or grounds for prosecution of civil proceedings under

---

[10]  "The filed rate doctrine bars suits against regulated utilities grounded on the allegation that the rates charged by the utility are unreasonable.  Simply stated, the doctrine holds that any 'filed rate' – that is, one approved by the governing regulatory agency – is per se reasonable and unassailable in judicial proceedings brought by ratepayers."  *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994).

1    any law of this State heretofore or hereafter enacted which does not specifically refer to
     insurance.
2    Cal. Ins. Code § 1860.1.

3        Another provision provides that "[t]he business of insurance shall be subject to the laws of

4    California applicable to any other business, including, but not limited to . . . unfair business practices

5    laws" [including the UCL]. Cal. Ins. Code § 1861.03(a).

6        The weight of authority in this district and the California Court of Appeals harmonizes sections

7    1860.1 and 1861.03(a) by narrowly construing the section 1860.1 immunity upon which ASIC relies.

8    *See MacKay*, 188 Cal. App. 4th at 1449-50; *Wahl*, 2010 WL 4509814, at *2-3. As harmonized,

9    "challenges to the reasonableness of an approved rate fall within the exclusive ambit of the chapter

10   and are exempt from the requirements of other laws." *Wahl*, 2010 WL 4509814, at *3 (discussing

11   the statutory construction articulated in *MacKay*). On the other hand, "Insurance Code section

12   1860.1 protects from prosecution under laws outside the Insurance code only acts done, actions

13   taken and agreements made pursuant to the authority conferred by the ratemaking chapter. It does

14   not extend to insurer conduct *not* taken pursuant to that authority." *Id.* at *3 (quoting *MacKay* at

15   1449) (alterations and internal quotation marks omitted).

16       Thus, the question before the court is whether Ellsworth's claims challenge ASIC's ratemaking

17   authority. They do not.

18       In *Wahl*, the plaintiff alleged that ASIC charged force-placed insurance premiums for periods

19   when the homeowner already had insurance. *Id.* ASIC argued that Wahl's claims improperly

20   challenged insurance rates that had been approved by the commissioner. *Id.* The court rejected

21   ASIC's argument because the fair reading of Wahl's UCL claim was that it was "directed at ASIC's

22   allegedly unfair conduct and not at the Commissioner's rate." *Id.* The court found that the

23   insurance code protected ASIC only in "situations where a plaintiff challenged a charged rate as

24   excessive per se, and effectively asked the Court to calculate an alternative it deemed more 'fair.'"

25   *Id.*

26       Ellsworth does not challenge the rates or the premiums he paid but instead challenges the alleged

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   kickbacks.[11]   *See* FAC ¶¶ 23, 27.  ASIC's argument that he really is challenging the premiums is

2   unpersuasive.  Just because the damages are based on increased costs incurred as a result of the

3   alleged kickback scheme does not transform a challenge to conduct and practices into a challenge to

4   the premiums.

5   **C.   The Voluntary Payment Doctrine**

6       ASIC and U.S. Bank argue that Ellsworth paid the $2,250 and thus his claims are barred by the

7   voluntary payment doctrine.

8       The voluntary payment doctrine is an affirmative defense that bars the recovery of money that

9   was voluntarily paid with knowledge of the facts.  *See Steinman v. Malamed*, 185 Cal. App. 4th

10  1550, 1557 (2010); *Stern v. AT & T Mobility Corp.*, No. CV 05-8842, 2008 WL 4382796, at *9

11  (C.D. Cal. Aug. 22, 2008); *Am. Oil Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581, 586 (1961);

12  *Western Gulf Oil Co. v. Title Ins. & Tr. Co.*, 92 Cal. App. 2d 257, 266 (1949).  "Payments of illegal

13  claims enforced by duress, coercion or compulsion, when the payor has no other adequate remedy to

14  avoid it, will be deemed to have been made involuntarily and may be recovered, but the payment

15  must have been enforced by coercion and there must have been no other adequate means available to

16  prevent the loss."  *Western Gulf Oil*, 92 Cal. App. 2d at 265.  "Duress for this purpose is shown

17  'where, by reason of the peculiar facts a reasonably prudent man finds that in order to preserve his

18  property or protect his business interests it is necessary to make a payment of money which he does

19  not owe and which in equity and good conscience the receiver should not retain, [and thus] he may

20  recover it.'" *Steinman*, 185 Cal. App. 4th at 1558 (quoting *Western Gulf Oil*, 92 Cal. App. 2d at 266).

