Matthew C. Helland, CA State Bar No. 250451
helland@nka.com
NICHOLS KASTER, LLP
One Embarcadero Center, Suite 720
San Francisco, CA  94111
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Rebekah L. Bailey, CA State Bar No. 258551
bailey@nka.com
E. Michelle Drake, MN Bar No. 0387366*
drake@nka.com
Kai H. Richter, MN Bar No. 0296545*
krichter@nka.com
Megan D. Yelle, MN Bar No. 0390870*
myelle@nka.com
*(appearing **pro hac vice**)
NICHOLS KASTER, PLLP
4600 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870

Attorneys for Plaintiff and the Putative Classes

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Stephen Ellsworth, as an individual and as a representative of the classes and on behalf of the general public,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. Bank, N.A. and American Security Insurance Company,<br>Defendants. | Case No. CV 12-2506 LB<br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT**<br>Date: December 5, 2013<br>Time: 11:00 a.m.<br>Courtroom: C<br>Judge: Honorable Laurel Beeler<br><br>Complaint filed: May 16, 2012 |

**NOTICE OF MOTION FOR CLASS CERTIFICATION**

**PLEASE TAKE NOTICE** that Plaintiff's Motion for Class Certification ("Motion") will be heard on December 5, 2013 at 11:00 a.m. PST, or as soon thereafter as the Motion may be heard, in Courtroom C on the 15th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Magistrate Judge Laurel Beeler.

**MOTION FOR CLASS CERTIFICATION**

Pursuant to Federal Rule of Civil Procedure 23 and this Court's Amended Case Management and Pretrial Order dated March 4, 2013 (*ECF No. 91*), Plaintiff Stephen Ellsworth ("Plaintiff") hereby respectfully moves for an order certifying the following proposed classes, or such other classes as the Court determines are just and appropriate, for purposes of pursuing his claims relating to (1) improper kickbacks or "commissions" in connection with force-placed flood insurance; and (2) improperly backdated force-placed flood insurance coverage.

**I.      Proposed Nationwide Classes**

With respect to Plaintiff's claims for  breach of contract (Count 1), breach of the covenant of good faith and fair dealing (Count 2), and unjust enrichment (Counts 3 and 4), Plaintiff seeks certification of the following nationwide classes (collectively referred to herein as the "Nationwide Classes"):[1]

1. All persons with a closed-end residential mortgage[2] loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in the United States within the applicable statute of limitations, where such flood insurance was procured with the assistance of American Security Insurance Company or its affiliates ("Nationwide Lender-Placed Class");

---

[1] These classes do not include: (1) Defendants' agents, board members, directors, officers, or employees; or (2) any judicial officer assigned to this case or any immediate family member of such judicial officer.

[2] For purposes of this Motion, the term "mortgage" includes a mortgage, deed of trust, or other type of security instrument.

2. All persons within the Nationwide Lender-Placed Class who were charged by U.S. Bank, N.A. for force-placed flood insurance prior to December 1, 2011 ("Nationwide Lender-Placed Sub-Class"); and

3. All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in the United States before January 1, 2013 and within the applicable statute of limitations, where such insurance was backdated by more than 60 days ("Nationwide Backdated Class").

## II.    Proposed State Classes

As to the claims asserted by Plaintiff for unfair business practices in violation of California's Unfair Competition Law (Counts 5 and 6), Plaintiff seeks certification of the following state classes (collectively referred to herein as the "California Classes"):

1. All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in the State of California on or after May 16, 2008, where such flood insurance was procured with the assistance of American Security Insurance Company or its affiliates ("California Lender-Placed Class");

2. All persons within the California Lender-Placed Class who were by charged by U.S. Bank, N.A. for force-placed flood insurance prior to December 1, 2011 ("California Lender-Placed Sub-Class"); and

3. All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in the State of California on or after May 16, 2008 and before January 1, 2013, where such insurance was backdated by more than 60 days ("California Backdated Class").

1   **III.     Appointment of Class Representative and Class Counsel**

2          Plaintiff requests that this Court appoint him as Class Representative for the above-named

3   classes or such other classes as the Court determines are appropriate.   In addition, Plaintiff

4   requests that this Court appoint his counsel, Nichols Kaster, PLLP, as Class Counsel for the

5   above classes or such other classes as the Court determines are appropriate.

6          This Motion is based on the points and authorities cited in Plaintiff's accompanying

7   memorandum; the contemporaneously-filed declarations of Stephen Ellsworth and Kai Richter;

8   all exhibits attached thereto; the allegations in Plaintiff's First Amended Complaint; the

9   arguments of counsel; Plaintiff's forthcoming reply brief and any accompanying papers; and all

10  files, records, and proceedings in this matter.

1

# TABLE OF CONTENTS

2  INTRODUCTION ........................................................................................................1

3  FACTUAL BACKGROUND ......................................................................................2

4  I.  DEFENDANTS' FORCE-PLACED INSURANCE SCHEME ......................................2

5  A.  ███████████████████████████ .................4

6  B.  ███████████████████████████ .............5

7  C.  Backdated Coverage .........................................................................6

8  D.  Lack of Value to Borrowers ...............................................................7

9  II.  BACKGROUND RELATING TO THE NAMED PLAINTIFF .................................7

10  III.  COMMON ISSUES RELATING TO U.S. BANK AND ASIC'S KICKBACK SCHEME ..............9

11  A.  ██████████████████████████████████

12  ████████████████████ .............................................9

13  B.  ███████████████████████████████████████

14  ████████████████████ ...........................................11

15  IV.  COMMON ISSUES RELATING TO BACKDATING OF FORCE-PLACED FLOOD INSURANCE ..12

16  ARGUMENT ..............................................................................................................12

17  I.  THE PROPOSED CLASSES SATISFY RULE 23(A) ............................................13

18  A.  The Numerosity Requirement Is Satisfied .........................................13

19  B.  The Commonality Requirement Is Satisfied .......................................13

20  C.  The Typicality Requirement Is Satisfied ............................................15

21  D.  The Adequacy Requirement Is Satisfied ............................................16

22  II.  PLAINTIFF HAS SATISFIED RULE 23(B)(3) ...................................................17

23  A.  The Common Issues Identified Above Predominate ...........................17

24  1.  Differences in State Law Do Not Preclude Certification of the Proposed

25  Nationwide Class .....................................................................20

26  2.  Differences in Individual Damages Do Not Preclude Certification of the

27  Proposed Classes ....................................................................23

28

3.  Defendants' Affirmative Defenses Do Not Preclude Certification of the

Proposed Classes............................................................................................24

B.  Litigating the Common Issues as a Class Action Is Superior to Leaving Borrowers

to Fend for Themselves Against U.S. Bank and ASIC.......................................24

CONCLUSION................................................................................................................25

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT
CASE NO. 12-cv-2506-LB

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3 *In re Abbott Labs. Novir Anti-Trust Litig.*, 2007 WL 1689899 (N.D. Cal. June 11, 2007) ...... 20, 22

4 *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995) .................................................................... 21

5 *Am. Bankers Inc. Co. v. Wells*, 819 So.2d 1196 (Miss. 2001) ..................................................... 12

6 *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 20, 25

7 *Amgen v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184 (2013) ......... 12, 17, 25

8 *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ............................................................... 12, 16

9 *Avilez v. Pinkerton Gov't Servs.*, 285 F.R.D. 450 (C.D. Cal. 2012) ......................................... 24

10 *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ................................................................ 14, 23

11 *Brand v. Nat'l Bank of Commerce*, 213 F.3d 636, 2000 WL 554193 (5th Cir. 2000) ......... 1, 15, 20

