UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| STEPHEN ELLSWORTH, as an individual and as a Representative of the classes and on behalf of the general public,<br><br>Plaintiff,<br>v.<br><br>U.S. BANK, N.A., and AMERICAN SECURITY INSURANCE COMPANY,<br><br>Defendants.<br>_____/ | **No. C 12-02506 LB**<br><br>**ORDER GRANTING ELLSWORTH'S MOTION TO FILE AN AMENDED COMPLAINT AND DENYING AS MOOT ASIC'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**[ECF Nos. 128 & 151]** |

## INTRODUCTION

In this putative class action, Stephen Ellsworth challenges his lender U.S. Bank's alleged force-placing of backdated flood insurance on his real property and receiving kickbacks from the insurance company, American Security Insurance Company ("ASIC"). First Amended Class Action Complaint ("FAC"), ECF No. 26, ¶ 13.[1] Ellsworth states six claims in the FAC: (1) breach of contract against U.S. Bank; (2) breach of the covenant of good faith and fair dealing against U.S. Bank; (3)-(4) unjust enrichment against U.S. Bank and ASIC; and (5)-(6) violations of California Business & Professions Code section 17200 *et seq.* against U.S. Bank and ASIC. *See id.*, ¶¶ 58-102.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

C 12-02506 LB (ORDER)

On September 24, 2013, Ellsworth moved for class certification and proposed two nationwide classes and two California subclasses for the California claims. *See* Class Cert. Motion, ECF No. 135. Defendants opposed the motion, arguing in part that variations in state law precluded class certification. U.S. Bank also said that it "recently discovered" at Ellsworth's deposition (held on October 4, 2013) that Ellsworth's property was never in a flood zone, it never should have force-placed flood insurance on Ellsworth's property, and it was refunding Ellsworth's money. In his reply, Ellsworth proposed adding two new representative plaintiffs and revising and narrowing the proposed class definitions. Four days later, on November 18, 2013, Ellsworth moved to amend the FAC to incorporate the revised class definitions and to add the two new representatives.

The court finds good cause to file the amended complaint, issues a scheduling order, vacates the motion hearing set on January 16, 2014, and sets a status conference on January 23, 2014.

## STATEMENT

### I. PROCEDURAL HISTORY

#### A. Ellsworth's Original Complaint and First Amended Complaint

Plaintiff filed his first complaint in May 2012 against U.S. Bank and filed a first amended complaint against U.S. Bank and American Security Insurance Company. Complaint, ECF No. 1; FAC, ECF No. 26.

In the FAC, Ellsworth sought to represent two classes, each with one sub-class. *See id.* ¶¶ 47-50. First, Ellsworth asserted claims 1-4 on behalf of a proposed "Nationwide Lender-Placed Class:"

> **Proposed Nationwide Lender-Placed Class**: All persons who have or had a loan or line of credit with U.S. Bank secured by their residential property in the United States, and who were charged for lender-placed flood insurance by U.S. Bank within the applicable limitations period.

*Id.* ¶ 47.

To the extent that claims 1-4 are based on backdating, Ellsworth proposed a "Nationwide Backdated Sub-Class:"

> **Proposed Nationwide, Backdated Sub-Class**: All persons in the Proposed Nationwide Lender-Placed Class who were charged for backdated lender-placed flood insurance by U.S. Bank within the applicable limitations period.

Id. ¶ 48.

For claims 5 and 6, Ellsworth proposed a "California Lender-Placed Class:"

**Proposed California Lender-Placed Class**: All persons who have or had a loan or line of credit with U.S. Bank secured by their residential property in the State of California, and who were charged for lender-placed flood insurance by U.S. Bank on or after May 16, 2008.

*Id.* ¶ 49.

To the extent that claims 5 and 6 are based on improper backdating, Ellsworth proposed a "California Backdated Sub-Class:"

**Proposed California Backdated Sub-Class**: All persons who have or had a loan or line of credit with U.S. Bank secured by their residential property in the State of California and who were charged for backdated lender-placed flood insurance by U.S. Bank on or after May 16, 2008.

*Id.* ¶ 50.

The court denied Defendants' motions to dismiss the FAC. 12/11/12 Order, ECF No. 80. Defendants answered. *See* U.S. Bank Answer, ECF No. 83; ASIC Answer, ECF No. 84. The court held a case management conference on February 23, 2013, issued its initial case management scheduling order, and set dates for the case including an April 1, 2013 deadline to seek leave to add new parties or amend the pleadings. 3/4/13 Order, ECF No. 91 at 2.

**B.  The Class Certification Briefing and ASIC's 12(c) Motion**

On September 24, 2013, Ellsworth filed his motion for class certification. *See* ECF No. 135.[2] He sought to certify two nationwide classes (one with a sub-class) and two California classes (one with a sub-class). *See id.* at 2-3. The proposed "Nationwide Classes" were defined as follows:

**Nationwide Lender-Placed Class**

All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in the United States within the applicable statute of limitations, where such flood insurance was procured with the assistance of American Security Insurance Company or its affiliates.

**Nationwide Lender-Placed Sub-Class**

All persons within the Nationwide Lender-Placed Class who were charged by U.S. Bank, N.A. for force-placed flood insurance prior to December 1, 2011.

