UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| STEPHEN ELLSWORTH, as an individual and as a Representative of the classes and on behalf of the general public,<br><br>        Plaintiff,<br>   v.<br><br>U.S. BANK, N.A., and AMERICAN SECURITY INSURANCE COMPANY,<br><br>        Defendants.<br>_____/ | No. C 12-02506 LB<br><br>ORDER (1) GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT, (2) APPROVING FORM AND MATTER OF CLASS NOTICE, AND (3) SETTING HEARING FOR FINAL APPROVAL.<br><br>[ECF No. 291] |

**INTRODUCTION**

In this class action, Plaintiffs challenge U.S. Bank's practice of force-placing backdated flood insurance that was underwritten by American Security Insurance Company ("ASIC"). They also allege that U.S. Bank received kickbacks from ASIC in the form of expense reimbursements and discounted administrative insurance-tracking services. (Second Amended Class Action Complaint ("SAC"), ECF No. 169, ¶ 2.)[1] They allege six claims: (1) breach of their form mortgage contracts by U.S. Bank; (2) breach of the implied covenant of good faith and fair dealing by U.S. Bank under the laws of California and New Mexico; (3)-(4) unjust enrichment of U.S. Bank and ASIC under the laws of California and New Mexico; and (5)-(6) violations of California Business and Professions

---

[1] Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated numbers at the tops of documents.

C 12-02506
ORDER

1  Code section 17200 *et seq.* against U.S. Bank and ASIC.

2  After the court granted Plaintiffs' motion for class certification (ECF Nos. 249, 250), the parties
3  settled the case, and Plaintiffs filed an unopposed motion for preliminary approval of the proposed
4  class action settlement. (*See* Motion, ECF No. 291.) The court grants the motion.

## STATEMENT

### I. THE LAWSUIT TO DATE

Plaintiffs filed the lawsuit in May 2012, an amended complaint in July 2012, and a second amended complaint in December 2013. (ECF Nos. 1, 26, 80.) The litigation has been protracted and included U.S. Bank's motion to compel arbitration, three rounds of motions to dismiss (all denied), a motion for judgment on the pleadings, class certification, and U.S. Bank's attempt to seek interlocutory review of the court's class-certification order at the Ninth Circuit, which denied the petition. (*See generally* docket.)  The parties ultimately settled the case after several settlement conferences and calls with another magistrate judge of this court.

### II. THE PROPOSED SETTLEMENT

The proposed settlement is as follows. The settlement classes are those that the court certified. (*See* 8/20/14 Order, ECF No. 261; Settlement Agreement, ECF No. 291-3, ¶ 2(o).) There are 2,859 class members, and the parties anticipate that the number will increase slightly once Defendants supplement their production of the class data through the date of the settlement agreement. (Settlement Agreement, ¶ 40; Olsen Decl., ECF No. 291-9, ¶ 10.)  The breakdown of the class members is as follows:

| Class | # of Members |
|---|---|
| Multi-State Lender-Placed Flood Insurance Class | 2,382 |
| Ellsworth Lender-Placed Sub-Class | 1,706 |
| Skelley Lender-Placed Sub-Class | 676 |
| Multi-State Qualified Expense Reimbursement ("QER") Class | 1,583 |
| Ellsworth QER Sub-Class | 1,219 |
| Skelley QER Sub-Class | 364 |
| Multi-State Backdated Flood Insurance Class | 860 |

| | |
|---|---|
| Ellsworth Backdated Sub-Class | 655 |
| Skelley Backdated Sub-Class | 205 |
| California Lender-Placed Good Faith and Fair Dealing Class | 469 |
| California QER Good Faith and Fair Dealing Class | 385 |
| California Backdated Good Faith and Fair Dealing Class | 151 |
| California Lender-Placed Unjust Enrichment and UCL Class | 898 |
| California QER Unjust Enrichment and UCL Class | 693 |
| California Backdated Unjust Enrichment and UCL Class | 315 |
| New Mexico Lender-Placed Good Faith and Fair Dealing Class | 34 |
| New Mexico QER Good Faith and Fair Dealing Class | 20 |
| New Mexico Backdated Good Faith and Fair Dealing Class | 19 |
| New Mexico Lender-Placed Unjust Enrichment Class | 82 |
| New Mexico QER Unjust Enrichment Class | 61 |
| New Mexico Backdated Unjust Enrichment Class | 26 |
| **TOTAL** | **2,859** |

