UNITED STATES  DISTRICT COURT

Northern District of California

San Francisco Division

STEPHEN ELLSWORTH, as an individual
and as a Representative of the classes and on
behalf of the general public,

                Plaintiff,

    v.

U.S. BANK,  N.A., and AMERICAN
SECURITY INSURANCE COMPANY,

                Defendants.

No. 3:12-cv-02506-LB

**FINAL ORDER APPROVING CLASS
SETTLEMENT, ATTORNEY'S FEES,
COSTS, AND INCENTIVE AWARDS**

[ECF Nos. 298, 301, 302]

## INTRODUCTION

This class-action lawsuit challenges U.S. Bank's practice of force-placing backdated flood insurance that was underwritten by American Security Insurance Company ("ASIC") and U.S. Bank's receipt of payments from ASIC in the form of expense reimbursements and discounted administrative insurance-tracking services. (Second Amended Class Action Complaint ("SAC"), ECF No. 169, ¶ 2.[1]) The plaintiffs allege six claims: (1) breach of their form mortgage contracts by U.S. Bank; (2) breach of the implied covenant of good faith and fair dealing by U.S. Bank under the laws of California and New Mexico; (3)-(4) unjust enrichment of U.S. Bank and ASIC under the laws of California and New Mexico; and (5)-(6) resulting violations of California Business and

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of documents.

UNITED STATES DISTRICT COURT
For the Northern District of California

Professions Code section 17200 by U.S. Bank and ASIC. The court certified multi-state, California, and New Mexico classes. (6/13/14 Order, ECF No. 250; 8/20/14 Order, ECF No. 261.) The parties then settled all claims. (*See* Motion For Final Approval, ECF No. 301.) The court granted the plaintiffs' unopposed motion for preliminary approval. (4/23/15 Order, ECF No. 295.) The plaintiffs now move for final approval of the settlement, attorney's fees and expenses of $625,000, and $2,500 per household for the named plaintiffs; the defendants joined the motion. (ECF Nos. 298, 301, 302.) The court held a fairness hearing on September 24, 2015. (9/24/15 Minute Order, ECF No. 303.) The court finds the settlement fair, adequate, and reasonable and approves the final settlement, including fees, costs, and the incentive awards to the named plaintiffs.

## STATEMENT

## I. THE LAWSUIT TO DATE

The plaintiffs filed the lawsuit in May 2012, an amended complaint in July 2012, and a second amended complaint in December 2013. (ECF Nos. 1, 26,169.) The litigation has been protracted and included U.S. Bank's motion to compel arbitration, three rounds of motions to dismiss (all denied), a motion for judgment on the pleadings, class certification, and U.S. Bank's attempt to seek interlocutory review of the court's class-certification order at the Ninth Circuit, which denied the petition. (*See generally* docket.) The parties ultimately settled the case after several settlement conferences and calls with another magistrate judge.

## II. THE SETTLEMENT

The settlement classes are those that the court certified on June 13, 2014. (*See* 8/20/14 Order Amending Class Definitions, ECF No. 261; Settlement Agreement, ECF No. 291-3, ¶ 2(o); 4/23/15 Preliminary Approval Order, ECF No. 295 at 2-4.) The court summarized the terms of the settlement agreement in its prior order and incorporates that order by reference here. (*See* 4/23/15 Preliminary Approval Order, ECF No. 295 at 2-4.) Class members will receive a refund of 12.5 percent of the amount that they were charged for lender-placed flood insurance ("LPFI") during the relevant class periods set forth in the class definitions (excluding any amounts refunded). (Settlement Agreement, ECF No. 291-3, ¶ 23.) Class members who were charged for LPFI coverage backdated 120 days or more will receive additional compensation that depends on how far back the coverage was

backdated: (1) $50 if backdated 120 to 180 days; (2) $75 if backdated 181 to 365 days; and (3) $100 if backdated over one year. (*Id. ¶* 23.) Class members will receive refunds automatically by check and do not need to submit claim forms. (Richter Decl., ECF No. 291-2, ¶ 4; Settlement Agreement ¶ 25.) The amounts that are attributable to checks not cashed within 180 days will be redistributed to other class members who cashed their checks (if there is more than $2 per class member remaining net of distribution costs) or alternatively to Habitat for Humanity as a *cy pres* award, subject to the court's approval. (Settlement Agreement ¶ 27.) No funds will revert to the defendants. (*Id.*)