21      Ordinarily, an affirmative defense may not be raised on a motion to dismiss.  *Scott v. Kuhlmann*,

22  746 F.2d 1377, 1378 (9th Cir.1984).  An affirmative defense may be considered if the defense is

23  based on undisputed facts or if the basis for the argument appears on the face of the complaint and

24

25  _____

26  [11]   The court disregards ASIC's statement in its reply brief that it "**paid no commission** to
    U.S. Bank or its affiliates in connection with the flood insurance placed on plaintiff's homestead."

27  ASIC Reply, ECF No. 71 at 7 (citing Declaration of Ronald K. Wilson, ECF No. 71-4, ¶ 3).  As
    Ellsworth points out in his objection to ASIC's reply evidence, ECF No. 72, this declaration

28  improperly contradicts factual allegations on a motion to dismiss.

1    any materials the court takes judicial notice of.  *See id.*; *Hernandez v. Sutter W. Capital*, C 09-03658

2    CRB, 2010 WL 3385046 (N.D. Cal. Aug. 26, 2010) (granting motion to dismiss on statute of

3    limitations grounds based on judicially noticed dates).

4        The affirmative defense is not apparent as a matter of law from the face of the complaint.

5    **D.   Failure to State a Claim**

6        **1.   Whether Ellsworth Sufficiently Alleges Claims Based on the Kickback Allegations**

7        The allegations are summarized in the fact section.  The weight of authority holds similar

8    allegations to be sufficient.  *See, e.g., McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F.

9    Supp. 2d 928, 956 (N.D. Cal. 2012); *Williams v. Wells Fargo Bank N.A.*, 2011 WL 4901346.

10       U.S. Bank's reliance on *LaCroix v. U.S. Bank, N.A.* does not change this outcome.  There, the

11   district court in the District of Minnesota dismissed claims alleging that ASIC paid U.S. Bank

12   kickbacks for force placing flood insurance.  No. 11-3236 (DSD/JJK), 2012 WL 2357602 (D. Minn.

13   June 20, 2012).  That court found that "[a]lleging that nonparty ASIC has engaged in kickback

14   schemes with other lenders, without specific facts regarding LaCroix's insurance policy or U.S.

15   Bank's protocol regarding force-placed insurance, is purely speculative and not sufficient to state a

16   claim for relief."  *Id.* at *6.

17       This case is different because Ellsworth's allegations are more specific.  In *LaCroix*, the only

18   support for the kickback allegations was "an internet article outlining the procedures that banks take

19   when force placing insurance . . . [that] neither identifies U.S. Bank nor LaCroix's insurance

20   provider, [ASIC]."  *Id.*  At oral argument, LaCroix's counsel explained that the internet article

21   discussed ASIC's parent company, but the complaint did not allege such a connection.  *Id.* n.6.

22   Here, Ellsworth has provided ample and reliable evidence not only of an industry-wide practice but

23   also that ASIC in particular pays kickbacks to lenders who force-place its flood insurance.  *See* FAC

24   ¶¶ 28-32.

25       U.S. Bank also cites *Galiano v. Fidelity Nat'l Title Ins. Co.*, 684 F.3d 309, 315 (2d Cir. 2012),

26   but that does not change the outcome here either.  There, the plaintiff alleged a section 8 RESPA

27   violation but failed to allege any specifics of the alleged kickback scheme.  *Id.*  Instead, the plaintiff

28   relied entirely on vague and general allegations of industry-wide practices.  *See id.* at 312 (quoting

allegations from the complaint).  In contrast, Ellsworth's allegations are sufficiently specific.

**2. Contract Claims**

Ellsworth brings two contract-based claims against U.S. Bank:  a breach of contract claim based on an express provision and a breach of the implied covenant of good faith and fair dealing claim.