12 *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666 (S.D. Fla. 2011) .................... 14, 18, 22

13 *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667 (S.D. Fla. 2012) ............................ 22

14 *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521

15 (N.D. Cal. 2010) ................................................................................................................. 21, 22

16 *Cowit v. CitiMortgage, Inc.*, 2013 WL 940466 (S.D. Ohio Mar. 8, 2013) ............................... 21

17 *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29 (E.D.N.Y. 2008) ....................................... 19

18 *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) .............................................. 17

19 *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012) ........................................ 14

20 *Enfield v. Old Line Life Ins. Co. of Am.*, 136 N.M. 398 (2004) ............................................... 21

21 *Ewert v. eBay, Inc.*, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) ..................................... 19, 25

22 *Fournigault v. Indpendence One Mortg. Corp.*, 2007 WL 1423866 (N.D. Ill. May 10, 2007) ...... 21

23 *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147 (1982) ..................................................... 15

24 *Gordon v. Chase Home Fin., LLC*, 2013 WL 436445 (M.D. Fla. Feb. 5, 2013) .......................... 2

25 *Gustafson v. BAC Home Loans Servicing,* 2012 WL 4761733 (C.D. Cal. April 12, 2012) .......... 12

26 *Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550 (N.D. Cal. Sept. 11, 2008) ......... 14, 18

27 *Hall v. Midland Group*, 2000 WL 1725238 (E.D. Pa. Nov. 20, 2000) .................................... 1, 15

28

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................13, 15, 18, 20, 21

*Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 121 F.R.D. 664 (N.D. Ill. 1988) .19

*Hofstetter v. Chase Home Fin., LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) ............*passim*

*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009) ......................................22

*Kay v. Wells Fargo & Co.*, 247 F.R.D. 572 (N.D. Cal. 2007) .............................................16, 18

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ........................................................................19

*Keilholtz v. Lennox Hearth Prods., Inc.*, 268 F.R.D. 330 (N.D. Cal. 2010) ..............................20

*Kelly v. City & County of San Francisco*, 2005 WL 3113065 (N.D. Cal. Nov. 21, 2005) ............24

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ............................................................21

*Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683 (N.D. Ga. 1983) ..................................19

*Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013) ....................2

*Lane v. Wells Fargo Bank, N.A.*, 2013 WL 269133 (N.D. Cal. Jan. 24, 2013) ..........................14

*Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410 (N.D. Cal. June 21, 2013) ................*passim*

*Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. 2012) .............................................12, 14

*Leghorn v. Wells Fargo Bank, N.A.*, 2013 WL 3064548 (N.D. Cal. June 19, 2013) .............12, 14

*Leyva v. Medline Indus., Inc.*, --- F.3d ---, 2013 WL 2306567 (9th Cir. May 28, 2013) .........13, 25

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ....................................................................................................................18

*Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534 (N.D. Cal. 2010) ....................................19

*Marilley v. Bonham*, 2012 WL 851182 (N.D. Cal. Mar. 13, 2012) ..........................................15

*McNeary-Calloway v. JPMorgan Chase Bank, N.A.*, 863 F. Supp. 2d 928 (N.D. Cal. 2012) .12, 14

*In re Med. Capital Secs. Litig.*, 2011 WL 5067208 (C.D. Cal. July 26, 2011) ..........................19

*Menangerie Prods. v. Citysearch,* 2009 WL 3770668 (C.D. Cal. Nov. 9, 2009) ......................19

*In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009) ..........................22

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) ..........................14, 15

*Montanez v. HSBC Morg. Corp.*, 2012 WL 2899371 (E.D. Pa. July 17, 2012) ..........................12

*Mortimore v. F.D.I.C.*, 197 F.R.D. 432 (W.D. Wash. 2000) ...............................................16, 19

*O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479 (N.D. Cal. 2011) .............................................16

*Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14 (D. Mass. 2010) ...........................................22, 23

*Phelps v. 3PD, Inc.*, 261 F.R.D. 548 (D. Or. 2009) ......................................................16, 19

*In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283 (3d Cir. 1998) .........21, 22, 23

*Rannis v. Recchia*, 380 F. App'x 646, 2010 WL 2124096 (9th Cir. May 27, 2010) .....................13

*Robinson v. Countrywide Credit Indus.*, 1997 WL 634502 (E.D. Pa. Oct. 8, 1997) .........1, 16, 19

*Rodriguez v. ACL Farms, Inc.*, 2010 WL 4683771 (W.D. Wash. Nov. 12, 2010) .......................24

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2009) ....................................................15

*Sacred Heart Health Systems, Inc. v. Humana Military Healthcare*, 601 F.3d 1159 (11th Cir. 2010) ....................................................................................................................19

*Schulken v. Washington Mutual Bank*, 2012 WL 28099 (N.D. Cal. Jan. 5, 2012) ..................19, 22

*Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605 (D.S.D. 2004) .................................20

*Singer v. AT&T Corp.*, 185 F.R.D. 681 (S.D. Fla. 1998) ..................................................22

*Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32 (1st Cir. 2003) .................19, 24

*Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67 (E.D.N.Y. 2004) ...............................21

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ..........................................20

*Wahl v. Am. Sec. Ins. Co.*, 2010 WL 1881126 (N.D. Cal. May 10, 2010) .................................1

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ..............................................12, 14

*Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665 (S.D. Fla. 2012) ................1, 15, 16, 20, 24

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011) ..............................................13

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ..............................23

Rules & Statutes

Fed. R. Civ. P. 23 ......................................................................................................*passim*

Other Authorities

7A FEDERAL PRACTICE & PROCEDURE § 1778 (3d ed. 2005) ..........................................24

Lender Placed Insurance, Terms and Conditions, 78 Fed. Reg. 19263 (Mar. 29, 2013) ..............10

1

**INTRODUCTION**

2      Plaintiff brings this motion for class certification to provide borrowers whose mortgage

3  loans are serviced by U.S. Bank, N.A. ("U.S. Bank") the same opportunity for class-wide relief

4  that has been granted to borrowers in other force-placed insurance ("FPI") cases, including

5  several cases from this district.[3]  As detailed below, U.S. Bank and American Security Insurance

6  Company ("ASIC") engaged in a common scheme to manipulate the force-placed insurance

7  process in two respects.  First, U.S. Bank received improper kickbacks from ASIC ████████

8  ███████████████████████████████████████████████████████████████████████████████████

9  Second, U.S. Bank and ASIC arranged to retroactively force-place insurance coverage on

10  Plaintiff and other borrowers in the event of a lapse in coverage, without regard to (1) when the

11  lapse was discovered; (2) when notice of the lapse was provided to the borrower; and (3) whether

12  there was any damage to the property during backdated coverage period.  These practices harmed

13  borrowers by driving up the cost of force-placed flood insurance coverage, are common to all

14  class members, and cry out for a class-wide remedy.