---

[2] Portions of the class certification briefing were filed under seal. The court cites to the sealed, unredacted versions of the documents, rather than the publicly-available, redacted versions.

C 12-02506 LB (ORDER)          3

**Nationwide Backdated Class**

All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in the United States before January 1, 2013 and within the applicable statute of limitations, where such insurance was backdated by more than 60 days.

Class Cert. Motion at 2-3. The proposed "California Classes" were a "California Lender-Placed Class," a "California Lender-Placed Sub-Class," and a "California Backdated Class." *See id.* at 3. The California Classes were identical to the Nationwide Classes except: (1) they were limited to properties in California and (2) the California Lender-Placed Class and Backdated subclass were limited to charges on or after May 16, 2008. *Id.*

**California Lender-Placed Sub-Class**

All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in the state of California on or after May 16, 2008, where such flood insurance was procured with the assistance of American Security Insurance Company or its affiliates.

**California Lender-Placed Sub-Class**

All persons within the Nationwide Lender-Placed Class who were charged by U.S. Bank, N.A. for force-placed flood insurance prior to December 1, 2011.

**California Backdated Sub-Class**

All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, in the state of California on or after May 16, 2008 and before January 1, 2013, where such insurance was backdated by more than 60 days.

U.S. Bank and ASIC opposed certification on October 24, 2013. *See* ECF Nos. 129-2, 132-5. In its opposition, U.S. Bank argued that the court should deny class certification because Ellsworth's proposed classes were "overbroad." ECF No. 132-5. Specifically, U.S. Bank argued that variations in state law precluded certification of the Nationwide Classes and that individual inquiries into damages and injury would be necessary on all the claims. *Id.* at 20-29. In support of its argument about variations in state law, U.S. Bank. attached a chart summarizing the elements of a breach of contract claim in each state and the District of Columbia. *See* Droske Decl., ECF No. 130-30 ("State Law Summary").

U.S. Bank also attacked Ellsworth's typicality as a class representative. ECF No. 132-5 at 29-32. One argument was that U.S. Bank "recently discovered" at Ellsworth's October 4, 2013

C 12-02506 LB (ORDER)    4

deposition that Ellsworth's property was not in a Special Flood Hazard Area ("SFHA") and thus did not require insurance. *See id.* at 10, 23 n.12, 30. U.S. Bank said that its previous determination was wrong and was the mistake of its third-party vendor CoreLogic. *See id.* at 10; Wolfe Decl., ECF No. 130-1, ¶¶ 33-38. It said that it intended to refund the "only LPI premium at issue in this lawsuit." Opposition at 10; Wolfe Decl., ECF No. 130-1, ¶ 38.

ASIC also opposed Ellsworth's class certification motion. *See* ECF No. 129-2. It focused on state law variations regarding unjust enrichment and the filed rate doctrine, *id.* at 17-23, and the necessity of individualized inquiries regarding the unjust enrichment and UCL claims, affirmative defenses, and punitive damages, *id.* at 24-31. It also moved for partial judgment on the pleadings, arguing that Ellsworth's unjust enrichment and UCL claims are duplicative because they arise out of the same allegations and seek the same relief. *See* ASIC 12(c) Motion, ECF No. 128 at 2-3.

On November 14, 2013, Ellsworth filed his reply brief. *See* Reply in Support of Motion for Class Certification, ECF No. 149-5. He proposed two changes to the class certification motion that are relevant to the motion to amend. (The other changes to the complaint do not materially change the claims.)

First, he argued that U.S. Bank's refund did not render him unsuitable as a class representative because it did not provide him with complete relief. *Id.* at 7. Nonetheless, to safeguard the putative class, he proposed two more representatives plaintiffs, Marilyn Weaver (from California) and Donene Skelley (from New Mexico). *Id.* at 8. He attached their declarations and documentary evidence in support of their suitability as class representatives. *See* Skelley Decl., ECF No. 148-5 - 148-16; Weaver Decl., ECF No. 148-16 - 148-26.

Second, he proposed revised class definitions similar to those in the proposed second amended complaint that is the subject of this order. *See* Reply at 10-12; Second Richter Decl., ECF No. 148-2. Ellsworth summarized the revisions as follows:

- Plaintiff's UCL claim remains limited to borrowers with secured property in California;
- Plaintiff's claims for breach of the covenant of good faith and fair dealing and for unjust enrichment have been limited to single-state classes consisting of borrowers in California (where Plaintiff's property and Ms. Weaver's property are located) and New Mexico (where Ms. Skelley's property is located); and

C 12-02506 LB (ORDER)                                     5

- Plaintiff's claim for breach of contract is limited to borrowers in states that apply their contract law in a manner similar to California and New Mexico, according to U.S. Bank's own state law summary. *See Droske Decl., Ex. 10.*

Class Cert. Reply at 10. Ellsworth argued that limiting his claims to single-state classes mooted Defendants' arguments that state law differences preclude certification of his unjust enrichment, UCL, and breach of the covenant of good faith and fair dealing claims. *Id.* With regard to the breach of contract claim, Ellsworth argued that the revised class definitions harmonize the variations in state law that U.S. Bank identified in its State Law Summary. *Id.* These variations are as follows: "(1) whether damages are an element of breach; (2) whether plaintiff's performance is an element of breach; and (3) whether parol evidence is allowed to vary contract terms." Reply at 10 (citing State Law Summary, ECF No. 130-30).[3] According to Ellsworth, "[i]n twenty states (including California), the answer to these questions is 'YES-YES-YES,' according to [the State Law Summary]. In another twenty states (including New Mexico), the answer to these questions is 'YES-NO-YES.'" *Id.* (internal citations omitted).