Many class members fall within multiple class definitions. (Olsen Decl., ECF No. 291-9, ¶ 10.) All fall in one or more of the Lender-Placed classes, 1,932 fall within one or more of the QER classes, and 1,032 members within one or more of the Backdated classes. (*Id.* ¶11.)

Under the settlement agreement, class members will receive a refund of 12.5 percent of the amount that they were charged for lender-placed flood insurance ("LPFI") during the relevant class periods set forth in the class definitions (excluding any amounts refunded). (Settlement Agreement ¶ 23.) This amounts to $506,728 in relief, given the approximately $4,053,286 in unrefunded LPFI charges during the applicable class periods. (*Id.* ¶ 13.) In addition, class members who were charged for LPFI coverage backdated 120 days or more will receive additional compensation that depends on how far back the coverage was backdated: (1) $50 if backdated 90 to 180 days; (2) $75 if backdated 181 to 365 days; and (3) $100 if backdated over one year. (*Id.* ¶ 23.) Class members will receive refunds automatically by check and do not need to submit claim forms. (Richter Decl., ECF No. 291-2, ¶ 4; Settlement Agreement ¶ 25.) The amounts that are attributable to checks not cashed within 180 days will be redistributed to other class members who cashed their checks (if

there is more than $2 per class member remaining net of distribution costs) or alternatively to Habitat for Humanity as a *cy pres* award, subject to the court's approval. (Settlement Agreement ¶ 27.)

The settlement agreement provides for prospective relief as follows.

First, for three years, U.S. Bank and its affiliates will not accept commissions, qualified expense reimbursements, administrative payments, reinsurance payments, or compensation in connection with LPFI on property owned by any class member pursuant to a closed-end residential mortgage loan secured by a Frannie Mae/Freddie Mac Uniform Instrument, from any insurance vendor or agent (or affiliate of the same) other than payments on damages claims. (*Id. ¶*17.)

Second, for three years, ASIC and its affiliates will not give U.S. Bank or its affiliates below-cost or free outsourced services in connection with LPFI on property owned by any class member and lender-placed on property owned by any class member pursuant to a closed-end residential mortgage loan secured by a Frannie Mae/Freddie Mac Uniform Instrument, provided however that outsourced services do not include expenses associated with tracking functions that ASIC or its affiliates incur for their own benefit to protect themselves from (a) exposure to lost premium and losses to properties on which no other insurance is in effect or (b) administrative costs associated with providing and subsequently cancelling LPFI on properties on which LPFI is not required. (*Id. ¶*18.)

Third, for a three-year period, (a) U.S. Bank will provide the notice required in 42 U.S.C. § 4012a(e) to class members at least 45 days before charging them for LPFI and (b) if evidence of continuous adequate coverage is provided by a class member within that 45-day period, the class member will not be charged for LPFI for any periods during which such coverage will be in place. (*Id.* ¶ 19.) A breach of this provision entitles class members to a refund of the LPFI charges attributable to periods during which they maintained flood insurance on their own. (*Id.*)

In return for the settlement relief, class members who do not opt out of the settlement will release U.S. Bank and ASIC (and their affiliates, agents, and insurance vendors) from all claims that were or could have been asserted in the class action in connection with LPFI on a closed-end residential mortgage secured by a Fannie Mae/Freddie Mac Uniform Instrument serviced by U.S.