The settlement agreement also provides for prospective relief. First, for three years, U.S. Bank and its affiliates will not accept (and ASIC will not offer) commissions, qualified expense reimbursements, administrative payments, reinsurance payments, or compensation in connection with LPFI on property owned by any class member pursuant to a closed-end residential mortgage loan secured by a Frannie Mae/Freddie Mac Uniform Instrument, from any insurance vendor or agent (or affiliate of the same) other than payments on damages claims. (*Id. ¶¶* 16-17.) Second, for three years, ASIC and its affiliates will not give U.S. Bank or its affiliates below-cost or free outsourced services in connection with LPFI on property owned by any class member and lender-placed on property owned by any class member pursuant to a closed-end residential mortgage loan secured by a Frannie Mae/Freddie Mac Uniform Instrument, provided however that outsourced services do not include expenses associated with tracking functions that ASIC or its affiliates incur for their own benefit to protect themselves from (a) exposure to lost premium and losses to properties on which no other insurance is in effect or (b) administrative costs associated with providing and subsequently cancelling LPFI on properties on which LPFI is not required. (*Id. ¶¶* 16, 18.) Third, for three years, (a) U.S. Bank will provide the notice required in 42 U.S.C. § 4012a(e) to class members at least 45 days before charging them for LPFI and (b) if evidence of continuous adequate coverage is provided by a class member within that 45-day period, the class member will not be charged for LPFI for any periods during which such coverage will be in place. (*Id. ¶¶* 16, 19.) A breach of this provision entitles class members to a refund of the LPFI charges attributable to periods during which they maintained flood insurance on their own. (*Id.*)

Class members who do not opt out of the settlement will release U.S. Bank and ASIC (and their

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   affiliates, agents, and insurance vendors) from all claims that were or could have been asserted in the

2   class action in connection with LPFI on a closed-end residential mortgage secured by a Fannie

3   Mae/Freddie Mac Uniform Instrument serviced by U.S. Bank during the relevant class periods. (*Id.*

4   ¶ 55.) Any claims that do not relate to LPFI or that relate to LPFI purchased in connection with other

5   times of loans or mortgage instruments will not be released. (*Id.*, ¶¶ 55, 58. )

6   **III. NOTICE OF SETTLEMENT**

7       The claims administrator Dahl Administration LLC sent the court-approved class notice to 3,462

8   class members via first-class mail. (Dahl Decl., ECF No. 301-3, ¶ 5.) The notices provided all

9   information that the court required in its order preliminarily approving the settlement including (1) a

10  summary of the lawsuit and the claims; (2) clear definitions of the classes; (3) a description of the

11  material terms of the settlement; (4) a disclosure of the release of the claims by class members; (5)

12  an explanation of class members' opt-out rights, information about how to opt out, and the deadline

13  to opt out; (6) the date, time, and location of the final approval hearing; (7) the website and toll-free

14  number for more information about the settlement; and (8) information about class counsel and the

15  class representatives and compensation that they may receive. (*See* ECF No. 295 at 6-7; Dahl Decl.,

16  Ex. A, ECF No. 301-4.) Dahl supplemented notice with a notice in USA Today that was published

17  on May 28, 2015, and it set up a website with the Second Amended Complaint, the Settlement

18  Agreement, the Class Notice, the Motion for Preliminary Approval, the preliminary approval order,

19  the motion for attorney's fees, costs, and class awards, and frequently asked questions. (Dahl Decl.,

20  ECF No. 301-3, ¶¶ 9-11, 13 & Ex. A., ECF No. 301-4.) The class notice provided that class

21  members could contact class counsel for more information. (ECF No. 301-4 at 8.)

22      No class members objected, and one class member opted out. (Dahl Decl., ECF No. 301-3, ¶¶

23  14-15 & Ex. C, ECF No. 301-6.) 4.9% (or 172) class notices ultimately were undeliverable. (*Id.*¶ 8.)

24                                              **ANALYSIS**

25  **I. JURISDICTION**

26      The court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

27  **II. NOTICE**

28      As described above, the claims administrator provided notice to all members of the class in the

UNITED STATES DISTRICT COURT
For the Northern District of California

1   form previously approved by the court. The notice met all legal requisites: it was the best notice

2   practicable, satisfied the notice requirements of Rule 23, adequately advised class members of their

3   rights under the Settlement, met the requirements of due process, and complied with the court's

4   order regarding notice. (*See* 4/23/15 Order, ECF No. 295 at 6-10.)