**a.  Breach of Contract Claim Against U.S. Bank**

Under California law, to recover damages under a breach of contract claim, Plaintiff must prove the following: (i) Plaintiff and Defendants entered into a contract; (ii) Plaintiff did all, or substantially all, of the significant things that the contract required him to do; (iii) Defendants failed to do something that the contract required them to do; and (iv) Plaintiff was harmed by that failure. *Acoustics, Inc. v. Trepte Construction Co.*, 14 Cal. App. 3d 887, 913 (1971); *see First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

A court may resolve contractual claims on a motion to dismiss if the terms of the contract are unambiguous.  *Barrous v. BP P.L.C.*, 10-CV-2944-LHK, 2010 WL 4024774 (N.D. Cal. Oct. 13, 2010); *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. 2000).  By contrast, what the parties intended by an ambiguous contract is a factual determination, *United States v. Plummer,* 941 F.2d 799, 803 (9th Cir. 1991), and thus "[w]here the language 'leaves doubt as to the parties' intent,' the motion to dismiss must be denied."  *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (quoting *Consul Ltd. v. Solide Enters., Inc.,* 802 F.2d 1143, 1149 (9th Cir. 1986)); *see also Trustees of Screen Actors Guild–Producers Pension and Health Plans v. NYCA, Inc.,* 572 F.3d 771, 777 (9th Cir. 2009).

Paragraph 5 in the mortgage allows U.S. Bank to force-place flood insurance.  FAC Ex. 1, ECF No. 26-1 at 7.  Paragraph 9 requires reasonableness and appropriateness: "if Borrower "fails to perform the covenants and agreements contained in this Security Instrument, . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . ."  *See id.* at 8 (quoted in full above at p. 3).

Other courts have concluded that identical language "provides a basis for the claim that Defendants may force-place insurance only to the extent such insurance 'is necessary' to protect the property's value and [the lender's] rights in the property."  *See McNeary-Calloway*, 863 F. Supp. 2d

at 956.

*McNeary-Calloway* was a class action in which borrowers challenged their lenders' force-placed insurance practices and alleged breach of contract based on mortgage terms that are almost identical to Ellsworth's. *Compare McNeary* at 955-56 *with* FAC Ex. 1, ECF No. 26-1 at 7-8. The court denied the banks' motion to dismiss the plaintiffs' claims for breach of contract based on the banks' allegedly force-placing overpriced and backdated flood insurance and for taking kickbacks. *Id.* The court examined contractual language nearly identical to paragraph 5 of Ellsworth's mortgage. *Id.* The court noted that the contract did not "necessarily authorize charges regardless of amount and regardless of whether Defendants receive a portion of the premium . . . [nor] authorize[] backdating . . . ." *Id.* at *23. Because the court could "not say that the contracts' terms unambiguously authorize Defendants' alleged behavior, the Court denies Defendants' motion to dismiss the California Plaintiffs' breach of contract claim." *Id.* The court also considered a paragraph nearly identical to Ellsworth's section 9, finding that it "could be interpreted as explicitly restricting the lender's discretion in force-placing insurance."[12] *Id.*

The court agrees with this analysis. U.S. Bank's arguments do not change the conclusion. First, it contends that the specific contract provision in section 5, "Property Insurance," trumps the more general provision in section 9, "Protection of Lender's Interest in the Property." U.S. Bank Mot., ECF No. 68 at 24. That canon of construction does not render the contract unambiguous so that a motion to dismiss is appropriate. Second, U.S. Bank contends that the mortgage permits the kickbacks and backdating, but it relies on cases that are distinguishable. *See Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 832-33 (N.D. Ill. 2011) (granting motion to dismiss breach of contract claim based on force-placing allegedly over-priced insurance where plaintiff signed mortgage loan that expressly authorized kickbacks, commissions, and force-placed insurance costing

---

[12] U.S. Bank argues that *McNeary-Calloway* applies an incorrect rationale because, according to U.S. Bank, "where a plaintiff pleads breach of contract, the question is not whether the contract 'authorized' the defendant's action, but instead whether any term of the contract *prohibited it*. *Id.* at 25. But the court was merely making the point that the broad contractual language did not unambiguously support the defendants' reading, and that this was dispositive on a Rule 12(b)(6) motion.