15      Unlike other cases where certification has been denied, the proposed classes in this case

16  are tailor-made for certification:

17

18  ────────────────

[3] *See, e.g.*, *Brand v. Nat'l Bank of Commerce*, 213 F.3d 636, 2000 WL 554193, at *1 (5th Cir. 2000) (certifying nationwide class to pursue allegations that defendant "charged borrowers more than the cost of the insurance under a system of kickbacks from the insurer"); *Lane v. Wells Fargo Bank, N.A.*, 2013 WL 3187410 (N.D. Cal. June 21, 2013) (certifying a class of California borrowers to pursue claims against Wells Fargo related to improper commissions in connection with force-placed flood insurance); *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665 (S.D. Fla 2012) (certifying class of Florida borrowers to pursue claims against Wells Fargo relating to inflated premiums and unlawful kickbacks in connection with force-placed hazard insurance); *Hofstetter v. Chase Home Fin., LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) (certifying class to pursue claims that bank accepted improper kickbacks through an affiliate in connection with force-placed flood insurance); *Hall v. Midland Group*, 2000 WL 1725238, at *1 & *3 (E.D. Pa. Nov. 20, 2000) (certifying nationwide class where "[t]he essence of plaintiff's allegations [was] that defendant [] engaged in the forced placement of hazard insurance through agencies owned by affiliates . . . which received commissions for these placements."); *Robinson v. Countrywide Credit Indus.*, 1997 WL 634502, at *4 & *5 (E.D. Pa. Oct. 8, 1997) (certifying nationwide class where "the central issues revolve[d] around whether the form contracts authorized placement of the type of insurance purchased and whether Countrywide knowingly purchased inflated or expensive policies to generate commissions."); *accord*, *Wahl v. Am. Sec. Ins. Co.*, 2010 WL 1881126, at *7-10 (N.D. Cal. May 10, 2010) (certifying class of California insureds to pursue allegations that defendant's force-placed insurance practices were "unsupported by any apparent reason other than the fact that [the insurance company] and [the mortgage servicer] both stood to benefit financially from the immediate placement of [FPI]").

1

- Class members were force-placed with the same type of insurance (flood insurance);
- The insurance was force-placed by the same mortgage servicer (U.S. Bank);
- Coverage was force-placed through the same vendor (ASIC);
- U.S. Bank operated its force-placed flood insurance program in a uniform manner nationwide with no distinction as to borrowers in different states; and
- Class members share a common mortgage form (the Fannie Mae/Freddie Mac Uniform Instrument), which contains uniform mortgage covenants.

Thus, the common issues in this case far outweigh any theoretically individualized issues that may apply to class members' claims. Moreover, this action is a far superior mechanism for resolving those claims than letting class members fend for themselves in individual actions against one of the nation's largest banks. Accordingly, Plaintiff respectfully requests that this Court grant his motion and certify the proposed classes.[4]

## FACTUAL BACKGROUND

### I. DEFENDANTS' FORCE-PLACED INSURANCE SCHEME

---

[4] Although class certification was denied in *Gordon v. Chase Home Fin., LLC*, 2013 WL 436445 (M.D. Fla. Feb. 5, 2013) and *Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013), those cases are distinguishable. In *Gordon*, the court denied certification on the ground that the proposed classes were overbroad and were not limited to class members who shared the same "common contract." *Gordon*, 2013 WL 436445, at *5. In *Kunzelmann*, the plaintiffs did not bring a claim based on the express terms of their contract, as Plaintiff does here.

2



[5] All referenced deposition transcripts are attached to the accompanying Declaration of Kai Richter.



PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT
CASE NO. 12-cv-2506-LB



PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT
CASE NO. 12-cv-2506-LB



C.    **Backdated Coverage**

Another common aspect of U.S. Bank's FPI program is the period for which coverage is issued.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████       Faced with an inability to purchase their own flood insurance for the

retroactive period, these borrowers have no choice but to pay for force-placed coverage.

**D.      Lack of Value to Borrowers**

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████.

**II.    BACKGROUND RELATING TO THE NAMED PLAINTIFF**

Plaintiff Stephen Ellsworth is one of many borrowers who was force-placed with flood

insurance by U.S. Bank.  On July 2, 2007, Plaintiff took out a mortgage loan with U.S. Bank,

which was secured by his property in Napa, California.  *Ellsworth Decl., ¶ 3 & Ex. 1.*  In

connection with this loan, Plaintiff signed a Single Family Fannie Mae/Freddie Mac Uniform

Instrument, which contained certain uniform covenants.  *Id., Ex. 1.*  Two of those uniform

7

covenants – Paragraphs 5 and 9 – provide as follows:

> 5. **Property Insurance**.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term 'extended coverage,' and any other hazards ... for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.
>
> * * *
>
> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.
>
> 9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If Borrower fails to (a) perform the covenants and agreements contained in this Security Instrument, … then Lender may do and pay for whatever is *reasonable or appropriate* to protect Lender's Interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the property, and securing and/or repairing the property.

*Id.* (underlining and italics added).

At the time Plaintiff took out his mortgage loan, he did not maintain flood insurance on his property, and U.S. Bank did not require him to obtain flood insurance as a condition of closing the loan.  *Ellsworth Decl., ¶ 4.*  However, on June 9, 2010, U.S. Bank sent Ellsworth a form letter, asserting that his property was located in a Special Flood Hazard Area ("SFHA") and that he was required to obtain flood insurance.  *Id., ¶ 5 & Ex. 2.*  In this letter, U.S. Bank stated that "You have 45 days to purchase flood insurance," but indicated that it already had purchased a 45-day flood insurance binder for his property through ASIC.  *Id.*  The effective date of this coverage was July 3, **2009** – almost a full year prior to the date of the letter.  *Id.*

On August 18, 2010, U.S. Bank sent Plaintiff another form letter, informing Plaintiff that it had purchased a "full year flood insurance policy" from ASIC.  *Ellsworth Decl., ¶ 6 & Ex.3.*  This force-placed flood insurance coverage was backdated more than a year to reflect an effective coverage period of July 3, **2009** to July 3, 2010.  *Id.*  As a result, this force-placed coverage was completely expired by the time that Plaintiff received the letter.  *Id.*  Moreover, this coverage provided no benefit to Plaintiff because he had not suffered any flood damage to his property during the period in question.  *Ellsworth Decl.,¶ 8.*  The cost for this fully-expired and worthless coverage was $2,250, and was built into Plaintiff's monthly mortgage payment.  *Id.*  Accordingly, Plaintiff had no choice but to pay the charges in full.  *Id.*

Earlier that same month, on August 4, 2010, U.S. Bank sent Plaintiff a "Notice of Pending

8

Renewal of Lender Placed Flood Insurance." *Ellsworth Decl., ¶ 8 & Ex. 4.* The purpose of this letter was to inform Plaintiff that his existing lender-placed flood insurance coverage was expiring and would be renewed, even though U.S. Bank still had not provided notice of such coverage to Plaintiff and did not do so for another two weeks. *Id.* U.S. Bank then sent a "Notice of Renewed Flood Insurance Placed by Lender" to Plaintiff on September 1, 2010, indicating that another full year policy had been placed on his property. *Ellsworth Decl., ¶ 9 & Ex. 5.* This policy had a coverage period of July 3, 2010 to July 3, 2011 and a premium of $2,250. *Id.*

After U.S. Bank force-placed the second policy, Plaintiff purchased his own policy through the National Flood Insurance Program for $276 -- less than one-eighth the cost of the force-placed coverage! *Ellsworth Decl., ¶ 10 & Ex. 6.* U.S. Bank then cancelled the second force-placed policy (at first only partially, and later in full). *Ellsworth Decl., ¶¶ 11-13 & Exs. 7, 9.* However, neither U.S. Bank nor ASIC have ever offered Plaintiff a refund for the first force-placed policy, which was fully expired by the time he received it. *Ellsworth Decl., ¶ 13.*

### III.   COMMON ISSUES RELATING TO U.S. BANK AND ASIC'S KICKBACK SCHEME

As outlined below, there are several common class-wide issues with respect to Defendants' FPI scheme.