Accordingly, on the breach of contract claim, Ellsworth proposed certifying three multi-state classes on behalf of property owners in 40 states. Each of these Multi-State Classes would contain two sub-classes. One sub-class would include all those members of the class whose property is located in the "YES-YES-YES" states.[4] *Id.* The other sub-class would include all those members of the class whose property is located in the "YES-NO-YES" states.[5]

---

[3] The State Law Summary also charts the states' positions on whether the existence of a material breach excusing non-performance is a question of law or fact. Ellsworth argues that this is not relevant and that the State Law Summary misrepresents the law in many states. *Id.* at 10-12.

[4] These 20 states are: California, Alabama, Alaska, Colorado, Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts, Missouri, New Jersey, New York, North Dakota, Oregon, Texas, Utah, and West Virginia. Because this group includes California, where Ellsworth and Weaver's properties are located, Ellsworth refers to these sub-classes as the "Ellsworth/Weaver" or "Ellsworth" sub-classes. *Id.*

[5] These 20 states are: New Mexico, Arizona, Arkansas, Delaware, Georgia, Maine, Minnesota, Mississippi, Montana, Nebraska, Nevada, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Virginia, Washington, Wisconsin, and Wyoming. Because this group includes New Mexico, where Skelley resides, Ellsworth refers to these sub-classes as the "Skelley Sub-

Ellsworth also proposed revised class definitions on his state law claims. *Id.* at 5-7. As summarized above, he proposed bringing his good faith and fair dealing, unjust enrichment, and UCL claims on behalf of three California classes. *Id.* at 5-6. If Skelley were permitted to serve as a class representative as well, he would seek certification of three New Mexico classes in connection with the good faith and fair dealing and unjust enrichment claims. *Id.* at 6-7.

**C. Timing Issues Regarding Motion to Amend**

On November 18, 2013, four days after filing his reply brief, Ellsworth filed a motion to amend the complaint and an administrative motion to shorten the hearing schedule so that the motion to amend could be heard at the December 5, 2013 hearing on the motion to certify the class. Motion to Amend, ECF No. 151; Admin. Motion to Shorten Time, ECF No. 152. In their oppositions to the motion to shorten time, ASIC and U.S. Bank said that they offered not to oppose a motion to amend if Plaintiff would withdraw the certification motion. U.S. Bank Opp'n to Admin., ECF No. 157 at 2 n.1; ASIC Opp'n to Admin. Motion, ECF No. 156 at 3.

The court held a case management conference on November 22, 2013, set the motion to amend on a slightly-abbreviated track for December 19, 2013, and trailed the class certification motion to January 16, 2014. *See* ECF No. 158.

**D. Proposed Second Amended Complaint**

The claims and factual allegations in the proposed second amended complaint ("PSAC") are substantially similar to those in the FAC, though the PSAC provides a few additional factual details. *Compare, e.g.,* FAC ¶¶ 28, 41, *with* PSAC ¶¶ 52, 65. The primary changes are (1) the new proposed representative plaintiffs Marilyn Weaver and Donene Skelley and (2) the revised class definitions proposed in Ellsworth's class certification reply.

*1. Marilyn Weaver's Allegations*

In August 2011, Marilyn Weaver obtained a mortgage loan from First Nations Home Finance ("First Nations") in the amount of $435,000, which was secured by a Single Family Fannie Mae/Freddie Mac Uniform Instrument on her home in San Diego, California. PSAC, ¶ 30, Ex. A.

---

Classes." *Id.*

Weaver's deed of trust allowed her lender to force-place flood insurance coverage if Weaver failed to maintain the required amount of coverage. *Id.* ¶ 31. The deed authorized the lender to "do and pay for whatever is reasonable and appropriate" to protect its interest in the property. *Id.*

In November of 2011, Freddie Mac notified Weaver that it had acquired her loan, and informed her that U.S. Bank, N.A. would be the servicer of the mortgage. *Id.* ¶ 32.