1  Bank during the relevant class periods. (*Id.* ¶ 58.)

2  The settlement administrator will send class members notice of the settlement by first-class mail. (*Id.* ¶ 41.) Class members have 60 days to object or opt out of the settlement. (*Id.* ¶ 2(u-v).) Before mailing, the settlement administrator will cross-reference the addresses on the class list against the U.S. Postal Service National Change of Address databases and update the list. (*Id.* ¶ 40.) The administrator will follow up with mail returned undeliverable by either forwarding it to any forwarding address affixed to the envelope or performing a skip trace. (*Id.* ¶¶ 40, 42, 43.) A settlement notice will be published in *USA Today*, and there will be a settlement website and a toll-free number. (*Id.* ¶ 43.) Defendants will pay all costs of administration, including the cost of notice, distributing the payments, and establishing the website and toll-free number, which means that the expenses will not be deducted from the settlement funds payable to class members. (*Id.* ¶ 36.)

Defendants will pay class counsel's attorney's fees and expenses up to $625,000 (represented in the motion as less than the lodestar), which means that payments to the class will not be reduced by fees and costs. (*Id.* ¶ 33.) The class representatives will receive awards of $2,500, also paid by Defendants in addition to payments to class members. (*Id.* ¶¶ 33-34.)

## ANALYSIS

### I. JURISDICTION

The court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).

### II. PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

The approval of a class action settlement has two stages: (1) the preliminary approval, which authorizes notice to the class; and (2) a final fairness hearing, where the court determines whether the parties should be allowed to settle the class action on the agreed-upon terms. In reviewing the proposed settlement, the court need not address whether the settlement is ideal or the best outcome, but determines only whether the settlement is fair, free of collusion, and consistent with Plaintiffs' fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). The *Hanlon* court identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

The court has evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that preliminary settlement is appropriate.

First, litigation poses risks, and an evaluation of the strengths and weaknesses of Plaintiffs' case militates in favor of settlement. Certain courts have dismissed similar claims in other lender-placed insurance and backdating cases.. (*See* Motion, ECF No. 291 at 27-28 (collecting cases).) Other courts have denied class certification or limited it to single-state classes. (*Id.* at 28 (collecting cases).) The court is very aware of the strengths and weaknesses of the case, given how intensively it has been litigated.

Second, the settlement appears to treat all class members fairly. It provides for a flat refund, and all class members will receive the same prospective relief. The relief compares favorably to other lender-placed insurance settlements that have been approved by courts. The settlement classes are co-extensive with the classes already certified by the court. There is no reversion to the defendants. Uncashed settlement funds will be redistributed to class members or to Habitat for Humanity as a *cy pres* award. The class-notice process is robust and will be supplemented by published notice and notice through a settlement website and a telephone hotline. The proposed settlement was the product of arm's-length, non-collusive negotiations, with the assistance of a magistrate judge who conducted several settlement conferences. In addition, Plaintiffs are represented by experienced and informed counsel.

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" such that preliminary approval of the settlement is warranted. *See Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The court thus approves the settlement agreement preliminarily.

### III. APPROVAL OF CLASS NOTICE AND SETTLEMENT ADMINISTRATOR

The court approves the class notice attached as Exhibit B to the Settlement Agreement and finds

that the notice and the procedure set forth in the Settlement Agreement for providing notice to the classes will provide the best notice practicable, satisfies the notice requirements of Rule 23, adequately advises class members of their rights under the Settlement, and meets the requirements of due process. The notice fairly, plainly, accurately, and reasonably provides class members with all required information, including (among other things): (1) a summary of the lawsuit and the claims asserted; (2) a clear definition of the classes; (3) a description of the material terms of the settlement; (4) a disclosure of the release of claims should they choose to remain class members; (5) an explanation of class members' opt-out rights, a date by which class members must opt out, and information regarding how to do so; (6) instructions as to how to object to the settlement and a date by which class members must object; (7) the date, time, and location of the final approval hearing; (8) the Internet address for the settlement website and the toll-free number from which class members may obtain additional information about the Settlement; and (9) the identity of Class Counsel and the Class Representatives, and information regarding the compensation they may receive under the Settlement. The proposed plan for mailing the class notice by first-class mail to the last known addresses of the members of the classes is an appropriate method, reasonably designed to reach all individuals who would be bound by the Settlement. To the extent that any class notices are returned as undeliverable, this form of mailed notice is also supplemented by a Publication Notice (which will be published in a nationwide newspaper) and the settlement website, which the court finds to be a reasonable form of supplemental notice. Accordingly, the court approves the settlement notices and the manner of distributing the settlement notices to class members.