5   **III. COMPLIANCE WITH CLASS ACTION FAIRNESS ACT**

6        The defendants provided the required notice to federal and state regulators showing compliance

7   with the Class Action Fairness Act, 28 U.S.C. § 1715. (*See* Merten Decl., ECF No. 296; Durocher

8   Decl., ECF No. 297.) The notice met the requirements of 28 U.S.C. § 1715 and was made more

9   than 90 days before the final approval hearing on September 24, 2015. *See* 28 U.S.C. § 1715(d).

10   **IV. FINAL APPROVAL OF SETTLEMENT**

11       Settlement is a strongly favored method for resolving disputes, particularly "where complex

12   class action litigation is concerned." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th

13   Cir. 1992); *see, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A court may

14   approve a proposed class-action settlement only "after a hearing and on finding that it is fair,

15   reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed

16   settlement is ideal or the best possible; it determines only whether the settlement is fair, free of

17   collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. *Hanlon v.*

18   *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors

19   relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk,

20   expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-

21   action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery

22   completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the

23   presence of a government participant; and (8) the reaction of class members to the proposed

24   settlement. *Id.* at 1026 (citation omitted).

25       "Where a settlement is the product of arms-length negotiations conducted by capable and

26   experienced counsel, the court begins its analysis with a presumption that the settlement is fair and

27   reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, *13 (N.D. Cal. Apr. 22,

28   2010); *see, e.g., Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a

1  good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . .);

2  *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

3      The court finds the settlement fair, adequate, and reasonable under the *Hanlon* factors.

4      First, litigation poses risks and is expensive, and an evaluation of the strengths and weaknesses

5  of the plaintiffs' case militates in favor of settlement. Some courts have dismissed similar claims in

6  other lender-placed insurance and backdating cases. (*See* Motion, ECF No. 301 at 18-19 (collecting

7  cases).) Other courts have denied class certification in lender-placed insurance cases. (*See id.* at 19-

8  20 (collecting cases).) The plaintiffs note the risks in maintaining the class-action status of the case.

9  (*Id.*) The court is very aware of the strengths and weaknesses of the case, given how intensively the

10  parties litigated it through motions, discovery, and class certification.

11      Second, the settlement treats class members fairly. It provides for a flat refund, and all class

12  members will receive the same prospective relief. The relief compares favorably to other lender-

13  placed insurance settlements that courts have approved. (*See id.* at 15-17 (summarizing

14  settlements).) The settlement classes are co-extensive with the classes certified by the court. There

15  is no reversion to the defendants; uncashed settlement funds will be redistributed to class members

16  or to Habitat for Humanity as a *cy pres* award. The plaintiffs are represented by experienced and

17  informed counsel. Finally, no class members object, and only one opted out. (*See* Ex. C to Dahl

18  Decl., ECF No. 301-6.)

19      In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair,

20  adequate, and reasonable" and thus approves the settlement. *See Officers for Justice v. Civil Serv.*

21  *Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

22  **V. ATTORNEY'S FEES AND EXPENSES**

23      Class counsel asks for $625,000 in attorney's fees and expenses. (Settlement Agreement, ECF

24  No. 291-3 ¶ 33; Motion, ECF No. 298 at 7.)

25      Rule 23(h) of the Federal Rules of Civil Procedure provides: "In a certified class action, the

26  court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by

27  the parties' agreement." Fee provisions included in proposed class-action settlements must be

28  reasonable. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The

1    court is not bound by the parties' settlement agreement as to the amount of attorney's fees. *Id.* at

2    943. The Ninth Circuit has instructed district courts to review class fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns
> adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees
> from a common fund, the district court must assume the role of fiduciary for the class
> plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp
> approval, even in the absence of objections, is improper.

6    *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotation omitted).

7       In common-fund cases, the Ninth Circuit requires district courts to assess proposed fee awards

8    under either the "lodestar" method or the "percentage of the fund" method. *Fischel v. Equitable*

9    *Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon*, 150 F.3d at 1029.