1  two to five times the retail price); *Webb v. Chase Manhattan Mortg. Corp.*, No. 2:05-CV-0548, 2008

2  WL 2230696, at *19 (S.D. Ohio May 28, 2008) (applying summary judgment standard).

3       **b.  Covenant of Good Faith and Fair Dealing**

4       The covenant of good faith and fair dealing is implied in every contract and, in most situations,

5  prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the

6  contract.  *See, e.g., Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 349 (2000); *See Wolf v. Wells Fargo*

7  *Bank, N.A.,* No. C11–01337 WHA, 2011 WL 4831208, at *4 (N.D. Cal. Oct. 12, 2011) (citing

8  *McClain v. Octagon Plaza, LLC,* 159 Cal. App. 4th 784, 799 (2008)).  The covenant is a

9  "'supplement to an existing contract, and thus does not require parties to negotiate in good faith

10  prior to any agreement.'"  *Bulaoro v. Oro Real, Inc.,* No. C 11–03059 WHA, 2011 WL 6372458, at

11  * 4 (N.D. Cal. 2011) (quoting *McClain,* 159 Cal. App. 4th. at 799).

12       "The covenant of good faith finds particular application in situations where one party is invested

13  with a discretionary power affecting the rights of another.  Such power must be exercised in good

14  faith."  *Carma Developers (Cal.), Inc., v. Marathon Development California, Inc.,* 2 Cal. 4th 342,

15  372 (1992); *see Perdue v. Crocker Nat'l Bank,* 38 Cal. 3d 913, 923 (1985) ("where a contract

16  confers on one party a discretionary power affecting the rights of the other, a duty is imposed to

17  exercise that discretion in good faith and in accordance with fair dealing") (internal quotations

18  omitted).  "The exercise of discretionary powers is evaluated under the implied covenant to assure

19  that the promises of the contract are effective and in accordance with the parties' legitimate

20  expectations."  *McNeary-Calloway,* 863 F. Supp. 2d at 956-57; *see Carma*, 2 Cal. 4th at 373-74;

21  *Gabana Gulf Distrib., Ltd. v. GAP Int'l Sales, Inc.*, No. C 06-02584 CRB, 2008 WL 111223, at *8

22  (N.D. Cal. Jan. 9, 2008); *Schwarzkopf v. Int'l Bus. Machs., Inc.*, No. C 08-2715 JF (HRL), 2010 WL

23  1929625, at *13 (N.D. Cal. May 12, 2010).  The covenant does not, however, "prohibit a party from

24  doing that which is expressly permitted by an agreement.  On the contrary, as a general matter,

25  implied terms should never be read to vary express terms."  *Carma,* 2 Cal. 4th at 374.

26       Here, Ellsworth alleges that his mortgage contract with U.S. Bank gives the bank discretion to,

27  among other things, force-place flood insurance according to the contract's terms.  The FAC alleges

28  that "U.S. Bank breached this duty and abused any discretion it may have had" by purchasing

UNITED STATES DISTRICT COURT
For the Northern District of California

1  backdated flood insurance and arranging for kickbacks in connection with the force-placed flood

2  insurance.  FAC ¶ 70.

3  These allegations are grounded in California precedent, and the *McNeary* court found similar

4  allegations sufficient at this stage.  *See McNeary*, 863 F. Supp. 2d at 958.  For example, the

5  California Supreme Court recognizes the covenant's application in situations where one party has

6  discretion to act under a contract.  *See, e.g., Carma*, 2 Cal. 4th at 374.

7  Another example is *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 954 (N.D. Cal. 2009).

8  There, the plaintiff accused Wells Fargo of posting larger withdrawals to his checking account

9  before smaller ones so as to maximize the number of overdraft penalties the bank could charge.  On

10 summary judgment, Wells Fargo argued that the consumer account agreement between Wells Fargo

11 and the plaintiff expressly permitted the bank to post items to the plaintiff's checking account "in

12 any order the bank chooses," subject to law.  *Id.*  Nonetheless, the court refused to grant summary

13 judgment for the bank because the bank's discretionary authority was still subject to the covenant of

14 good faith and fair dealing.  The contract "language does nothing more than give discretion to the

15 bank and once, again, that measure of discretion must be exercised subject to good faith and fair

16 dealing and not so as to maximize bank revenue and to penalize customers as much as possible."  *Id.*

17 The court finds the detailed analysis in *McNeary-Calloway* particularly persuasive.  That case,

18 which closely parallels this one, stated persuasively that

19     the implied covenant governs Defendants' discretion in force-placing insurance.  Although
       Defendants have the right to set the scope and extent of hazard insurance coverage – and
20     explicitly warn that FPI may be "significantly" more expensive than coverage on the open
       market – the Plaintiffs here have stated a claim under the implied covenant that Defendants
21     abused this discretion by acting in bad faith and outside the reasonable expectations of the
       parties.  Whether Defendants' acts were done in bad faith and not within the reasonable
22     expectations of the parties is a question of fact that cannot be decided at the pleading stage.