March 2012, Fannie Mae issued a Request for Proposal ("RFP") which stated that it had conducted an "extensive internal review" of the lender-placed insurance process, and found that the process "can be improved through unit price reductions and fee transparency to the benefit of both the taxpayers and homeowners." *Richter Decl., Ex. 18.* In particular, Fannie Mae made the following observations:

9

- "Lender Placed Insurers often pay commissions/fees to Servicers for placing business with them.  The cost of such commissions/fees is recovered in part or in whole by the Lender Placed Insurer from the premiums[.]"

- "The existing system may encourage Servicers to purchase Lender Placed Insurance from Providers that pay high commissions/fees to the Servicers and provide tracking, rather than those that offer the best pricing and terms . . . ."

*Id.*  Accordingly, the RFP sought to "[r]estructure the business model to align Servicer incentives with the best interest of Fannie Mae and homeowners[,]" and "[e]liminate the ability of Servicers to pass on the cost of commissions/fees[.]"  *Id.*[8]

Although the RFP was later withdrawn by the Federal Housing Finance Agency ("FHFA") in its capacity as the conservator of Fannie Mae and Freddie Mac,[9] the FHFA also has concluded that these compensation arrangements are improper and should be eliminated.  On March 29, 2013, the FHFA published a Notice in the Federal Register indicating that it intends to ban commissions and other forms of remuneration to servicers in connection with FPI for borrowers with mortgages owned by Fannie Mae and Freddie Mac.  *See* Lender Placed Insurance, Terms and Conditions, 78 Fed. Reg. 19263, 19264 (Mar. 29, 2013).  This Notice states:

> Certain Sales Commissions.  The Enterprises [Fannie Mae and Freddie Mac] shall prohibit sellers and servicers from receiving, directly or indirectly, remuneration associated with placing coverage with or maintaining placement with particular insurance providers.

*Id.*

Moreover, following an extensive investigation into FPI abuses, the New York Department of Financial Services ("NYDFS") entered into a Consent Order with ASIC, which prohibits ASIC from paying "commissions to a servicer or person or entity affiliated with a

---

[8] That same month, Fannie Mae issued a Servicing Guide Announcement ("SGA"), which stated: "Any servicer request for reimbursement of lender-placed insurance premiums must **exclude**:
- any lender-placed insurance commission earned on that policy by the servicer or any related entity,
- costs associated with insurance tracking or administration, or
- any other costs beyond the actual cost of the lender-placed insurance policy premium."
*Richter Decl., Ex. 19.*

[9] *See* Jeff Horwitz, "FHFA Kills Fannie Mae Force-Placed Insurance Plan," *American Banker* (Feb. 11, 2013), available at http://www.americanbanker.com/issues/178_29/fhfa-kills-fannie-mae-force-placed-insurance-plan-1056687-1.html.

1   servicer on force-placed insurance policies obtained by the servicer." *Richter Decl., Ex. 17, p. 9.*

2   The Consent Order further states:

3       ASIC pays some mortgage servicers what it characterizes as the servicers'
        "qualified expenses" related to force-placed insurance. These payments are
4       typically an amount capped at a percentage of the premium force-placed on the
        servicer's portfolio and appear to be substitutes for commissions….

5   *Id. at ¶ 16.*

23  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. In both its RFP and

24  Servicing Guide Announcement, Fannie Mae indicated that the cost of insurance tracking should

25  not be built into the cost of lender-placed insurance. *Richter Decl., Exs. 18 & 19*. Likewise, the

26  NYDFS Consent Order with ASIC states: "[ASIC] shall not provide free or below-cost

27  outsourced services to servicers, lenders, or their affiliates…." *Richter Decl., Ex. 17, p. 10, ¶ 10.*

28

**IV.   COMMON ISSUES RELATING TO BACKDATING OF FORCE-PLACED FLOOD INSURANCE**

Another common issue as to the proposed Backdated Classes is Defendants' backdating of force-placed flood insurance policies.[10]

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Plaintiff is a perfect example.

## ARGUMENT

This Court should grant Plaintiff's motion for class certification.  In numerous other FPI cases, courts have certified nationwide and/or statewide classes to pursue similar claims.  *See supra* at 1 n.3 (collecting cases).  A similar ruling is appropriate here.[11]

---

[10]  The language of the Fannie Mae/Freddie Mac Uniform Instrument does not "authorize backdating FPI policies to cover periods of time where no loss occurred." *McNeary-Calloway v. JPMorgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 956 (N.D. Cal. 2012).  Accordingly, this Court and numerous other courts have held that the type of backdating allegations at issue here support claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and/or violation of California's unfair competition law.  *See Order Denying Motion to Dismiss*, ECF No. 80 at pp. 22-29; *Leghorn v. Wells Fargo Bank, N.A.*, 2013 WL 3064548, at *19-27 (N.D. Cal. June 19, 2013); *Montanez v. HSBC Mortg. Corp.*, 2012 WL 2899371, at *6 (E.D. Pa. July 17, 2012); *McNeary*, 863 F. Supp. 2d at 955-962; *Lass v. Bank of America, N.A.*, 695 F.3d 129, 138-140 (1st Cir. 2012); *Gustafson v. BAC Home Loans Servicing*, 2012 WL 4761733, at *4 (C.D. Cal. April 12, 2012); *Am. Bankers Ins. Co. v. Wells*, 819 So.2d 1196 (Miss. 2001) (plaintiffs stated valid claim that lender breached the covenant of good faith and fair dealing by "[i]llegally backdating worthless insurance coverage").  To the extent that Defendants rely on the Biggert-Waters Flood Insurance Reform Act to justify their conduct, this reliance is misplaced because Biggert-Waters did not become effective until January 1, 2013, *after* the close of the class period for the Backdated Classes.  *See Lane*, 2013 WL 1758878, at *3 (finding Biggert-Waters inapplicable because it was "not in effect at the time of the alleged backdating").

[11]  District courts have "broad discretion" to determine whether a class should be certified. *Armstrong v. Davis*, 275 F.3d 849, 871 n. 28 (9th Cir. 2001).  In making this determination, the Court must conduct a rigorous analysis of the requirements that apply under Rule 23.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  However, "[a]lthough [*Wal-Mart*] cautioned that a court's class-certification analysis must be 'rigorous' . . . , Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).  "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Id.* at 1195.  Moreover, "[a]ny

12

1    **I.      THE PROPOSED CLASSES SATISFY RULE 23(A)**

2              Rule 23(a) establishes four requirements for class certification: numerosity, commonality,

3    typicality, and adequacy of representation.  *Leyva v. Medline Indus., Inc.*, -- F.3d --, 2013 WL

4    2306567, at *1 (9th Cir. May 28, 2013).  In addition, Plaintiff must show that the classes meet at

5    least *one* of the three prongs of Rule 23(b).  *Id.*; *see also Hanlon v. Chrysler Corp.*, 150 F.3d

6    1011, 1022 (9th Cir. 1998).  Both Rule 23(a) and Rule 23(b)(3) are satisfied here.

7              **A.      The Numerosity Requirement Is Satisfied**

8              To satisfy the numerosity requirement, the proposed classes must be "so numerous that

9    joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Although this requirement is

10   not tied to any fixed numerical threshold, "[i]n general, courts find the numerosity requirement

11   satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x. 646, 651,

12   2010 WL 2124096, at *4 (9th Cir. May 27, 2010).  This requirement is not seriously in dispute in

13   a case such as this, involving force-placed flood insurance coverage for thousands of borrowers.

14   *See Hofstetter*, 2011 WL 1225900, at *8 (noting that "Plaintiffs allege that 'thousands' of

15   individuals satisfy the definition of each proposed class.").