In June of 2012, U.S. Bank sent Weaver a form letter informing her that a Federal Emergency Management Agency ("FEMA") map revision had placed her "structure(s)" in "Special Flood Hazard Area 'Zone A.'" *Id.* ¶ 33. The letter further stated that if she did not provide adequate proof of flood insurance within 45 days of the letter, U.S. Bank was required to lender-place coverage. *Id.* Weaver sold this property on July 3, 2012, and finalized the sale papers on July 16. *Id.* ¶ 34. On July 18, Weaver notified U.S. Bank in writing that the property had been sold and that her escrow would close on August 31, thus negating her need for flood insurance. *Id.*

Weaver then received a letter from U.S. Bank dated August 13 stating that a lender-placed policy had been issued with an effective date of July 27, 2012. *Id.* ¶ 35. On or about August 21, 2012, Weaver received a "Notice of Flood Insurance Placed By Lender," which attached a declarations page showing that $250,000 in flood insurance coverage had been force-placed on her property through ASIC. *Id.* ¶ 36, Ex. 12. The effective date of this coverage was July 27, 2012, and the annual premium was $2,250. *Id.*

When Weaver signed the final papers for the sale of her house on August 29, 2012, she was forced to pay $2,250 in "Escrow Overdraft" for the flood insurance U.S. Bank placed on her property. *Id.* ¶ 37. Weaver made several phone calls to U.S. Bank in an attempt to cancel the coverage and obtain a refund. *Id.* ¶ 38. Eventually, she received a letter stating the force-placed coverage had been cancelled effective August 30, 2012, and later received a check in the amount of $2,041 for a partial refund. *Id.* ¶¶ 38-39. However, she has not received a full refund. *Id.* ¶ 39.

### *2. Donene Skelley's Allegations*

On or about February 21, 2002, Donene Skelley obtained a $100,000 mortgage loan from Firstbank, secured by a mortgage on her home in Causey, New Mexico. *Id.* ¶ 40. Skelley's deed of trust is a Fannie Mae/Freddie Mac Uniform Instrument. *Id.* Skelley's home was not located in an

1  SFHA when she closed on her loan, and she was not required to carry flood insurance on her
2  property at that time. *Id.* ¶ 41.

3      On or about September 7, 2011, Skelley was notified that her mortgage loan had been assigned
4  to U.S. Bank effective February 3, 2011. *Id.* ¶ 42. She was not informed of a flood-insurance
5  requirement at that time. *Id.* However, on December 12, 2011, U.S. Bank sent Skelley a form letter
6  advising her that her property was located in an SFHA and that she was required to purchase flood
7  insurance on her property. *Id.* ¶ 43. The letter further stated that U.S. Bank had placed temporary
8  flood insurance on her property, backdated to an effective date of June 1, 2011. *Id.* The insurance
9  binder document attached to the letter showed that this flood insurance coverage was issued through
10 ASIC in the amount of $86,461, at an annual premium of $778. *Id.* On or about February 20, 2011,
11 Skelley received a "Notice of Flood Insurance Placed by Lender," which attached a declarations
12 page for a full-year flood insurance policy showing the same backdated coverage date, coverage
13 amount, and cost. *Id.* ¶ 44, Ex. 19.

14     On or about February 21, 2012, Skelley's insurance agent, Lori Bohm, sent a letter to U.S. Bank
15 stating that Skelley's home was in Flood Zone D and thus "flood insurance is NOT available nor
16 should it be required." *Id.* ¶ 45 (quoting *id.* Ex. 21). Bohm attached a copy of a flood-zone
17 determination completed on February 21, 2012, indicating that Skelley's home was not located in an
18 SFHA. *Id.* ¶ 45, Ex. 21. The NFIP Map Panel Effective Date on the form was October 6, 2010. *Id.*

19     On or about March 5, 2012, U.S. Bank sent Skelley a letter that stated, "A recent review of your
20 account revealed that the property structure secured by the above referenced loan is no longer
21 located in a [SFHA]," and Skelley was no longer required to maintain flood insurance on her
22 property. *Id. ¶ 46.* Skelley received a second letter from U.S. Bank that day stating that its records
23 showed "a lapse of insurance coverage from 06/01/11 to 03/05/12." *Id.* ¶ 46, Ex. 23.

24     Skelley received another letter from U.S. Bank on or about March 12, 2012 that stated that the
25 force-placed flood insurance coverage on her property would be cancelled and she would receive a
26 partial refund of $187. *Id.* U.S. Bank still would charge $591 to Skelley's escrow account because
27 "coverage was provided between the effective date of the coverage [U.S. Bank] obtained and the
28 termination date." *Id.* ¶ 47, Ex. 24.

On or about July 5, 2012, Skelley faxed a letter to U.S. Bank reiterating that her home was never located in a flood zone and included a flood zone determination that showed that her home was not located in an SFHA according to the October 6, 2012 NFIP map. *Id.* ¶ 48 & Ex. 25. On or about July 16, 2012, Skelley received a letter from U.S. Bank reiterating that her property was no longer in a flood zone as of March 5, 2012 and stating that she was required to have insurance from June 1, 2011 until March 5, 2012. *Id.* ¶ 49, Ex. 26.

The $591 charge that U.S. Bank imposed for force-placed flood insurance coverage from June 1, 2011 to March 5, 2012 was added to Skelley's escrow account and built into her monthly mortgage payment. *Id.* ¶ 50. Skelley has been making these payments against her will to remain current on her mortgage. *Id.*

### *3. Revised Class Definitions in the PSAC*

For claim 1 (the breach of contract claim), Ellsworth proposes three multi-state classes, each covering class members in 40 states, defined as follows:[6]

**Multi-State Lender-Placed Class**: All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in [the 40 states listed at n.4] within the applicable statute of limitations, where such flood insurance was procured with the assistance of American Security Insurance Company or its affiliates, excluding persons whose force-placed flood insurance charges were completely refunded or extinguished through a bankruptcy, foreclosure judgment, loan modification, forbearance, short sale, or deed-in-lieu of foreclosure.