The court also approves Dahl Administration LLC as the Settlement Administrator and authorizes and directs the Settlement Administrator to (i) mail the class notice, (ii) publish the Publication Notice, (iii) establish the Settlement Website, (iv) set up the telephone hotline with recorded information about the settlement, and (v) carry out such other responsibilities as are provided for in the Settlement Agreement or as may be agreed to by Plaintiffs and Defendants.

The court also directs the following.

1. The class notice must be mailed, via first-class mail, no more than 28 days after entry of this Preliminary Approval Order. For purposes of this mailing, the Settlement Administrator must use the

1 address information supplied by Defendants, subject to appropriate updating based on the information
2 available from the United States Post Office's National Change of Address Database.

3     2. No later than one week after the Class Notice Date, the Settlement Administrator must publish
4 the Publication Notice as provided in the Settlement Agreement.

5     3. On or before the Class Notice Date, the Settlement Administrator must make active a website
6 describing the terms of the Settlement and from which class members can download relevant
7 documents such as the Second Amended Complaint, the class notice, the Settlement Agreement, and
8 ECF-filed (*i.e.*, publicly available) copies of Plaintiffs' motion papers in support of approval of the
9 Settlement and in support of the requested attorneys' fees, costs, and class representative service
10 awards (when filed). The name of this website will be www.usbankfloodinsuranceclassaction.com.

11     4. On or before the Class Notice Date, the Settlement Administrator also will arrange for a toll-
12 free number and interactive voice response ("IVR") telephone system with information about the
13 Settlement. To the extent that class members have questions that are not answered by the IVR, those
14 questions will be handled by Class Counsel.

15     5. Class members who wish to exclude themselves from the Settlement ("opt out") must submit a
16 written statement to the Settlement Administrator requesting exclusion from the Settlement,
17 postmarked no later than 60 days after the Class Notice Date. Such written request for exclusion
18 must contain the name, address, telephone number, and email address of the class member requesting
19 exclusion, and be personally signed by the class member who seeks to opt out. The opt-out request
20 must be signed by all account holders and/or co-borrowers on the applicable mortgage account to be
21 valid. Any member of the classes who requests exclusion from the classes and chooses to opt out of
22 the Settlement will not be entitled to any compensation in connection with the Settlement and will not
23 be bound by the Settlement Agreement or have any right to object, appeal, or comment thereon.
24 Members of the classes who do not submit a valid and timely request for exclusion will be bound by
25 all terms of the Settlement Agreement, including the Class Release. No opt-out request may be made
26 on behalf of a group of class members, and untimely requests to opt out will be deemed invalid and
27 ineffective.

28     6. Any member of the classes who wishes to object to the Settlement must mail a written

statement of objection to the Clerk of Court, Class Counsel, and Defense Counsel postmarked no later than 60 days after the Class Notice Date. The Notice of Objection must include: (a) the case name and number; (b) the basis for the objection; (c) the name, address, telephone number, and email address of the class member making the objection; (d) a statement of whether the class member intends to appear at the Final Approval Hearing, either with or without counsel; and (e) be personally signed by the class member. Class Members who fail to make timely objections in the manner specified above will be deemed to have waived any objections to the Settlement and will be foreclosed from appearing at the Final Approval Hearing or making any objection (whether by appeal or otherwise) to the Settlement.