10   The court finds that the fee request here is reasonable under both approaches.

11      Where the settlement involves a common fund, courts typically award attorney's fees based on

12   a percentage of the total settlement. The Ninth Circuit has established a "benchmark" that fees

13   should equal 25% of the settlement, although courts diverge from the benchmark based on a variety

14   of factors, including "the results obtained, risk undertaken by counsel, complexity of the issues,

15   length of the professional relationship, the market rate, and awards in similar cases." *Morales v.*

16   *Stevco, Inc.*, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013); *see also Morris v. Lifescan, Inc.*,

17   54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *In re Pac. Enters. Secs. Litig.*, 47

18   F.3d 373, 379 (9th Cir. 1995) (same); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *Six*

19   *Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

20      When determining the value of a settlement, courts consider the monetary and non-monetary

21   benefits that the settlement confers. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir.

22   2003); *Pokorny v. Quixtar, Inc.,* 2013 WL 3790896, *1 (N.D. Cal. July 18, 2013) ("The court may

23   properly consider the value of injunctive relief obtained as a result of settlement in determining the

24   appropriate fee."); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *7 (N.D. Cal. Mar. 18, 2013)

25   (settlement value "includes the size of the cash distribution, the *cy pres* method of distribution, and

26   the injunctive relief").

27      Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total

28   benefits being made available to class members rather than the actual amount that is ultimately

claimed. *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, *23 (N.D. Cal. Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026 (9th Cir. 1997) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount being made available)).

The fees are reasonable under the percentage method and are supported by a lodestar cross-check.

After applying the percentage method, courts typically roughly calculate the lodestar as a "cross-check to assess the reasonableness of the percentage award." *See*, *e.g.*, *Weeks v. Kellogg Co.,* 2013 WL 6531177, *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48-49 (Cal. 1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226-27 (Cal. Ct. App. 1980); *Melnyk v. Robledo*, 64 Cal. App. 3d 618, 624 (Cal. Ct. App. 1976); *Clejan v. Reisman*, 5 Cal. App. 3d 224, 241 (Cal. Ct. App. 1970). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (Cal. Ct. App. 2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained and the contingent risk presented." *Id*.

Class counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.); *Van Vranken* v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Ca. 1995) (approving reasonable costs in class action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Based on the declarations submitted by the plaintiffs' counsel, the court finds that as of early July 2015, the lodestar is $1,006,577.50 (after write-offs for unnecessary or duplicative expenses or for any time keeper who spent less than 10 hours on the file), and expenses are $91,900,33. (Richter Decl., ECF No. 298-2, ¶¶ 10, 15-16 & Exs. 4 & 6.) The billing rates are within normal and customary ranges for time keepers with similar qualifications and experience in the markets of San

1  Francisco and Minneapolis. (*See id.* ¶ 10 n.2.) The figures do not include the work that counsel

2  spent after early July preparing the motion for final approval. (*Id.* ¶ 13.)

3  The plaintiffs' attorneys detailed their efforts sufficiently, and again, the court is familiar with

4  the course of the litigation. The rates counsel used are appropriate given the deferred and

5  contingent nature of counsel's compensation. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764

6  (2nd Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to

7  compensate for the delay in payment . . . .") (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84

8  (1989)); *In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1305 (9th Cir. 1994)

9  ("The district court has discretion to compensate delay in payment in one of two ways: (1) by

10  applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by

11  using the attorneys' historical rates and adding a prime rate enhancement.").

12  In sum, the court finds the fee request reasonable under both the "percentage of the fund"

13  approach and the lodestar cross-check. The court also finds the expenses to be appropriate and

14  supported by the submissions. The $625,000 will not reduce the amounts paid to class members.

15  (Settlement Agreement ¶ 33.) The court approves and awards $625,000 in fees and expenses.

16  **VI. INCENTIVE AWARDS**

17  Under the terms of the settlement agreement, the class representatives will receive awards of

18  $2,500 per household, which will be paid by the defendants separately and thus will not reduce the

19  payments to the class members. (*Id.* ¶ 34.)

20  District courts must evaluate proposed incentive awards individually, using relevant factors that

21  include, "the actions the plaintiff has taken to protect the interests of the class, the degree to which

22  the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff

23  expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . .

24  and are intended to compensate class representatives for work done on behalf of the class, to make

25  up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize

26  their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-959.

27  The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has]

28  cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info.*

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   *Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975-78). The Ninth

2   Circuit also has emphasized that district courts "must be vigilant in scrutinizing all incentive

3   awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164.

4       The incentives proposed here are within the range of awards that the Ninth Circuit has either

5   affirmed or cited with approval. *See In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 463 (9th Cir.