23 *McNeary-Calloway*, 863 F. Supp. 2d at 958 (citing *Gabana*, 2008 WL 111223, at *8; *Locke v.*

24 *Warner Bros., Inc.*, 57 Cal. App. 4th 354, 367)).

25 U.S. Bank argues that the covenant of good faith and fair dealing requires that "no party to the

26 contract will do anything which would deprive the others of the benefits of the contract."  U.S. Bank

27 Mot., ECF No. 68 at 27.  It asserts that the cases gloss over this element and Ellsworth fails to

28 identify what benefit of the mortgage he was denied by the force-placement of coverage.  *Id.* at 16.

1    At this pleadings stage, the court finds the complaint's allegations sufficient.

2       **3. Unjust Enrichment / Restitution Claims**

3       Ellsworth's third and fourth claims are for unjust enrichment or restitution against U.S. Bank and

4    ASIC.  *See* FAC ¶¶ 75-81, 83.  Defendants argue that under California law, a party may not assert an

5    unjust enrichment claim when it alleges a violation of an express contract.  *See, e.g.*, U.S. Bank

6    Mot., ECF No. 68 at 28.  The two contracts here are the mortgage with U.S. Bank and the flood

7    insurance policy that ASIC issued.  Ellsworth counters that at the motion to dismiss stage, courts

8    allow both to proceed.  Opp'n, ECF No. 73 at 18.

9       "California courts appear to be split on whether a stand alone cause of action for unjust

10   enrichment is anything more than "a general principle, underlying various legal doctrines and

11   remedies." *Mattel, Inc. v. MGA Entm't, Inc. & Consol. Actions,* 782 F. Supp. 2d 911, 1014 (C.D.

12   Cal. 2010) (noting that "stand alone claims for unjust enrichment are simply redundant of relief

13   already available under other existing law").  Courts in this district have held that California law

14   permits unjust enrichment claims, in which "restitution may be awarded either (1) in lieu of breach

15   of contract damages, where an asserted contract is found to be unenforceable or ineffective, or (2)

16   where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar

17   conduct, but the plaintiff has chosen not to sue in tort."  *Oracle Corp. v. SAP AG,* No. C 07-1658

18   PJH, 2008 WL 5234260, at *8 (N.D. Cal. Dec. 15, 2008) (citing *McBride v. Boughton,* 123 Cal.

19   App. 4th 379, 388 (2004)); *see also Wolf*, 2011 WL 4831208, at *8 ("Restitution [under an unjust

20   enrichment theory] may be awarded in lieu of breach of contract damages when the parties had an

21   express contract, but it was procured by fraud or is unenforceable or ineffective for some reason.")

22   (citing *McBride* 123 Cal. App. 4th at 388).

23      "To state a claim for restitution, a plaintiff 'must plead receipt of a benefit and the unjust

24   retention of the benefit at the expense of another.'"  *Walters v. Fid. Mortg. of Cal.*, No. 2:09-cv-3317

25   FCD/KJM, 2010 WL 1493131, at *12 (E.D. Cal. Apr. 14, 2010) (quoting *Lectrodryer v. SeoulBank*,

26   77 Cal. App. 4th 723, 726 (2000)).

27      Plaintiffs' unjust enrichment claim is based on Defendants' alleged kickback scheme and the

28   unjust retention of those commissions for backdated premiums.  *See* FAC ¶¶ 75-79, 83.  ASIC also

**U**NITED **S**TATES **D**ISTRICT **C**OURT
For the Northern District of California

C 12-02506 LB (ORDER)                                    26

UNITED STATES DISTRICT COURT
For the Northern District of California

1   allegedly received improper benefits, including "(1) non-competitive premiums that ASIC would not

2   have secured absent a kickback to U.S. Bank to do business with ASIC, and (2) premiums for

3   backdated insurance policies." *Id.* ¶ 83.

4       There are two express contracts.  Still, given the allegations about undisclosed kickbacks and

5   inappropriate backdating, the court follows *McNeary* and holds that Ellsworth states a restitution

6   claim.