16

17                                                                                    .[12]

18            **B.  The Commonality Requirement Is Satisfied**

19            Commonality requires that "there are questions of law or fact in common to the class."

20   Fed. R. Civ. P. 23(a)(2).  This requirement is construed "permissively."  *Hanlon*, 150 F.3d at

21   1019.  As the Ninth Circuit explained in *Hanlon*:

22            All questions of fact and law need not be common to satisfy the rule.  The existence
             of shared legal issues with divergent factual predicates is sufficient, as is a common
23           core of salient facts coupled with disparate legal remedies within the class.

24   _____
     doubts regarding the propriety of class certification generally should be resolved in favor of
25   certification." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011) (citation omitted).

     [12]
26

27            this Court can infer that the number of force-placed policies in California is quite large.  *See*
28   *Lane*, 2013 WL 3187410, at *6.

                                                    13

1   *Id.*; *accord*, *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012).

2   "'Even a single [common] question' will suffice to satisfy Rule 23(a)." *Ellis v. Costco Wholesale*

3   *Corp.*, 285 F.R.D. 492, 506 (N.D. Cal. 2012) (quoting *Dukes*, 131 S. Ct. at 2556). Thus,

4   commonality is satisfied where there is a common question as to "whether a defendant's course of

5   conduct is in its broad outlines actionable." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.

6   1975); *accord*, *Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550, at *17 (N.D. Cal. Sept.

7   11, 2008) (commonality satisfied where "[t]he challenged practice is a standardized one applied

8   on a routine basis to all customers" by the bank); *In re Checking Account Overdraft Litig.*, 275

9   F.R.D. 666, 673 (S.D. Fla. 2011) ("The commonality element is generally satisfied when a

10  plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all

11  class members.") (internal brackets and quotation marks omitted).

12       Here, each class presents common issues regarding whether U.S. Bank's kickback and

13  backdating schemes were lawful, appropriate, and authorized under the Uniform Instrument.[13]

14  Because the answer to these common questions will be the same for each class member, the

15  commonality requirement is satisfied. *See, e.g.*, *Lane*, 2013 WL 3187410, at *8 (commonality

16

17  [13] This Court already has determined that there is a *bona fide* legal issue concerning whether the
    Fannie Mae/Freddie Mac Uniform Instrument authorizes commissions to a mortgagee or its
18  affiliates in connection with FPI. *See ECF No. 80 at p. 23*; *accord*, *McNeary*, 863 F. Supp. 2d at
    965 (upholding breach of contract claim asserted by borrowers with Uniform Instrument based on
19  alleged kickbacks in connection with FPI); *Leghorn*, 2013 WL 3064548, at *22-23. Likewise,
    there is a *bona fide* issue regarding whether the Uniform Instrument "authorize[s] backdating FPI
20  policies to cover periods of time where no loss occurred." *McNeary*, 863 F.Supp.2d at 956.
    Although Paragraph 5 of the Uniform Instrument allows the mortgagee to force-place coverage
21  where the required amount of coverage is not maintained on the property, "[n]othing in the
    contract necessarily authorizes charges regardless of amount and regardless of whether [the
22  mortgagee] receives a portion of the premiums." *Id.* at 956; *accord*, *Lass*, 695 F.3d at 140 ("The
    mortgage . . . does not explicitly address either commissions or, more generally, the Bank's
23  entitlement to profit from its forced placement of insurance."). In addition, there is a common
    question regarding whether these practices violated Paragraph 9 of the Uniform Instrument
24  because they were not "reasonable and appropriate to protect Lender's Interest in the Property
    and rights under [the] Security Instrument[.]" *See McNeary*, 863 F. Supp. 2d at 956; *Lane v.*
25  *Wells Fargo*, 2013 WL 269133, at *10 (N.D. Cal. Jan. 24, 2013). Aside from this contract
    language, there are also common questions regarding whether U.S. Bank breached the implied
26  covenant of good faith and fair dealing, whether Defendants were unjustly enriched, and whether
    these practices were unfair. *See Order Denying Motion to Dismiss*, *ECF No. 80 at 24-30*
27  (upholding claims for breach of the covenant of good faith and fair dealing, unjust enrichment,
    and unfair business practices); *Leghorn*, 2013 WL 3064548, at *25-28 (same); *McNeary*, 863 F.
28  Supp. 2d at 956-62 (same).

1   and predominance requirements satisfied where plaintiffs alleged that Wells Fargo "engaged in a

2   common scheme to force-place insurance on borrowers whose individual insurance had lapsed,

3   and that [Wells Fargo] did so in a manner designed to maximize the kickbacks it received from

4   captive insurance providers QBE and ASIC."); *Williams*, 280 F.R.D. at 672 (certifying class of

5   borrowers where "[t]he essence of th[e] case, as alleged, [was] a common scheme to

6   systematically, and without any individual consideration, force-place insurance at an excessive

7   rate to every person whose self-placed property insurance had lapsed" and earn a commission for

8   Wells Fargo); *Hofstetter*, 2011 WL 1225900, at *15 (certifying subclass of borrowers to pursue

9   claim that defendant acted unlawfully "by charging inflated premiums and by generating

10  commission income through self-dealing"); *Hall*, 2000 WL 1725238, at *1 & *3 (holding that

11  there were "common questions of fact and law" where "[t]he essence of plaintiff's allegations is

12  that defendant [] engaged in the forced placement of hazard insurance through agencies owned by

13  affiliates . . . and debited the affected mortgagors' escrow accounts in the amount of excessive

14  and unauthorized premiums charged by the affiliates which received commissions for these

15  placements."); *Brand*, 2000 WL 554193, at *1 (finding commonality requirement was satisfied

16  where plaintiff identified several common issues, including whether the defendant bank "charged

17  borrowers more than the cost of the insurance under a system of kickbacks from the insurer").

18          **C.   The Typicality Requirement Is Satisfied**

19          Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

20  of the claims or defenses of the class." This typicality requirement "tend[s] to merge" with the

21  commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982);

22  *Meyer*, 707 F.3d at 1041. "Under the rule's permissive standards, representative claims are

23  'typical' if they are reasonably co-extensive with those of absent class members; they need not be

24  substantially identical." *Hanlon*, 150 F.3d at 1020; *accord*, *Meyer*, 707 F.3d at 1042. Thus, "the

25  typicality requirement . . . is 'satisfied when each class member's claim arises from the same

26  course of events, and each class member makes similar legal arguments to prove the defendant's

27  liability.'" *Marilley v. Bonham*, 2012 WL 851182, at *5 (N.D. Cal. Mar. 13, 2012) (quoting

28  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009)).

Here, Plaintiff's claims are typical of the other class members because they "result from the same, injurious course of conduct." *Armstrong*, 275 F.3d at 868-69; *see also O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 491-92 (N.D. Cal. 2011) ("[T]o the extent that Plaintiffs' claims stem from the same underlying conduct by [defendant] – namely, the terms of the loan agreements and [defendant's] subsequent [business] practices – there is a sufficient nexus between Plaintiffs' claims and those of the putative class members" to satisfy the typicality requirement); *Kay v. Wells Fargo & Co.*, 247 F.R.D. 572, 578 (N.D. Cal. 2007) (typicality requirement met where claims "arise[] out of the same business practices"). Further, Plaintiff's claims are also typical of other class members because "they signed mandatory boilerplate contracts" that do not materially differ. *See Phelps v. 3PD, Inc.*, 261 F.R.D. 548, 557 (D. Or. 2009); *accord*, *Mortimore v. F.D.I.C.*, 197 F.R.D. 432, 437 (W.D. Wash. 2000) (typicality satisfied where "other potential members will most likely have the same form contracts" as class representative).