**Multi-State QER Class:**[7] All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in [the 40 states listed] within the applicable statute of limitations and prior to December 1, 2011, where such flood insurance was

---

[6] These 40 states are California, Alabama, Alaska, Colorado, Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts, Missouri, New Jersey, New York, North Dakota, Oregon, Texas, Utah, West Virginia, New Mexico, Arizona, Arkansas, Delaware, Georgia, Maine, Minnesota, Mississippi, Montana, Nebraska, Nevada, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Virginia, Washington, Wisconsin, and Wyoming. As described above in section I.(D.) and notes 4-5, these are broken into two groups of 20 states each, the first with breach of contract law like California's and the second with breach of contract law like New Mexico's.

[7] Plaintiffs assert claims on behalf of the "QER" classes and sub-classes to the extent that the claims "are based on allegations of improper qualified expense reimbursements." *Id.* ¶¶ 72, 75, 78.

procured with the assistance of American Security Insurance Company or its affiliates, excluding persons whose force-placed flood insurance charges were completely refunded or extinguished through a bankruptcy, foreclosure judgment, loan modification, forbearance, short sale, or deed-in-lieu of foreclosure.

**Multi-State Backdated Class:**[8]  All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in the United States before January 1, 2013 and within the applicable statute of limitations, where such insurance was backdated by more than 60 days, excluding persons whose force-placed flood insurance charges were completely refunded or extinguished through a bankruptcy, foreclosure judgment, loan modification, forbearance, short sale, or deed-in-lieu of foreclosure.

*See id.* ¶¶ 71-73.  Each of these Multi-State Classes would contain one "Ellsworth/Weaver Sub-Class" or "Ellsworth Sub-Class"[9] and one "Skelley Sub-Class," as described above.  *See id.*

Ellsworth also proposes revised class definitions on his state claims.  *See id.* ¶¶ 74-76.  On the claims for breach of the covenant of good faith and fair dealing, unjust enrichment, and violation of California's UCL, Ellsworth proposes three California classes:

**California Lender-Placed Class**: All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in the State of California on or after May 16, 2008, where such flood insurance was procured with the assistance of American Security Insurance Company or its affiliates, excluding persons whose force-placed flood insurance charges were completely refunded or extinguished through a bankruptcy, foreclosure judgment, loan modification, forbearance, short sale, or deed-in-lieu of foreclosure.

**California QER Class**: All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in the State of California on or after May 16, 2008 and prior to December 1, 2011, where such flood insurance was procured with the assistance of American Security Insurance Company or its affiliates, excluding persons whose force-placed flood insurance charges were completely refunded or extinguished through a bankruptcy, foreclosure judgment, loan modification, forbearance, short sale, or deed-in-lieu of foreclosure.

**California Backdated Class**: All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in the State of California on or after May 16, 2008 and before January 1, 2013, where such insurance was backdated by more than 60 days, excluding persons whose force-placed flood insurance charges were completely

---

[8] Plaintiffs assert claims on behalf of the "Backdated" classes and sub-classes to the extent that the claims "are based on allegations of improper backdating."  *Id.* ¶¶ 73, 76, 79.

[9] Weaver is not a member of the proposed Multi-State Backdated Class, so Ellsworth is the sole class representative of the "Backdated Sub-Class."

C 12-02506 LB (ORDER)                                             11

refunded or extinguished through a bankruptcy, foreclosure judgment, loan modification, forbearance, short sale, or deed-in-lieu of foreclosure.

*Id.* ¶¶ 74-76. Skelley seeks certification of the following three New Mexico classes on the claims for breach of the covenant of good faith and fair dealing and unjust enrichment:

**New Mexico Lender-Placed Class**: All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in the State of New Mexico on or after May 16, 2008, where such flood insurance was procured with the assistance of American Security Insurance Company or its affiliates, excluding persons whose force-placed flood insurance charges were completely refunded or extinguished through a bankruptcy, foreclosure judgment, loan modification, forbearance, short sale, or deed-in-lieu of foreclosure.

**New Mexico QER Class**: All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in the State of New Mexico on or after May 16, 2008 and prior to December 1, 2011, where such flood insurance was procured with the assistance of American Security Insurance Company or its affiliates, excluding persons whose force-placed flood insurance charges were completely refunded or extinguished through a bankruptcy, foreclosure judgment, loan modification, forbearance, short sale, or deed-in-lieu of foreclosure.

**New Mexico Backdated Class**: All persons with a closed-end residential mortgage loan secured by a Fannie Mae/Freddie Mac Uniform Instrument, who were charged by U.S. Bank, N.A. for force-placed flood insurance on property in the State of New Mexico on or after May 16, 2008 and before January 1, 2013, where such insurance was backdated by more than 60 days, excluding persons whose force-placed flood insurance charges were completely refunded or extinguished through a bankruptcy, foreclosure judgment, loan modification, forbearance, short sale, or deed-in-lieu of foreclosure.