If the Settlement is finally approved and becomes effective, all class members who have not filed a timely and proper request for exclusion will release the Released Parties from all Released Claims, as described in the Settlement Agreement, including, *inter alia*, all claims related to U.S. Bank's flood-insurance requirements; the relationship, whether contractual or otherwise, between U.S. Bank (and its affiliates) and ASIC (and its affiliates) regarding lender-placed flood insurance, including, but not limited to, the procuring, underwriting, placement, tracking, or costs of lender-placed flood insurance; the coverage amount, duration, issue date, alleged "backdating," or alleged excessiveness of any of lender-placed flood insurance placed or charged by U.S. Bank; the payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any lender-placed flood insurance placed or charged by U.S. Bank; any alleged "tying" arrangement involving U.S. Bank and lender-placed flood insurance; any alleged breach of fiduciary duty by U.S. Bank concerning lender-placed flood insurance; any alleged tortious interference by ASIC (or its affiliates) with mortgage loans serviced by U.S. Bank; the disclosure or non-disclosure of any payment, expenses, fees, charges, or features pertaining to or under any lender-placed flood insurance or coverage under such lender-placed flood insurance and charges for such coverage placed or charged by U.S. Bank; the receipt or non-disclosure of any benefit under any lender-placed flood insurance or coverage under such lender-placed flood insurance and charges for such coverage placed or charged by U.S. Bank; the content, manner, or accuracy of any communications regarding the placement of any lender-placed flood insurance by U.S. Bank; or the regulatory approval or non-

approval of any lender-placed flood insurance, or the premium thereon, placed or charged by U.S. Bank.

## IV. COMPLIANCE WITH CLASS ACTION FAIRNESS ACT

Defendants represented at the April 23, 2015, hearing that they already provided the separate notice to federal and state regulators showing compliance with CAFA, 28 U.S.C. § 1715. That was their obligation under the Settlement Agreement, which also provides that they will bear the expense of that notice. (Settlement Agreement, ¶2(g).) They said at the hearing that they will file a declaration within two weeks establishing that they or the Settlement Administrator mailed notice of the Agreement to the Attorney General of the United States and the appropriate California state official. (*See id.*) Given that they already served the notice, the final settlement approval will be more than 90 days after service as required by 28 U.S.C. § 1715.

## V. SCHEDULE FOR FINAL APPROVAL OF SETTLEMENT

The schedule consists of the deadlines for notice in the previous section and the following:

| **Event** | **Date** |
| --- | --- |
| Deadline for Plaintiffs to file motion for attorney's fees and class-representative awards | 14 days before opt-out deadline |
| Deadline to file final motion for final approval | August 21, 2015 |
| Fairness Hearing (at least 123 days from date of this order) | September 10, 2015, 9:30 a.m. |

## VI. EFFECT OF THIS ORDER

1. All members of the classes including named Plaintiffs are hereby preliminarily enjoined from directly or indirectly: (i) filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise), any other lawsuit in any jurisdiction asserting the Released Claims; and (ii) organizing class members, or soliciting the participation of class members, in a separate class for purposes of pursuing any other action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims. This injunction applies to all members of the classes as of the date of this order and will continue in full force and effect until the court issues a Final Approval Order and Judgment unless a class member properly and timely excludes himself or herself from the

Settlement, at which time he or she will no longer be considered a class member and will no longer be subject to the Preliminary Injunction.

2. In the event the Settlement is not finally approved, or otherwise does not become effective in accordance with the terms of the Settlement Agreement, this Order will be rendered null and void and will be vacated, and Plaintiffs and Defendants will revert to their respective positions before entering into the Settlement Agreement.

3. The court authorizes the parties to take all necessary and appropriate steps to implement the Settlement Agreement in accordance with this Order, and to seek any further orders necessary to effectuate the preliminary approval of the Settlement.

## CONCLUSION

The court grants Plaintiffs' motion, preliminarily approves the settlement, and orders the procedures set forth above. This disposes of ECF No. 291.

**IT IS SO ORDERED.**

Dated: April 23, 2015

_____
LAUREL BEELER
United States Magistrate Judge