6   2000) (approving $5,000 incentive to each named representative of potentially 5400-member class

7   in settlement of $1.725 million); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)

8   (approving $2,000 incentive award to five named plaintiffs; class numbered potentially more than 4

9   million; settlement value of $3 million) (cited in *Staton*).

10      The named plaintiffs merit the incentive awards. Their lawyer has explained the efforts they

11  personally made in pursuing this lawsuit by producing documents and information in response to

12  discovery requests, attending depositions, participating in the mediation process, reviewing the

13  settlement agreement and relevant pleadings, furnishing declarations for class certification and for

14  approval of the settlement, and cooperating and communicating with class counsel throughout the

15  litigation. (Richter Decl., ECF No. 298-2, ¶ 26; *see* Ellsworth Decl., ECF No. 291-6, ¶ 13; Weaver

16  Decl., ECF No. 291-7, ¶ 13; Skelly Decl., ECF No. 291-8, ¶ 13.) The court approves the awards.

17  **VII. OTHER ORDERS**

18      1. One person timely and validly requested exclusion from the settlement and thus is not a

19  member of the classes, will have no rights or interests with respect to the settlement, and is not

20  bound by any orders or judgments entered with respect to the settlement. (*See* Ex. C to Dahl Decl.,

21  ECF No. 301-6.)

22      2. Each class member (except those who submitted a timely and valid request for exclusion)

23  will be bound by the Settlement Agreement and all provisions therein, including, *inter alia*, the

24  Class Release in the Settlement Agreement, which is set forth below and expressly incorporated

25  herein in all respects, as of the effective date of the Settlement Agreement after final judgment is

26  entered. Upon the effective date of the Settlement, the named plaintiffs and all class members

27  (except those who submitted a timely and valid request for exclusion) will be deemed to have

28  forever released, relinquished, and discharged the Released Persons (as defined in the Settlement

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Agreement) from any and all Released Claims (as defined in the Settlement Agreement), including

2   all claims arising out of, relating to, or in connection with the initiation, settlement, prosecution, or

3   dismissal of the Action.

4       (a) Release and Waiver Definitions.

5           (i) "Affiliate" of an entity means any person or entity which controls, is controlled by, or is

6   under common control with such entity.

7           (ii) "ASIC" means American Security Insurance Company.

8           (iii) "U.S. Bank" means U.S. Bank National Association.

9           (iv) "Defendants" means U.S. Bank and ASIC.

10          (v) "Backdated" lender-placed flood insurance means lender-placed flood insurance with an

11  effective date prior to its issue date.

12          (vi) "Class Release" means the Released Claims of Class as defined in Paragraph 2(b),

13  below.

14          (vii) "Released Claims" means all claims, actions, causes of action, suits, debts, sums of

15  money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs,

16  liens, judgments, and demands of any kind whatsoever that each class member may have until the

17  close of the Class Periods or may have had in the past, whether in arbitration, administrative, or

18  judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether

19  past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether

20  based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any

21  other source, that were or could have been sought or alleged in the Action that relate, concern, arise

22  from, or pertain in any way to the Released Parties' conduct, policies, or practices concerning

23  lender-placed flood insurance or to charges for U.S. Bank's placement, or ASIC's issuance, of

24  lender-placed flood insurance during the class periods, including but not limited to conduct,

25  policies or practices concerning lender-placed flood insurance or charges for U.S. Bank's

26  placement of lender-placed flood insurance during the class periods. The named plaintiffs explicitly

27  acknowledge that unknown losses or claims could possibly exist and that any present losses may

28  have been underestimated in amount or severity.

UNITED STATES DISTRICT COURT
For the Northern District of California

(viii) "Released Parties" means U.S. Bank and ASIC, and each and all of their respective past, present, and future divisions, parents, subsidiaries, predecessors, investors, parent companies, Affiliates, and each and all of their respective past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, agents, brokers, distributors, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint ventures, assigns, or related entities, and each and all of their respective executors, successors, assigns, and legal representatives.