7   **4.  Unfair Competition Law Claims Against U.S. Bank and ASIC**

8       California Business & Professions Code § 17200, also known as California's "Unfair

9   Competition Law," prohibits "any unlawful, unfair or fraudulent" business practices.  Cal. Bus. &

10  Prof. Code § 17200.  "Since section 17200 is [written] in the disjunctive, it establishes three separate

11  types of unfair competition.  The statute prohibits practices that are either 'unfair' or 'unlawful,' or

12  'fraudulent.'"  *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003); *see also CelTech*

13  *Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

14      Ellsworth alleges that U.S. Bank and ASIC violated the UCL's "unfair" prong.  FAC ¶¶ 89, 97.

15  There is disagreement among California courts regarding the definition of "unfair" business

16  practices in consumer cases such as this.  As the district court in *Phipps v. Wells Fargo* explained,

17  there is a split of authority that has resulted in three different tests:

18      The test applied in one line of cases requires "that the public policy which is a predicate to a
19      consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to
        specific constitutional, statutory, or regulatory provisions." *Drum,* 182 Cal.App. 4th at 256,
20      106 Cal.Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.,* 136 Cal.App. 4th 1255,
        1260–1261, 39 Cal.Rptr.3d 634 (2006); *Davis v. Ford Motor Credit Co.,* 179 Cal.App. 4th at
21      581, 595–596, 101 Cal.Rptr.3d 697 (2009); *Gregory v. Albertson's Inc.,* 104 Cal.App. 4th
        845, 854, 128 Cal.Rptr.2d 389 (2002).

22          A second line of cases applies a test to determine whether the alleged business practice
23      "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and
        requires the court to weigh the utility of the defendant's conduct against the gravity of the
        harm to the alleged victim." *Drum,* 182 Cal.App. 4th at 257, 106 Cal.Rptr.3d 46 (citing
24      *Bardin,* 136 Cal.App. 4th at 1260, 39 Cal.Rptr.3d 634; *Davis,* 179 Cal.App. 4th at 594–595,
        101 Cal. Rptr. 3d 697)).

25          The test applied in a third line of cases draws on the definition of "unfair" in section 5 of
26      the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the
        consumer injury must be substantial; (2) the injury must not be outweighed by any
27      countervailing benefits to consumers or competition; and (3) it must be an injury that
        consumers themselves could not reasonably have avoided." *Drum,* 182 Cal. App. 4th at 257,
28      106 Cal. Rptr. 3d 46 (citing *Davis,* 179 Cal. App. 4th 597–598, 101 Cal.Rptr.3d 697;

UNITED STATES DISTRICT COURT
For the Northern District of California

1    *Camacho v. Automobile Club of Southern California,* 142 Cal.App. 4th 1394, 1403, 48

2    Cal.Rptr.3d 770 (2006)).

3    No. CV F 10–2025 LJO SKO, 2011 WL 302803, at *16 (E.D. Cal. Jan. 27, 2011); *see Davis v.*

4    *HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169-71 (9th Cir. 2012).

5        Ellsworth's claims under the unfair prong are based on the same allegations repeated throughout

6    the complaint: Defendants "manipulat[ed] the force-placed insurance process, arranged for and paid

7    kickbacks in connection with force-placed insurance, and retained money for force-placing

8    backdated flood insurance policies." FAC ¶¶ 89, 97.

9        The court follows the weight of authority in district court cases that denied motions to dismiss

10   claims supported by similar allegations in force-placed flood insurance cases. *See* U.S. Bank Opp'n,

11   ECF No. 73 at 19; *see also McNeary-Calloway*, 2012 WL 1029502, at *29 (denying motion to

12   dismiss claims alleging unfair force-placed flood insurance practices under UCL because the court

13   could not determine, as a matter of law, that the allegations would not meet any of the unfairness

14   tests); *Hofstetter v. Chase Home Fin., LLC*, No. C 10-01313 WHA, 2010 WL 3259773, at *15 (N.D.

15   Cal. Aug. 16, 2010) (denying motion to dismiss unfair UCL claim alleging lender that force-placed

16   flood insurance violated principles articulated in regulations).