███████████████████████████████████████████████████████████████

██████████ To the extent that Plaintiff's claims differ from other class members at all, "[t]heir claims likely differ … only as to damages and other immaterial factual details." *Hofstetter*, 2011 WL 1225900, at *9. Accordingly, the typicality requirement is satisfied. *Id.*; *see also Williams*, 280 F.R.D. at 673 ("[Plaintiffs] are typical of the class in that they were both charged and either paid or still owe Wells Fargo for the alleged excessive and inflated premiums for the force-placed property insurance."); *Robinson*, 1997 WL 634502, at *3 ("[T]he claim of [plaintiff], an escrowed borrower with forced placed insurance, is typical because his claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and is based on the same legal theory.") (internal brackets and quotation marks omitted).

### D.  The Adequacy Requirement Is Satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement hinges on two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on

16

behalf of the class?"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).  The answer to both of these questions demonstrates that Rule 23(a)(4) is satisfied here.

First, the proposed class representative has stated under oath that (1) he is not aware of any conflicts of interest with other class members; and (2) he will represent the interests of the other class members as he would his own.  *Ellsworth Decl.*, ¶ 17.  Plaintiff appeared in person for the Court-ordered settlement conference on July 25, 2013, is prepared to appear for his scheduled deposition on October 4, 2013, is actively involved in the case, and is committed to seeing the litigation to the end.  *Id., ¶¶ 14-16.*  He can and will adequately represent the classes.

Plaintiff's counsel is also clearly adequate.  The proposed class counsel, Nichols Kaster, PLLP, has extensive class action experience, including experience successfully litigating other force-placed insurance cases in this district and other districts across the country.  *See Richter Decl.*, *¶¶ 28-32.*  In fact, Nichols Kaster is the same firm that was appointed class counsel in *Hofstetter*, 2011 WL 1225900, at *9, and prosecuted that action to a successful conclusion.  *Richter Decl.*, *¶ 29.*

## II.      PLAINTIFF HAS SATISFIED RULE 23(B)(3)

In addition to meeting the requirements of Rule 23(a), Plaintiff's proposed classes also satisfy Rule 23(b)(3).  Under this rule, a class action may be maintained if: (1) the questions of law or fact common to the class members predominate over any questions affecting only individual members; and (2) a class action is superior to other methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  Both of these criteria are met here.

### A.  The Common Issues Identified Above Predominate

The Supreme Court recently clarified the standard that applies under Rule 23(b)(3).  As explained by the Court in *Amgen*, "Rule 23(b)(3) … does *not* require a plaintiff seeking class certification to prove that each element of [the] claim is susceptible to classwide proof."  *Amgen*, 133 S. Ct. at 1196 (emphasis in original) (internal brackets and quotation marks omitted).  Rather, the rule simply requires what it says, *i.e.*, that common questions "*predominate* over any questions affecting only individual [class] members."  *Id.* (emphasis in original) (citing Fed. R. Civ. P. 23(b)(3)).  This predominance requirement is satisfied where common questions present a

17

"significant aspect of the case" that can be resolved for all class members in a single adjudication. *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (*citing Hanlon*, 150 F.3d at 1022); *Kay*, 247 F.R.D. at 575.  The mere fact that "there will be some individualized issues" does not defeat predominance.  *See Guiterrez*, 2008 WL 4279550, at \*17, *accord*, *Las Vegas Sands*, 244 F.3d at 1163 (noting "[i]ndividualized issues" but finding that they did not predominate).

As noted above, Plaintiff presents several fundamental common questions, including but not limited to:

- ████████████████████████████████████████████████████████████████████████ ████████████████████;

- ████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████;

- Whether U.S. Bank had the contractual authority under Paragraph 5 of the Uniform Instrument to (1) arrange for cash or in-kind compensation for itself or its affiliates on FPI; and (2) whether it had the authority to significantly backdate coverage;

- ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████;

- Whether significantly backdating coverage is reasonable and appropriate;

- Whether U.S. Bank owed a duty of good faith and fair dealing to class members, and if so, whether U.S. Bank violated its duty of good faith and fair dealing by (i) arranging for kickbacks for itself or its affiliates in connection with force-placed flood insurance and (ii) backdating force-placed flood insurance;

- Whether Defendants were unjustly enriched by these practices; and

- Whether the practices described above were unfair for purposes of Cal. Bus. & Prof. Code § 17200.

These common questions predominate because, in each case, "[t]he challenged practice is a standardized one applied on a routine basis to all customers" by the bank.  *See Gutierrez*, 2008 WL 4279550, at \*17; *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 676 ("Here,

18

1    irrespective of the individual issues which may arise, the focus of the litigation concerns the

2    alleged common course of unfair conduct embodied in [the] Bank's alleged scheme….   Any

3    analysis of this scheme will depend on evidence relating to the standardized form account

4    agreement and bank practices affecting all class members in a uniform manner.") (internal

5    quotation omitted).   Moreover, the fact that Plaintiff and the class members are parties to a

6    common mortgage contract further supports a finding of predominance because "[c]ourts

7    routinely certify class actions involving breaches of form contracts."  *In re Med. Capital Secs.*

8    *Litig.*, 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) (citing numerous cases).[14]

9         For example, in *Robinson*, the court certified a nationwide class of borrowers who were

10   force-placed with insurance and raised similar issues relating to "whether the form contracts

11   authorized placement of the type of insurance purchased and whether [defendant] knowingly

12   purchased inflated or expensive policies to generate commissions."  *See Robinson*, 1997 WL

13   634502, at *4.  With respect to the predominance requirement, the court held:

14       We conclude that common class issues of law and fact predominate over any
         individual issues in this case.  While individual issues are present, especially in the
15       context of damages, they do not predominate.  Rather, the central issues revolve

16   [14] *See also Sacred Heart Health Systems, Inc. v. Humana Military Healthcare*, 601 F.3d 1159,
     1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class
17   members, that best facilitates class treatment"); *Smilow v. Southwestern Bell Mobile Systems,
     Inc.*, 323 F.3d 32, 42 (1st Cir. 2003) ("Overall, we find that common issues of law and fact
18   predominate here. The case turns on interpretation of the form contract, executed by all class
     members and defendant."); *Keele v. Wexler*, 149 F.3d 589, 594-95 (7th Cir. 1998) (citing *Kleiner
19   v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D. Ga. 1983)) ("claims arising from
     interpretations of a form contract appear to present the classic case for treatment as a class
20   action"); *Schulken v. Washington Mutual Bank*, 2012 WL 28099, at *13 (N.D Cal. Jan. 5, 2012)
     (certifying class alleging breach of a form contract); *Ewert v. eBay, Inc.*, 2010 WL 4269259, *7
21   (N.D. Cal. Oct. 25, 2010) (same); *Menangerie Prods. v. Citysearch,*, 2009 WL 3770668, at *9-10
     (C.D. Cal. Nov. 9, 2009) (commonality and predominance requirements satisfied where "the
22   claim arises from a standard form contract"); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29,
     37 (E.D.N.Y. 2008) ("An overwhelming number of courts have held that claims arising out of
23   form contracts are particularly appropriate for class action treatment."); *Mortimore*, 197 F.R.D. at
     438 ("Since this case involves the use of form contracts, it is particularly appropriate to use the
24   class action procedure."); *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 121
     F.R.D. 664, 669 (N.D. Ill. 1988) ("Since plaintiffs' claims arise from allegations of common
25   practice and rights derived from form contracts, the case appears to present the classic case for
     treatment as a class action.") (internal quotations omitted); *Mortimore*, 197 F.R.D. at 438 ("Since
26   this case involves the use of form contracts, it is particularly appropriate to use the class action
     procedure."); *Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534, 539-41 (N.D. Cal. 2010)
27   (commonality and predominance requirements satisfied where plaintiff's claim was "subject to
     proof through one set of loan documents"); *Phelps*, 261 F.R.D. at 560 ("Given that the [] claim is
28   based on the form contracts, … there is common evidence on several claim elements").

around whether the form contracts authorized placement of the type of insurance purchased and whether [defendant] knowingly purchased inflated or expensive policies to generate commissions.