*Id.* ¶¶ 77-79. In sum, Ellsworth proposes the following classes and sub-classes:

**Breach of Contract Claim**
1. Multi-State Lender-Placed Class
    a. Ellsworth/Weaver Lender-Placed Sub-Class
    b. Skelley Lender-Placed Sub-Class

2. Multi-State QER Class
    a. Ellsworth/Weaver QER Sub-Class
    b. Skelley QER Sub-Class

3. Multi-State Backdated Class
    a. Ellsworth Backdated Class
    b. Skelley Backdated Class

**Good Faith & Fair Dealing, Unjust Enrichment, and UCL Claims**
1. California Lender-Placed Class
2. California QER Class
3. California Backdated Class

**Good Faith & Fair Dealing, Unjust Enrichment Claims**
1. New Mexico Lender-Placed Class
2. New Mexico QER Class
3. New Mexico Backdated Class

*See id.*

U.S. Bank and ASIC oppose Ellsworth's motion to amend. *See* ASIC Opp'n, ECF No. 164; U.S. Bank Opp'n, ECF No. 165. ASIC does not oppose Ellsworth's motion to the extent he seeks to add Weaver to the complaint or redefine the California-only and multistate classes but opposes amending the complaint to add Skelley or the proposed New Mexico Classes. ASIC Opp'n at 6-7. U.S. Bank opposes Ellsworth's motion entirely. *See* U.S. Bank Opp'n at 5.

U.S. Bank states that after Ellsworth identified Skelley and Weaver as new proposed class representatives, it conducted an internal review of Skelley and Weaver's records. *Id.* at 10. The review showed that "because Ms. Skelley's property was never in a SFHA for which flood insurance was required after U.S. Bank acquired the loan, lender-placed flood insurance was not required. Accordingly, consistent with U.S. Bank's policies, U.S. Bank issued a complete refund of the premium charged and interest on November 29, 2013." *Id.*

## ANALYSIS

The first issue is whether Ellsworth shows good cause to file the PSAC. Ellsworth argues that he does because he is responding to U.S. Bank's attempt to moot Ellsworth's claims by refunding his money and otherwise has been diligent. U.S. Bank and ASIC counter that they never argued mootness, Ellsworth wants to amend only to refine his allegations in light of their oppositions to his motion for class certification, and that is not good cause. The parties also disagree about whether permitting amendment prejudices U.S. Bank and ASIC, and whether the proposed amendments are futile.

### I. LEGAL STANDARDS UNDER RULES 15(a) AND 16(b)

Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013). Because "Rule 15 favors a liberal policy towards amendment, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted."

*Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989) (citation omitted). Courts generally consider five factors when assessing the propriety of a motion for leave to amend: undue delay, bad faith, futility of amendment, prejudice to the opposing party and whether the party has previously amended the pleadings. *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 n.3 (9th Cir. 2009).

Where a party seeks leave to amend after the date specified in a scheduling order, Rule 16(b) also applies. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). Under Rule 16(b), "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge." *Id.*; *see* Fed. R. Civ. P. 16(b)(4). Therefore, a party seeking to amend a pleading after the date specified in a scheduling order must first show "good cause" for the amendment under Rule 16(b), and second, if good cause is shown, the party must demonstrate that the amendment is proper under Rule 15. *Id.*

In order to determine whether good cause exists to modify the scheduling order, courts focus on the reasonable diligence of the moving party. *See Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007); *see also Johnson*, 975 F.2d at 609 (stating that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief" under Rule 16(b); adding that "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, [but] the focus of the inquiry is upon the moving party's reasons for seeking modification"). "If that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609.

## II. GOOD CAUSE EXISTS UNDER RULE 16(b)

The parties spend their time analyzing good cause primarily in the context of Ellsworth's argument that U.S. Bank tried to pay him off, possibly trying to moot his claims (even though the parties do not argue that Ellsworth's claims are now moot and there is authority to the contrary). *See, e.g.,* Motion, ECF No. 151 at 8 n.5, 11; U.S. Bank Opp'n, ECF 165 at 10, 12; ASIC Opp'n, ECF No. 164 at 2 n.1. Ellsworth argues that the last-minute refund provides good cause to amend. Defendants respond that the refund is a red herring that Ellsworth is using to convince the court to let him improve his class certification prospects with the benefit of their opposition briefs. They

argue that this does not establish good cause.

The court's good cause inquiry focuses on Ellsworth's diligence in the context of the entire case. The motion to amend comes after the scheduling order's deadline to seek leave to amend the complaint and add parties. The March 4 scheduling order set that deadline for April 1. ECF No. 91 at 2. This was even earlier than the date the parties agreed to. *See* 2/21/2013 CMC Statement, ECF No. 87 at 11. The case is still in a relatively early stage (if one considers as a reference the initial CMC).