(b) Class Release. The named plaintiffs and each class member and his or her assigns, heirs, successors and personal representatives will be deemed to have fully, conclusively, irrevocably, forever, and finally released, resolved, relinquished, and discharged each and all of the Released Parties from each of the Released Claims that exist in their favor through the end of the Class Periods. The named plaintiffs and class members agree that they will not institute any action or cause of action (in law, in equity, or administratively), suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim to have in state or federal court, or with any state, federal or local government agency or with any administrative or advisory body, asserting the Released Claims. These released claims will include but not be limited to, all claims related to U.S. Bank's flood insurance requirements; the relationship, whether contractual or otherwise, between U.S. Bank (and its Affiliates) and ASIC (and its Affiliates) regarding lender-placed flood insurance, including, but not limited to, the procuring, underwriting, placement, tracking, or costs of lender-placed flood insurance; the coverage amount, duration, issue date, alleged "backdating," or alleged excessiveness of any of lender-placed flood insurance placed or charged by U.S. Bank; the payment or receipt of commissions, expense reimbursements, alleged "kickbacks," or any other compensation under any lender-placed flood insurance placed or charged by U.S. Bank; any alleged "tying" arrangement involving U.S. Bank and lender-placed flood insurance; any alleged breach of fiduciary duty by U.S. Bank concerning lender-placed flood insurance; any alleged tortious interference by ASIC (or its Affiliates) with mortgage loans serviced by U.S. Bank; the disclosure or non-disclosure of any payment, expenses, fees, charges, or features pertaining to or under any lender-placed flood insurance or coverage under such lender-placed flood insurance and charges for such coverage placed or charged

UNITED STATES DISTRICT COURT
For the Northern District of California

by U.S. Bank; the receipt or non-disclosure of any benefit under any lender-placed flood insurance or coverage under such lender-placed flood insurance and charges for such coverage placed or charged by U.S. Bank; the content, manner, or accuracy of any communications regarding the placement of any lender-placed flood insurance by U.S. Bank; or the regulatory approval or non-approval of any lender-placed flood insurance, or the premium thereon, placed or charged by U.S. Bank.

(c) Without in any way limiting its scope, the Class Release covers by example and without limitation, any and all claims for attorney's fees, costs, expert fees, or consultant fees, interest, or litigation fees, or any other fees, costs, or disbursements incurred by class counsel, the named plaintiffs, or any class members in connection with or related in any manner to this action, the settlement of this action, the administration of the Settlement, or the Released Claims, except to the extent otherwise specified in the Settlement Agreement.

(d) The Class Release is effective only as to claims relating to lender-placed flood insurance policies purchased in connection with a closed-end residential mortgage loan secured by a Fannie Mae / Freddie Mac Uniform Instrument owned or serviced by U.S. Bank during the relevant class periods, as reflected in the class data produced by U.S. Bank and ASIC in connection with this Action.

(e) The Class Release does not affect the rights of class members who timely and properly submitted a request for exclusion from the Settlement in accordance with the requirements of the Preliminary Approval Order and paragraph 47 of the Settlement Agreement.

(f) The Class Release does not preclude any action to enforce the terms of the Settlement Agreement, including the express warranties and covenants contained therein.

3. Each and every class member (excluding those class members who submitted a timely and valid request for exclusion) is hereby permanently barred and enjoined, as of the effective date of the Settlement, from (a) bringing, joining, continuing to prosecute or participating in (as class members or otherwise) any action asserting the Released Claims as defined in the Settlement Agreement; and (b) organizing class members, or soliciting the participation of class members, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    4. The court authorizes the parties to implement the terms of the Settlement Agreement.

2    5. This final approval order, the final judgment to be entered pursuant to this final approval order,

3    and the Settlement Agreement (including the exhibits thereto) may be filed in any action against or by

4    any of the Released Parties to support a defense of res judicata, collateral estoppel, release, good faith

5    settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar

6    defense or counterclaim.

7    6. Without further order of the court, the parties may agree to reasonably necessary extensions of

8    time to carry out any of the provisions of the Settlement Agreement.

9    7. This final approval order and the final judgment to be entered pursuant to this final approval

10   Order will be effective upon entry. In the event that the final approval order and the final judgment to

11   be entered pursuant to this final approval order are reversed or vacated pursuant to a direct appeal in

12   this Action or the Settlement Agreement is terminated pursuant to its terms, all orders entered and

13   releases provided in connection herewith will be null and void.

### CONCLUSION

15   The court approves the settlement, awards attorney's fees and expenses of $625,000, and awards

16   $2,500 each to (1) Stephen Ellsworth, (2) Marilyn Weaver, and (3) Lawrence and Donene Skelley

17   (jointly). This disposes of ECF Nos. 298, 301, and 302.

18   **IT IS SO ORDERED.**

19   Dated: September 24, 2015

_____
LAUREL BEELER
United States Magistrate Judge