17       U.S. Bank argues that the Ninth Circuit's opinion in *Davis v. HSBC Bank Nevada, N.A.*, 691

18   F.3d at 1169-71, compels a different result. There, the court addressed the various UCL tests

19   applied in California and dismissed unfair business practice claims against Best Buy that failed the

20   applicable tests. *See id.* at 1170-71. The plaintiff claimed that Best Buy failed to adequately

21   disclose the annual fee on a credit card it offered. *Id.* at 1157. The Ninth Circuit affirmed dismissal

22   because Davis failed to allege any facts to support his claim under the tethering test. *Id.* at 1170.

23   Under the balancing test, the court found that Best Buy sufficiently warned Davis of the fee and

24   gave him 90 days to cancel his account for a full refund. *Id.* This court, however, finds the present

25   case distinguishable.

26       Ellsworth satisfies the tethering test, which requires the unfairness alleged to be "tethered to

27   some legislatively declared policy or proof of some actual or threatened impact on competition."

28   *Davis*, 691 F.3d at 1150. The FAC alleges that the kickback arrangement "is inconsistent with the

NFIA, which only allows lenders and servicers to 'charge the borrower for the cost of premiums and fees *incurred* by the lender or servicer for the loan in purchasing the insurance.'"  FAC ¶ 37 (quoting 42 U.S.C. § 4012(e)(2); citing 12 C.F.R. § 22.3).  U.S. Bank does not dispute that this is a sufficient "tether."  Instead, it argues that it did nothing more than what was authorized by statute.  U.S. Bank Reply, ECF No. 74 at 21.  Though that may be true, it is a fact question to be answered in discovery, not the basis for a motion to dismiss.

As for the backdating allegations, the FAC alleges that "[r]etroactively placing flood insurance policies also is inconsistent with the advance notice requirements of the NFIA."  FAC ¶ 44 (citing 42 U.S.C. § 4012a(e) (the statutory analogue to 12 C.F.R. § 22.7)).  As discussed above, on the record presented, the court agrees.

Finally, the court rejects ASIC's argument that Ellsworth's claim under the UCL's unfairness prong must allege that ASIC violated a statute to avoid dismissal.  ASIC Mot., ECF No. 57 at 25.  To hold otherwise would render the UCL's unlawful prong meaningless.  While Ellsworth's claims do not implicate the constitutional, statutory, or regulatory provisions under which ASIC is regulated, they do "sugges[]t ASIC engaged in similarly coercive behavior."  *Wahl v. Am. Sec. Ins. Co.*, ("*Wahl I*"), No. C 08-00555 RS, 2010 WL 1881126, at *7 (N.D. Cal. May 10, 2010)

Ellsworth also satisfies the balancing test given the lenient standard on a motion to dismiss.  Under the balancing test, the court examines the FAC to determine whether it sufficiently alleges that the harm of U.S. Bank's and ASIC's business practices outweigh their utility.  The FAC satisfies this standard.  U.S. Bank argues that its actions are akin to Best Buy's in *Davis* in that it was "fully transparent" in its notice to Ellsworth, and he had a full opportunity to avoid the quoted premium."  U.S. Bank Mot., ECF No. 68 at 29-30.  The court appreciates the argument and declines to make that determination as a matter of law on this record.  For example, a borrower may not be able to avoid force-placed retroactive insurance if he were unable to purchase it on his own.  Nor were any kickbacks transparently disclosed.  Based solely on the FAC, the court finds that ASIC's attempt to manipulate the insurance market by offering kickbacks to lenders who force-place

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  premium-priced policies fails the balancing test.[13]  Because Ellsworth's UCL claims survive under

2  multiple theories, the court does not reach the *Camacho* test.

3      Accordingly, the court denies U.S. Bank's and ASIC's motions to dismiss Ellsworth's fifth and

4  sixth claims for relief.

5  <center>**V.  CONCLUSION**</center>

6      The court denies the motions to dismiss.  This disposes of ECF Nos. 57 & 68.

7      **IT IS SO ORDERED.**

8  Dated: December 11, 2012

9  LAUREL BEELER
   United States Magistrate Judge

---

27  [13]  As discussed above, the court does not find that 42 U.S.C. § 4012a(e)(1) & (2) required
U.S. Bank to force-place backdated flood insurance.  Accordingly, the court disagrees with the Safe
28  Harbor Doctrine argument that ASIC raised in its reply brief.  *See* ECF No. 71 at 14-16.