*Id.*  Similarly, in *Brand*, the Fifth Circuit found that the predominance requirement was satisfied where the plaintiff alleged that the defendant systematically force-placed insurance and "charged borrowers more than the cost of the insurance under a system of kickbacks from the insurer[.]" *Brand*, 213 F.3d 636, 2000 WL 554193, at *1-2.  Likewise, in *Hofstetter*, *Williams*, and *Lane*, the courts held that common issues relating to the defendants' FPI practices and commissions scheme predominated.  *See Hofstetter*, 2011 WL 1225900 at *14-15; *Williams*, 280 F.R.D. at 675; *Lane*, 2013 WL 3187410, at *8.

There is no reason to reach a different result here.[15]  The question of whether Defendants' conduct was lawful does not hinge on any individualized borrower issues.  Rather, this question can be resolved in one stroke for all members of the classes based on the Uniform Instrument, applicable law, and other class-wide evidence (including the evidence cited above).

### 1. Differences in State Law Do Not Preclude Certification of the Proposed Nationwide Class

The fact that Plaintiff has asserted state law claims does not render certification of the proposed nationwide classes inappropriate.  The Ninth Circuit has expressly held that "[v]ariations in state law do not necessarily preclude a 23(b)(3) action[.]" *Hanlon*, 150 F.3d at 1022; *accord, Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301 (3d Cir. 2011) (*en banc*).  The nationwide claims asserted in this case are ***common*** law claims that, by their nature, do not vary significantly between the states.  Thus, "although some class members may possess slightly differing remedies based on state … common law, the actions asserted by the class representatives are not sufficiently anomalous to deny class certification." *Hanlon*, 150 F.3d at 1022; *see also Keilholtz v. Lennox Hearth Prods., Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010) ("The spectre of having to apply different substantive laws does not warrant refusing to certify a class on the common-law claims.") (quoting *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612 (D.S.D. 2004)); *In re Abbott Labs. Novir Anti-Trust Litig.*, 2007 WL 1689899, at *9

---

[15] The predominance test is "readily met" in consumer cases.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

1   (N.D. Cal. June 11, 2007).

2          In order to "demonstrate the commonality of substantive law applicable to all class

3   members[,]" *see Hanlon*, 150 F.3d at 1022, Plaintiff has prepared a detailed chart (*Richter Decl.,*

4   *Ex. 20*) showing that "the elements of [the] common law claims are substantially similar [across

5   various states] and any differences fall into a limited number of predictable patterns." *See In re*

6   *Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 315 (3d Cir. 1998).  As reflected by

7   the portion of the chart relating to Plaintiff's breach of contract claim, "the law relating to the

8   elements of breach does not vary greatly from state to state."  *In re Conseco Life Ins. Co.*

9   *LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010).  As one court noted:

> 10   Whether [a] contract[] … has been breached is a pure and simple question of
> contract interpretation which should not vary from state to state ….  A breach is a
> 11   breach is breach, whether you are on the sunny shores of California or enjoying a
> sweet autumn breeze in New Jersey.

12   *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004), *abrogated in part on other grounds*

13   *by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) (internal quotations omitted); *see*

14   *also Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 n. 8 (1995) ("[C]ontract law is not at its core

15   diverse, nonuniform, and confusing[.]") (citation and internal quotations omitted).[16]

16          Indeed, "claims arising from the interpretation of a form contract are particularly suited

17   for class treatment, and breach of contract cases are routinely certified as such."  *Cowit v.*

18   *CitiMortgage, Inc.*, 2013 WL 940466, at *6 (S.D. Ohio Mar. 8, 2013) (allowing a nationwide

19   breach of contract claim) (citations omitted).  Thus, class treatment is especially appropriate in

20   this case, given that the Uniform Instrument is used in all 50 states and is meant to be uniformly

21   interpreted nationwide.[17]  For example, in *Fournigault v. Independence One Mortg. Corp.*, 2007

22

23   ─────────────────────
[16] *Accord*, *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 75 (E.D.N.Y. 2004) ("[T]he
24   plaintiff's breach of contract claim involves … general principles of contract interpretation that
     do not differ materially from one jurisdiction to the next."); *Enfield v. Old Line Life Ins. Co. of*
25   *Am.*, 136 N.M. 398, 402 (2004) (certifying nationwide class on breach of contract claim because
     "the law of breach of contract is uniform enough that our traditional notions of fair play and
26   justice would not be offended by litigating the issue under [our state's] law") (citations omitted).

[17] The Fannie/Freddie Mortgage is, as its name suggests, a "Uniform Instrument."  Copies of the
27   materially identical Uniform Instruments for each state are publicly available at
     www.fanniemae.com/singlefamily/security-
28   instruments;jsessionid=388604A55C3FC7AB390AD233E5A4312D.cportal-cl01.

WL 1423866 (N.D. Ill. May 10, 2007), the court certified a class that was defined, in part, as those who signed the Fannie Mae/Freddie Mac Uniform Instrument. *Id.* at *2-3.  In support of its decision, the court analyzed "the approach Defendant took to its defense of the breach of contract claim," and stated:

> Defendant itself treats this as a case in which common issues predominate by a large margin.  It seeks to eliminate the claims on grounds that apply either broadly or universally to all mortgag[ors]. It advocates uniform construction of the crucial terms of the contracts, regardless of differences in wording; this fact is not surprising, given the use of standard forms in mortgage transactions throughout the country.

*Id.* at *2.  The same reasoning applies here.  *See Schulken*, 2012 WL 28099, at *10 (certifying class because "[b]oth Plaintiffs and Defendants rely on the interpretation of the HELOC contracts to support their claims or defenses").

Plaintiff's chart also demonstrates that state law is relatively uniform with respect to his claims for (1) breach of the implied covenant of good faith and fair dealing;[18] and (2) unjust enrichment.[19]  To the extent that there are any relevant differences in state law, the Court can address and accommodate those differences through the use of a special verdict form that takes into account those differences.[20]  *See Richter Decl., Ex. 21*.  Joining the claims of all class

---

[18] *See, e.g.*, *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667, 680 n.12 (S.D. Fla. 2012) (noting that "the law [of] breach of the duty of good faith and fair dealing is relatively uniform" with states generally requiring "a valid contract, some level of unreasonable interference with the contract by the defendant, and resulting damages."); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at 315 (affirming certification of nationwide class for claims of breach of contract and breach of the implied covenant, as states' laws are "substantially similar" for such claims).

[19] *See e.g.*, *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 21 (D. Mass. 2010) ("there are only a few differences in the description of unjust enrichment claims as between states"); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) ("[w]hile there are minor variations in the elements of unjust enrichment under the laws of the various states, those differences are not material"); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 568-69 (E.D. Mich. 2009) (finding "few real differences" among various states' unjust enrichment laws and finding predominance satisfied where plaintiff alleged a "systematic scheme to overcharge individuals for title insurance") (citation omitted); *In re Abbott Labs. Norvir Antitrust Litig.*, 2007 WL 16989899, at *8-9 (certifying nationwide class where "the variations among some States' unjust enrichment laws d[id] not significantly alter the central issue of the manner of proof"); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998) (unjust enrichment is a "universally recognized cause[] of action" that is "materially the same throughout the United States").