U.S. Bank's refund did not become an evident concern until October 2013. Although U.S. Bank asserts that Ellsworth was on notice about the issue before he filed suit, U.S. Bank Opp'n at 16, it does not suggest that Ellsworth had any luck getting U.S. Bank to refund his money. Instead, the court concludes that the appropriate period to consider Ellsworth's diligence begins in late October, when Ellsworth would have received U.S. Bank's October 21 letter announcing its intent to refund his premiums. *See* Wolfe Decl. Supp. U.S. Bank Class Cert. Opp'n, ECF No. 130-2. Ellsworth's diligence is highlighted by the fact that U.S. Bank did not even complete the refund until the day before Ellsworth filed his class certification reply brief. *Compare* U.S. Bank Opp'n at 8 (noting that it refunded Ellsworth's premiums on November 13, 2013), *with* Class Cert. Reply, ECF No. 148 (filed November 14, 2013). In sum, the court concludes that Ellsworth quickly reacted to what he perceived as an unfair last-minute gambit.

The court is not ascribing fault to anyone. It cannot on this record, and it accepts the parties' representations about what they thought along the way. From the court's perspective, this case has been fiercely (but fairly) litigated by counsel on each side, and the court is hard-pressed to fault any of their diligence.

### III. LEAVE TO AMEND UNDER RULE 15

The court considers the following five factors in determining whether to grant leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff previously amended his complaint. *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 1997).

**A. The Proposed Amendments Will not Prejudice Defendants**

Of the five factors, prejudice to the opposing party is the "touchstone of the inquiry under rule 15(a)" and "carries the greatest weight." *Eminence Capital*, 316 F.3d 1048, 1052 (9th Cir. 2003). Absent prejudice or a strong showing on other factors, a presumption exists under Rule 15(a) favoring granting leave to amend. *See id.* In order to justify denial of leave to amend, the prejudice must be substantial. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). The party opposing a motion to amend bears the burden of showing prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

The PSAC does not change the legal theories, facts, and claims in the FAC. Defendants argue they will suffer prejudice if they cannot depose the new named plaintiffs, and the court will give them that opportunity. The court also will order supplemental briefing on the class certification motion.

Moreover, a fact that militates against Defendants' prejudice arguments is that they offered not to oppose Ellsworth's motion to amend if he agreed to withdraw his class certification motion. *See* U.S. Bank Opp'n to Admin., ECF No. 157 at 2 n.1; ASIC Opp'n to Admin. Motion, ECF No. 156 at 3; ASIC Opp'n, ECF No. 164 at 10.

To the extent that Defendants argue that the limited discovery required is unduly burdensome and prejudicial, the court disagrees. *See* U.S. Bank Opp'n at 17-18; ASIC Opp'n at 19.

Defendants cite cases in which courts find prejudice where the litigation essentially starts over. For example, *Velazquez v. GMAC Mortgage Corporation* was a TILA and state-law class action. The representative plaintiffs withdrew after discovery into their particular loan transactions showed that they had no substantive claims. Counsel sought to substitute new representative plaintiffs for the Velazquezes, which would effectively start the case anew and prejudice the Defendants by making them redo all the discovery and explore the same issues. *Id.* at *4. Unlike *Velazquez*, Ellsworth's proposed amended complaint will not require Defendants to relitigate their case. He does not seek to withdraw, he does not add new claims or facts, he adds new parties who assert the same claims and theories, and he narrows his class definitions. Defendants will have some additional discovery but that discovery will be about the attributes of the two new representative plaintiffs, and Defendants already have their loan documents. *Hitt v. Arizona Beverage Co., LLC*

does not change the outcome for the same reason. *See* No. 08CV809WQH-POR, 2009 WL 4261192, at *6 (S.D. Cal. Nov. 24, 2009) (denying motion to amend as prejudicial because granting the motion would effectively moot the Plaintiff-specific work Defendants had done and citing *Velazquez* for the proposition).

Similarly, it is not persuasive that additional discovery disadvantages Defendants because they have tailored their defenses with Ellsworth in mind. *See* ASIC Opp'n at 19. ASIC relies on cases in which the plaintiff sought to add parties just prior to or even after the close of discovery. *See Osakan v. Apple American Group*, No. C 08-4722 SBA, 2010 WL 1838701, at *2-3 (N.D. Cal. May 5, 2010) (denying motion to add class representatives filed less than two weeks before the discovery cut-off); *Hitt*, 2009 WL 4261192 (discussed above). The timing is different here. The complaint retains the same claims. And again, Defendants offered to allow amendment.

In sum, the court discerns no prejudice that cannot be addressed by scheduling.

**B. Defendants' Futility Arguments are Unavailing**

Defendants argue futility. Their arguments are better addressed in a motion to dismiss or at class certification.

ASIC argues that adding Skelley as a named plaintiff would be futile because her husband and co-borrower, Lawrence Skelley, is a person who must be joined under Federal Rule of Civil Procedure 19. ASIC Opp'n at 14-15. ASIC devotes just three paragraphs to making this argument and does not apply the law to the facts here. Ellsworth responds that Mr. Skelley is not indispensable, he waives a separate lawsuit, and he is "willing to serve as a class representative" if necessary. Reply at 18 (quoting Lawrence Skelley Decl. ¶ 6, ECF No. 166-3 at 2). The court cannot hold that amendment is futile on this record.