[20] *See, e.g., In re Checking Account Overdraft Litig.*, 275 F.R.D. at 680 ("The proposed special verdict forms and supporting surveys of law submitted by Plaintiffs with their Trial Plan illustrate that the variations among the potentially applicable state laws are not material and can be managed to permit a fair and efficient adjudication by the fact finder at trial."); *Conseco*, 270

22

members nationwide would be vastly preferable to proceeding separately in each state, since much of the benefit of the class action device would be lost if class members were required to bring 50 separate state-by-state actions against U.S. Bank for the same legal wrongs.

### 2. Differences in Individual Damages Do Not Preclude Certification of the Proposed Classes

The fact that class members may have suffered different amounts of damages also does not render class certification inappropriate.  Indeed, the Ninth Circuit recently held that it constitutes *reversible error* to deny class certification on this basis.  *See Levya*, -- F.3d --, 2013 WL 2306567, at **3, 5 ("The district court applied the wrong legal standard and abused its discretion when it denied class certification on the grounds that damages calculations would be individual."); *accord*, *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010) ("The potential existence of individualized damages assessments … does not detract from the action's suitability for class certification."); *Blackie*, 524 F.2d at 905.

Plaintiff will be able to prove damages in this case on a class-wide basis.  Unlike some types of consumer cases (*e.g.*, products liability actions), this is not a case involving damages for physical injuries.  Rather, Plaintiff is strictly seeking economic damages.  Consequently, damages calculations can be computed "mathematically" based on the data maintained by U.S. Bank and ASIC relating to force-placed flood insurance coverage for members of the classes.  *See Hofstetter*, 2011 WL 1225900, at *16; *accord*, *Levya*, -- F.3d --, 2013 WL 2306567, at *3 (holding that "the district court abused its discretion by ignoring the database's potential to alleviate the burden of determining damages").  Indeed, the court in *Lane* expressly rejected the argument that damages cannot be calculated on a class-wide basis in a case such as this.  *See Lane*, 2013 WL 3187410, at *9.

---

F.R.D. at 529 (differences in state law may be handled at trial "by grouping similar state laws together and applying them as a unit") (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d at 315); *Overka*, 265 F.R.D. at 20 ("The Court proposes to manage this case in the following way: … [T]he Court will put before the jury a core claim composed of the elements common to all jurisdictions.  Because in some jurisdictions there are additional elements required to establish liability, the Court will ask the jury special questions in accordance with any additional elements.  The jury will make determinations of fact whether the core claim is satisfied and whether each of the special questions is satisfied.  On the basis of these determinations, the Court will apply the law of each jurisdiction and decide in which, if any, jurisdictions the Skycaps prevail.").

### 3. Defendants' Affirmative Defenses Do Not Preclude Certification of the Proposed Classes

Finally, the fact that Defendants may assert various affirmative defenses to Plaintiffs' claims does not defeat predominance. "Courts have traditionally been reluctant to deny class action status as failing the predominance requirement of Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Avilez v. Pinkerton Gov't Servs.*, 285 F.R.D. 450, 466-67 (C.D. Cal. 2012) (internal quotation marks and citation omitted).[21]  Indeed, affirmative defense challenges to predominance have been rejected in other FPI cases. *See Lane*, 2013 WL 3187410, at *8; *Williams*, 280 F.R.D. at 674-75. As Judge Alsup stated in *Lane*:

> Defendant contends that defenses of waiver, estoppel, and laches may apply, or that the voluntary payment doctrine may bar individual claims. Defendant does not contest, however, that it applied the same policies and procedures for force-placing flood and hazard insurance to all loans it serviced …. The success or failure of the potential defenses is susceptible to common methods of proof. The basic facts are common to the class: class members had similar contracts and received the same form notice of lapsed insurance; they failed to act in response to receiving multiple notices; defendant eventually force-placed insurance … on class members' properties; defendant then charged class members an allegedly inflated premium for the insurance and received a percent of the premium as a commission or kickback …. Whether and to what extent class members were adequately warned of the commissions, could have avoided the force-placement of insurance (and payment of the commission), or accepted the benefits of the force-placed insurance is a matter for trial, or summary judgment, based on common methods of proof.

*Lane*, 2013 WL 3187410, at *8. The same reasoning applies here. ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### B. Litigating the Common Issues as a Class Action Is Superior to Leaving Borrowers to Fend for Themselves Against U.S. Bank and ASIC

Litigating the class members' claims together in a class action is vastly superior to leaving each of them to fend for themselves. As the court recognized in *Hofstetter*, "the class action mechanism is a superior method for resolving these claims[] because the cost of litigation likely would not be justified without aggregating them together." *Hofstetter*, 2011 WL 1225900, at 816;

---

[21] *Accord, Rodriguez v. ACL Farms, Inc.*, 2010 WL 4683771, at *2 (W.D. Wash. Nov. 12, 2010) ("[T]he fact [that] affirmative defenses may be available against certain prospective class members does not defeat class certification." (citing *Smilow*, 323 F.3d at 39)); *Kelly v. City & County of San Francisco*, 2005 WL 3113065 (N.D. Cal. Nov. 21, 2005) ("Unique affirmative defenses that require some individualized inquiry do not present a per se bar to certification."); 7A FEDERAL PRACTICE & PROCEDURE § 1778 (3d ed. 2005) ("[T]he action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.").

1   *accord*, *Leyva*, -- F.3d --, 2013 WL 2306567, at *4 ("In light of the small size of the putative class

2   members' potential individual monetary recovery, class certification may be the only feasible

3   means for them to adjudicate their claims."). "The policy at the very core of the class action

4   mechanism is to overcome the problem that small recoveries do not provide the incentive for any

5   individual to bring a solo action prosecuting his or her rights." *Amgen*, 133 S.Ct. at 1202

6   (quoting *Amchem*, 521 U.S. at 617).

7       The same rationale applies here. There is no feasible way that individual class members

8   could obtain the extensive discovery that Plaintiff has obtained, which goes to the heart of the

9   claims in this case. Thus, the interests of the class members would not be served by prosecuting

10   their claims individually. *See* Fed. R. Civ. P. 23(b)(3)(A). Likely for this reason, Plaintiff is

11   unaware of any other cases currently pending against U.S. Bank relating to its force-placed flood

12   insurance practices. *See* Fed. R. Civ. P. 23(b)(3)(B). To the extent that other cases may arise, it

13   would be desirable to centralize the litigation in this forum. *See* Fed. R. Civ. P. 23(b)(3)(C).

14   Finally, certification of this action as a class action will not render the case unmanageable. *See*

15   Fed. R. Civ. P. 23(b)(3)(D). As noted above, the common issues predominate. *See Ewert*, 2010

16   WL 4269259, at *12 ("[A] class action would be manageable since the focus of the litigation

17   would be on common issues.").[22]

18                              **CONCLUSION**

19       For the above reasons, Plaintiff respectfully requests that this Court certify the proposed

20   classes, or in the alternative, certify such classes as it determines are just and appropriate.

21                                  Respectfully Submitted,

22   Dated: September 24, 2013                 NICHOLS KASTER, PLLP

23                              By:    s/ Kai H. Richter

24                                     Kai H. Richter
                                       (admitted *pro hac vice*)

25                              Attorney for Plaintiff and the Putative Classes

26

27
    ---
    [22] *Accord*, *Leyva*, -- F.3d --, 2013 WL 2306567, at *4 (reversing district court decision denying
28   certification based on manageability concerns associated with individual damages calculations).