ASIC argues that the proposed New Mexico classes cannot be certified because Ellsworth cannot show that concentration of the New Mexico class claims in California is desirable. ASIC Opp'n at 16 (citing *Lane*, 2013 WL 3187410, at *12). On this record, the court cannot conclude this. It is an issue for class certification.

U.S. Bank argues that unlike Ellsworth, it mooted Skelley's claims by refunding her money before she joined this suit. *See* U.S. Bank Opp'n at 18-19. The argument is modest, it relies on a

Fifth Circuit case that appears to consider the question as an issue of first impression, it cites no Ninth Circuit authority, and Ellsworth cites contrary authority in the Ninth Circuit that he asserts saves Skelley's claim. *See* U.S. Bank Opp'n at 14 (citing *Murray v. Fidelity Nat'l Fin., Inc.*, 594 F.3d 419, 421-22 (5th Cir. 2010)); Ellsworth Reply at 17-18 (citing the Ninth Circuit's ruling in *Pitts*, 653 F.3d at 1091-92). The court cannot find futility on this record and with this argument.

**C. Delay and Bad Faith**

Any delay arguments are subsumed in the court's inquiry about diligence (above). No one argues bad faith.

**IV. SCHEDULING AND CASE MANAGEMENT**

Plaintiff has 7 days to file an amended complaint. The court denies ASIC's motion for judgment on the pleadings as moot. Defendants may file a motion to dismiss and the parties may conduct additional discovery as provided below.

**A. Scheduling Plan**

After Plaintiff files the Second Amended Complaint, the parties must promptly meet and confer and prepare a discovery plan and motion briefing schedule for dispositive motions and class certification. The court prefers that the scheduling meet-and-confer take place next week, though the parties may wait until Monday, January 6 (after the holidays). The exception is the motion to dismiss. The parties must confer on any scheduling issues within two business days after Plaintiff files the amended complaint (for purposes of this order, Christmas Eve, Christmas Day, New Years' Eve and New Years' Day are not business days). The parties must file a joint statement with their proposed schedule and discovery plan by January 16, 2014. The schedule should be in a chart like that in the court's CMC order at ECF No. 91. If the parties disagree on scheduling, their chart must capture their disputes with the following columns: issue (e.g., filing date), Plaintiff's proposal, Defendant's proposal, and ruling.

At their meet-and confer, the parties also must discuss ADR and their views on timing. If the parties continue to believe that ADR should wait until after class certification, that is fine, but it is also true that the parties' differences are now fully illuminated, and that may change the parties' view on timing.

**B. Discovery**

The court expects the additional discovery to be modest and the <u>discovery must be completed by early February</u>. The parties may extend the discovery deadlines only by stipulation. The court expects the parties to cooperate with regard to deposition scheduling and they must produce documents at the earliest possible dates.

**C. Dispositive Motions**

Any dispositive motions must be set for the earliest possible hearing date permitted under the local rules unless the parties stipulate to a different date (though reply briefs must be filed at least two weeks in advance). If the parties cannot agree, the ordinary time periods under the local rules apply (except the court would grant a modest extension to get people through the holidays). The court also limits the scope of the motions to dismiss to new issues (such as the New Mexico law issues identified in ASIC's opposition to the motion to amend) and will not reconsider arguments raised in the last round of dispositive motions. Defendants may argue new cases and old issues on summary judgment.

**D. Class Certification**

The parties' briefing and hearing schedule for the class certification motion must trail the motion to dismiss hearing in the shortest time frame possible. At the December 19 hearing, Plaintiff indicated that he may want to rest on his class certification reply brief (essentially as a revised motion for class certification). If that remains his choice, Defendants may have up to two weeks after the court issues its order on any motion to dismiss to file briefs in opposition to class certification (though the parties may stipulate to a longer period). With regard to page limits, Defendants each may have 25 pages, but may not incorporate by reference their earlier-filed briefs and instead must file stand-alone briefs. Plaintiffs may file a 15-page reply.

As an alternative, Plaintiffs may file a consolidated brief of twenty-five pages as a "revised" opening brief in support of the previously-filed (and still pending) motion for class certification. That brief similarly cannot incorporate by reference the original briefs. The briefing process in the previous paragraph applies otherwise.

The court vacates the January 16, 2014 class certification hearing. The court sets a case

management conference for January 23, 2014. Counsel may appear by telephone. The parties may vacate the case management conference by stipulation if they agree on all dates or they may stipulate to set it for any other Thursday at 11:00 a.m.

**CONCLUSION**

The court grants Ellsworth leave to amend. The court denies as moot ASIC's motion for partial judgment on the pleadings. This disposes of ECF Nos. 119 and 128.

The court vacates the hearing set for January 16, 2014. The court sets a case management conference for January 23, 2014 and directs a meet-and-confer and the filing of a case management statement by January 16, 2014 regarding the discovery and scheduling issues discussed above. The parties may reset or vacate the case management hearing by stipulation, but they must file the joint statement on time.

This disposes of ECF Nos. 128 and 151.

IT IS SO ORDERED.

Dated: December 19, 2013

LAUREL BEELER
United States Magistrate Judge